## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND GARY J. MEYERS, in his official capacity as a fiduciary, 1750 New York Avenue, N.W. Washington, DC 20006-5387 | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) CIVIL ACTION NO. |
| v. | ) ) |
| ROSE CITY GLASS CO., INC. d/b/a ROSE CITY GLASS d/b/a ROSE CITY COMPANY, INC. 2487 Rochester Road Canandaigua, NY 14424 | ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs, by undersigned counsel, complain as follows.

## JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action under 29 U.S.C.

§§1132, 1145; 29 U.S.C. §185(a); and/or 28 U.S.C. §1331.  The claims asserted are all made

under federal statutes or federal common law, but the supplemental jurisdiction of the Court

under 28 U.S.C. §1367(a) also extends to any claims that are found to lie under state law.

2.    A copy of this Complaint is being served on the Secretary of Labor and the

Secretary of Treasury of the United States by certified mail in accordance with 29 U.S.C.

§1132(h) .

## VENUE

3.    Venue lies in the District of Columbia under 29 U.S.C. §1132(e)(2), 29 U.S.C.

§185(a) and/or 28 U.S.C. §1391(b).

## PARTIES

4.    Plaintiff International Painters and Allied Trades Industry Pension Fund ("Fund"

or "Pension Fund") is a trust fund established under 29 U.S.C. §186(c)(5). Its Trustees are the

"named fiduciary," "plan administrator" and "plan sponsor" and each is an individual

"fiduciary," within the meaning of 29 U.S.C. §§1102(a), 1002(16), (21), for the International

Painters and Allied Trades Industry Pension Plan ("Pension Plan") and International Painters and

Allied Trades Industry Annuity Plan ("Annuity Plan"). The Pension Plan and Annuity Plan are

each a "multiemployer plan," "employee benefit plan" and "employee benefit pension plan"

within the meaning of 29 U.S.C. §1002(37), (2) and (3). The Fund, Pension Plan and Annuity

Plan maintain their principal place of business and are administered from an office in this district

at the address for the Fund in the caption of this Complaint.

5.    Plaintiff Gary J. Meyers ("Meyers" and, together with "Fund," "Plaintiffs") is a

fiduciary of the Funds within the meaning of 29 U.S.C. §1002(21) with respect to collection of

contributions due the Funds and related matters. He has a business address as listed in the

caption and is authorized to bring this action on behalf of all Trustees of the Fund and the Funds

as organizations.

6.    The Fund and Meyers are authorized collection fiduciary(ies) and agent(s) for:

(a)    the Pension Plan,

(b)    the Annuity Plan,

(c)    the Political Action Together Fund, which includes the Political Action

Together – Legislative and Educational Committee and  Political Action Together – Political

Committee (jointly or severally, "PAT Fund"), which is an unincorporated association or fund

established pursuant to 2 U.S.C. §431 et seq. by the International Union of Painters and Allied

Trades for the purpose of advancing the political interests of its members by lawfully influencing the selection, nomination, election and/or appointment of individuals for political office,

(d)    the Finishing Trades Institute f/k/a International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI"),  which is a trust fund established under 29 U.S.C. §186(c)(5) and "multiemployer plans" and "employee benefit plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §1002(37), (1), and (3), and

(e)    the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI"), which is an entity that performs certain employer association functions, but is also an unincorporated organization established under 29 U.S.C. §186(c)(9).

7.    The PAT Fund, FTI and LMCI are jointly or severally referenced as "Ancillary Funds" and maintain their principal place of business and are administered from an office in this district.

8.    The Fund and Meyers, in their capacity as authorized collection fiduciary(ies) and agent(s) sue on behalf of the Pension Plan, the Annuity Plan, the PAT Fund, FTI and LMCI.

9.    The Fund, Pension Plan, Annuity Plan, FTI and, as allowed by law, LMCI, are jointly or severally referenced as the "ERISA Funds." The ERISA Funds, LMCI and PAT Fund are hereinafter jointly or severally referenced as the "Funds."

10.    Defendant, Rose City Glass Co., Inc., d/b/a Rose City Glass, d/b/a Rose City Company, Inc., ("Company") is a New York corporation and an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) with a business office at the address listed in the caption.  The Company does business with the Fund that is sufficient to create personal jurisdiction over the Company in this district and a

substantial part of the events or omissions giving rise to the claim occurred from transactions with the Funds' office(s) in this district.

## COMMON FACTS

11.    At all times relevant to this action, the Company was party to or agreed to abide by the terms and conditions of a collective bargaining agreement(s) (singly or jointly, "Labor Contracts") with one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC (the locals, district councils and International being referred to jointly as "Union"). A true and correct copy of the cover page, table of contents, contribution provisions and joinder or signature pages of the Labor Contracts is attached as **Exhibit 1**.

12.    The Company also signed or agreed to abide by the terms of the Agreement and Declaration of Trust of the Fund ("Trust Agreement"), made between certain employers and employee representatives in an industry(ies) affecting interstate commerce to promote stable and peaceful labor relations, and the plan documents for the ERISA Funds. A true and correct copy of the Trust Agreement for the Fund is attached as **Exhibit 2**. True and correct copies of the cover page, table of contents §§10.07, 10.08, 10.11, and 10.12 and signature page of the Pension Plan are attached as **Exhibit 3**, and the Annuity Plan has parallel terms.

13.    Under the Labor Contracts, Trust Agreement, plan documents of the ERISA Funds or other documents, the Company agreed:

(a)    To make full and timely payment on a monthly basis to the Funds, as required by the Labor Contracts, Trust Agreement and plan documents. Ex. 2, p.15 (Art. VI, §2); Ex. 3, §10.07.

(b)    To file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract. Ex. 2, pp.15-16 (Art. VI, §§3, 5).

(c)    To produce, upon request by the Funds, all books and records deemed necessary to conduct an audit of the Company's records concerning its obligations to the Funds and to pay the cost of the audit if found to be delinquent or in violation of the Trust Agreement or Plan. Ex. 2, pp.16-17 (Art. VI, §6).

(d)    To pay liquidated damages, late charges, interest, audit costs, and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a consequence of the Company's failure to comply with its contractual and statutory obligations described in Subparagraphs (a), (b) and (c). Ex. 2, pp. 16-17 (Art. VI, §§4, 6); Ex. 3, §§10.07, 10.12.

14.    Company has refused to submit remittance reports or payments for the last twelve (12) months and continues in this breach of its obligations to date.

15.    Plaintiffs have requested an audit of Company's records, however said audit had not been scheduled at the time of this filing.

16.    All conditions precedent to this lawsuit or the relief it seeks have been satisfied.

## COUNT I - CONTRIBUTIONS UNDER ERISA - SUM CERTAIN

## PLAINTIFFS

v.

## COMPANY

17.    The allegations of Paragraph 1 through 16 are incorporated by reference as if fully restated.

18.     Company has failed to pay to the ERISA Funds amounts due under the Labor Contracts, Trust Agreements and Plan from January 2005 to June 2005, and March 2007 to January 2008 in at least the sum of $13,373.03 based upon information presently available to the ERISA Funds in violation of 29 U.S.C. §1145.

19.     The ERISA Funds are adversely affected and damaged by the Company's violation of 29 U.S.C. §1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)     Enter judgment against Company in favor of the Plaintiffs, for the benefit of the ERISA Funds, for at least the sum certain amount plus any additional amounts which may become due during the pendency of this lawsuit together with late charges, interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the documents governing the ERISA Funds or statute, the cost of any audit and reasonable attorneys' fees and costs incurred in this action or the collection or enforcement of any judgment all as provided under the Trust Agreements, plan documents of the ERISA Funds, and 29 U.S.C. §1132(g)(2).

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT II – AUDIT

## PLAINTIFFS

### v.

## COMPANY

20.    The allegations of Paragraphs 1 through 16 are incorporated by reference as if fully restated.

21.    The amount of contributions the Company is required to pay to the Funds is based upon hours worked and paid to employees performing work covered by the Labor Contracts.

22.    The Funds are without sufficient information or knowledge to plead the precise nature, extent and amount of the Company's delinquency because the books, records and information necessary to determine this liability are in the exclusive possession, custody and control or knowledge of the Company.

23.    Computation of the precise amount of an employer's delinquency is best achieved by an audit of the employer's books and records to compare them to contractually-required remittance reports submitted by the employer.

24.    The Company is required by the Labor Contracts, Trust Agreements, plan documents of the ERISA Funds and/or applicable law to permit the Funds to audit its records, to cooperate in determining the contributions due the Funds and to pay the cost of the audit if found to be delinquent.

25.    The Funds and their fiduciaries or officers are adversely affected or damaged by the lack of an audit as, among other things, they have a duty to audit and confirm amounts due from contributing employers.

26.    The Funds and their fiduciaries or officers have no adequate remedy at law for lack of an audit as the calculation of any damages suffered as a result of the breach requires an audit.

**WHEREFORE,** Plaintiffs ask that the Court:

(1)    Enjoin the Company, its officers, agents, servants, employees, attorneys and all others in active concert or participation with them to permit an audit of all records under the actual or constructive control of the Company and, in the absence of records, to cooperate in alternative methods for the determination of work for which contributions are due.

(2)    Order the Company to pay for an audit by a Certified Public Accountant chosen by the Funds, and

(3)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT III - CONTRIBUTIONS UNDER ERISA AFTER AUDIT

### PLAINTIFFS

### v.

### COMPANY

27.    The allegations of Paragraphs 1 through 26 are incorporated by reference as if fully restated.

28.    On information and belief, the Company has failed to make contributions to the ERISA Funds in violation of 29 U.S.C. §1145 in a period not barred by an applicable statute of limitations or similar bar.

29.    The ERISA Funds are adversely affected or damaged by the Company's violation of 29 U.S.C. §1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    After an audit, enter judgment against the Company in favor of Plaintiffs, for the benefit of the Funds, for the contributions found due and owing by the audit, together with late charges, interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until

the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid

contributions or liquidated damages provided by the plan document(s) or statute(s), the cost of

the audit, and reasonable attorneys' fees and costs incurred in this action and in connection with

any proceedings to enforce or collect any judgment all as provided under the Trust Agreements,

Plan and 29 U.S.C. §1132(g)(2).

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or

appropriate.

<div align="center">

**COUNT IV – INJUNCTION**

**PLAINTIFFS**

**v.**

**COMPANY**

</div>

30.    The allegations of Paragraphs 1 through 26 are incorporated by reference as if

fully restated.

31.    A money judgment or other remedy available at law is inadequate because the

Company has shown its disregard of its contractual and legal obligations by a consistent pattern

of delinquencies or late payment of contributions.

32.    Unless ordered to do otherwise by this Court, Company will continue to refuse to

submit remittance reports and pay the contributions presently due and owing or which become

due and owing in the future, and the Funds and their participants will be irreparably damaged.

**WHEREFORE**, Plaintiffs, for themselves and on behalf of the Funds, ask that the Court:

(1)    Permanently restrain and enjoin the Company, its officers, agents, servants,

employees, attorneys and all others in active concert or participation with them from continuing

to violate the terms of the current collective bargaining agreement(s) between the Company and

the Union (including its affiliated locals and district councils) and from violating such other

collective bargaining agreements as may from time to time be entered by the said parties

providing for the timely filing of remittance reports with complete, accurate and proper

information and timely payment of contributions to the Funds for so long as the Company is

contractually-required to do so.

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or

appropriate.

## COUNT V - CONTRIBUTIONS UNDER CONTRACT - SUM CERTAIN

### PLAINTIFFS

### v.

### COMPANY

33.     The allegations of Paragraphs 1 through 19 are incorporated by reference as if

fully restated.

34.     The Company has not paid the Funds as required by the Labor Contract, and other

documents incorporated by the Labor Contract, such as the Trust Agreements or plan documents

of the ERISA Funds.

35.     Plaintiffs have been damaged as a proximate result of the breach of Labor

Contract and/or its incorporated documents by Company.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)     Enter judgment against the Company and in favor of Plaintiffs, for the benefit of

the Funds, for the sum certain currently due plus any additional amounts which become due and

owing during the pendency of this litigation or as a result of an audit together with liquidated

damages, interest and costs, including reasonable attorneys' fees incurred in this action or the

collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT VI - CONTRIBUTIONS UNDER CONTRACT – AFTER AUDIT

### PLAINTIFFS

**v.**

### COMPANY

36.    The allegations of Paragraphs 1 through 35 are incorporated by reference as if fully restated.

37.    Plaintiffs have been damaged as a proximate result of the breach of the Labor Contract and its incorporated documents by Company with respect to any amounts found due in an audit.

**WHEREFORE,** Plaintiffs ask that the Court:

(1)    Enter judgment against the Company and in favor of Plaintiffs, for the benefit of the Funds, for the sum certain currently due plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

_____

KENT CPREK
DC Bar No. 478231
DAWN M. COSTA
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615/0616
Attorneys for Plaintiffs

Date:_____

*Application for Pro Hac Admission of Dawn M. Costa shall be made at the appropriate time.

# CIVIL COVER SHEET

JS-44
(Rev. 2/01 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| International Painters and Allied Trades Industry Pension Fund, et al. | Rose City Glass Co., Inc. d/b/a Rose City Glass d/b/a Rose City Company, Inc. |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) NOTE: In land condemnation cases, use the location of the tract of land involved |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
| Kent Cprek, Esquire<br>Jennings Sigmond, P.C., The Penn Mutual Towers, 16th Floor,<br>510 Walnut Street, Phila., PA 19106<br>(215) 351-0615 | |

**II BASIS OF JURISDICTION** (SELECT ONE BOX ONLY)

- O 1 U.S. Government Plaintiff
- ⦿ 3 Federal Question (U.S. Government Not a Party)
- O 2 U.S. Government Defendant
- O 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT) (FOR DIVERSITY CASES ONLY!)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**O A. Antitrust**

- ☐ 410 Antitrust

**O B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**O C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**O D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**O E. General Civil (Other)** OR **O F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. Habeas Corpus/2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 U.S.C. Section 185(a), 1132 and 1145 Action to collect unpaid contributions due under a collective bargaining agreement

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ _____  Select YES only if demanded in complaint  JURY DEMAND: ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☒ NO  If yes, please complete related case form.

DATE  March 17, 2008  SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

LOCAL UNION _CS0677_

DATES _5/1/06 - 4/30/09_

PENSION PAGES _4 pgs. 7, 16, 17, 18, 20, 21, 22, 27, 33, 38_

RATES _$1.25_

WAGES _pg. 20_

APPRENTICESHIP RATES _pg. 27, 33_

SUBCONTRACTING _pg. 7, 16_

50% CLAUSE _pg. 17_

JURISDICTION CLAUSE _pg. 17_

ROLLOVER _pg. 38_

MODEL CLAUSE _pg. 21, 22_

LMCI _pg. 18 (.05¢)_

PAT _____

JATC _____



April 9, 2007

To All Employers:

At our April 4, 2007 meeting, the Syracuse members voted to allocate the $ 1.03 per hour increase, effective May 1, 2007, as follows:

| Glaziers | Current | Increase | Effective 5/01/07 |
|---|---|---|---|
| Basic Wage Rate | $ 20.48 | $ .27 | $ 20.75 |
| H & W Fund | 5.24 | .40 | 5.64 |
| Pension Fund (Annuity) | 2.18 | .16 | 2.34 |
| D.C. #4 Apprentice | .40 | .05 | .45 |
| Nat. Pension Fund | 1.10 | .15 | 1.25 |
| Totals | $ 29.40 | $ 1.03 | $ 30.43 |

| Apprentices: | | | | | % of Rate | New Rate Effective 5/01/07 |
|---|---|---|---|---|---|---|
| Apprentices In | | | | | | |
| 1 a. | 1st | 1,000 | hours | | 50% | $ 10.38 |
| 1 b. | 2nd | 1,000 | hours | | 55% | 11.41 |
| 2 a. | 3rd | 1,000 | hours | | 60% | 12.45 |
| 2. b. | 4th | 1,000 | hours | | 65% | 13.49 |
| 3 a. | 5th | 1,000 | hours | | 70% | 14.53 |
| 3 b. | 6th | 1,000 | hours | | 75% | 15.56 |
| 4 a. | 7th | 1,000 | hours | | 80% | 16.60 |
| 4 b. | 8th | 1,000 | hours | | 90% | 18.68 |

If you have any questions, please do not hesitate to contact the Union Office.

Yours very truly,


Robert Sinopoli
Business Representative

cc: All Members

# Contract Profile (Inquiry)

## Master Collective Bargaining Agreement

Title: (LU677) GLAZIERS - ROCHESTER & SYRACUSE (GS0677) ID Number: DC000004180100000

| Effective Date | End Date | Status | Report Day | Report Form |
|---|---|---|---|---|
| 2003-05-01 | 2006-04-30 | **ACTIVE** | 20 | **MONTHLY** |
| Status Modification Date | Pension Participation Date | Administration Method | Revision Number | Revision Date |
| 2004-04-02 | 0001-01-01 | **N** | 00 | 2006-03-17 |

**Contract Rates Data**

**SCHEDULE A**

For RATE HISTORY & PROJECTIVE FUTURE please select Zone and Trade     

| | Zone | Affiliation | Zone Description | Trade | WAGES | IUPAT INDUSTRY PENSION | PAT | LMCI | FTI | HEALTH WELFARE FUND |
|---|---|---|---|---|---|---|---|---|---|---|
| ☺ | 01 | DC000004 | GS0677 SYRACUSE NY/GLAZIERS AND GLASS WORKERS OUTSIDE | GLAZING COMMERCIAL | $20.75 | $1.25 | $0.05 | $0.03 | $0.05 | $5.64 |
| ☺ | | | | GLAZING INSIDE GLASS | $14.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5.24 |
| ☺ | | | | GLAZING HELPER | $12.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5.24 |

For SCHEDULE B please select Zone and Trade     

**Contract Features Data**

| Feature Code | Feature Description | Reference |
|---|---|---|
| FT100 | JURISDICTION GEOGRAPHIC | PAGE 1 |
| FT101 | JURISDICTION WORK | PAGE 1 |
| FT102 | SIGNATORY PAGE | PAGE 45 |
| FT105 | ADMINISTRATOR DUES | PAGE 24 |
| FT106 | PENSION AFFILIATED | |
| MC001 | 50/50 CLAUSE SECTION 241 | PAGE 20 |
| MC003 | WORK PRESERVATION - SEC 243 | PAGE 21 |
| MC005 | NATIONAL IUPAT-JATF SECT 245 | |
| MC014 | LMCI CLAUSE - SECTION 246 | PAGE 22 |
| MC016 | ROLLOVER CLAUSE | |

**Contract Funds Data**

| Zone | Fund Code | Fund Description | Reference |
|---|---|---|---|
| 01 | FND001 | WAGES | |
| | FND002 | IUPAT INDUSTRY PENSION | |
| | FND005 | PAT | |
| | FND006 | LMCI | |
| | FND007 | FTI | |
| | FND011 | HEALTH WELFARE FUND | |
| | FND024 | LOCAL APPRENTISHIP FUND | |
| | FND029 | LOCAL PENSION FUND | |





RECEIVED

JUL 1 0 2007

GENERAL PRESIDENT'S OFFICE

# GLAZIERS AND GLASS WORKERS

# UNION LOCAL #677

# MAY 1ST , 2006 THROUGH APRIL 30TH, 2009

## INDEX

| ARTICLE | CONTENTS | PAGE |
|---|---|---|
| Article I | Rochester Jurisdiction (Territory)<br>Syracuse Jurisdiction (Territory) | 1 |
| Article II | Scope of Work<br>Pre-Job Conference<br>Employer-Journeyman Ratio,<br>Area Residents Clause, Job Information List | 1-2<br>2<br>3 |
| Article III | Hours of Work, Overtime,<br>Show-Up Time, Emergency Work<br>Two Hour Guarantee<br>Contract Work | 4<br>5<br><br>6 |
| Article IV | Fund Payments<br>Bonding Clause, Penalty Clause, Change In Funds | 6<br>7 |
| Article V | Pay Conditions, Lay Offs, Pay Records,<br>Payroll Inspection<br>Time Sheets | 8<br>8-9<br>9 |
| Article VI | Working Conditions, Material Handling Jobsite,<br>Signed Agreements<br>Safety, Scaffolding, Glass Trucks Marked,<br>Glazing on Jobsite<br>Higher Rate of Pay, Mechanical Equipment,<br>Tool List | 9<br><br>10<br>10-11<br>11<br>11-12 |
| Article VII | Emergency Help, Glass Workers Working Outside,<br>Additional Help<br>Borrowing Men, Eight Hour Guarantee | 12<br>12<br>13 |
| Article VIII | State and Federal Laws | 13 |
| Article IX | Union Security, New Hire (24 Hour Notice)<br>Non-Discrimination Clause, No Leasing Clause,<br>Picket Lines, Discharge<br>Thirty (30) Day Review, Function of Management | 14-15<br>15<br><br>16 |
| Article X | Stewards | 16-17 |
| Article XI | Arbitration | 17 |

| | | |
|---|---|---|
| Article XII | Grievance Procedure | 17-18 |
| Article XIII | Legal Provisions | 18-19 |
| | Abnormally Dangerous Conditions, | 19 |
| | Sub-Contracting | 19-20 |
| | Accretion Clause | 20 |
| | Industrial Controversy, "Fifty-fifty" percent Clause | 21 |
| Article XIV | Preservation of Work Clause | 22 |
| Article XV | Labor Management Cooperation Fund | 23 |
| Article XVI | Rochester Area Wages, Height Pay, Foreman Pay | 24 |
| | General Foreman Pay, Metal Fabrication | |
| | Metal Fabrication Benefits, | 25 |
| | Rochester Area Funds (Glaziers) | |
| | IUPAT Union and Industry Pension Fund | 25-26 |
| | Submission of Deduction Authorization, | 26-27 |
| | Dues Administration Authorization Card | 27 |
| Article XVII | Rochester & Syracuse Travel Time, Mileage, | 28 |
| | Toll Roads, Supper Allowance | |
| | Rochester Free Zone | 29 |
| | Syracuse Free Zone | 30 |
| Article XVIII | Rochester & Syracuse Out-of-Town Expenses | 30-31 |
| Article XIX | Rochester Apprentice & Trainees, | 31/32 |
| | National Fund, Journeyman Training | 33 |
| Article XX | Syracuse Area Wages, Height Pay, | 33 |
| | Foreman Pay, General Foreman Pay, Metal | 34 |
| | Fabrication Metal Fabrication Benefits | |
| | Syracuse Area Funds | 34-35 |
| | IUPAT Union and Industry Pension Fund | 35-36 |
| | Submission of Deduction Authorization, | 36 |
| | Dues Administration Authorization Card | 37 |
| Article XXI | Syracuse Apprentices & Trainees | 37-39 |
| | National Fund, Journeyman Training | 39 |
| Article XXII | Syracuse - Metal Fabricators/Residential/Service | 40 |
| | Section, Recognition, Hours, Overtime, & Wages | |
| | Metal Fabricators/Residential/Service Schedule | 41 |
| | Shop/Truck Drivers Schedule, Funds | |

Union Security, Grievance Procedure,    42
Legal Provisions
Rochester and Syracuse Jurisdiction    43
Termination Procedure

GLAZIER'S AGREEMENT
May 1, 2006 thru April 30, 2009

This Agreement entered into between _____ of Rochester and/or Syracuse, New York hereafter known as the Employer and Glaziers & Glass Workers Local Union #677 of the International Union of Painters and Allied Trades, AFL-CIO hereafter known as the Union.

## ARTICLE I
### Rochester Jurisdiction (Territory)

<u>Section 1</u>.  The jurisdiction of Local Union #677 (Rochester) includes the following counties: Monroe, Wayne, Seneca, Ontario, Livingston, and Yates County.

### Syracuse Jurisdiction (Territory)
<u>Section 2</u>.

    (a)  The jurisdiction of Local #677 (Syracuse) includes the following counties: Cortland, Herkimer, Cayuga, Oswego, Onondaga, Madison, Oneida, and such other territory as may be assigned to the Union by the International Union of Painters and Allied Trades of America.

    (b)  Jefferson, St. Lawrence, and Lewis Counties (Northern Zone) are also in the Syracuse jurisdiction. However, wages and benefits are to be paid at the Rochester wage and benefit rate.

## ARTICLE II
### Scope of Work

<u>Section 1</u>.  The Employer recognizes the Union as having the jurisdiction over the installation, unloading, and distribution of all types and kinds of glass, materials used as substitutes for glass, all types of metal, plastics, and or store front construction, metal doors and frames, or any material that replaces the same, shower doors, art glass, residential glazing, solar heat collectors containing glass or glass substitutes, skylights, showcases, display cases, glass shelves and binning, removal of glass, Metal and/or sash in connection with our work, pre-glazed sash or any incidental work in connection with metal or glass doors, (FRP) doors, sliding type doors, sealants, caulking and any other type of installation work normally considered as glaziers' work by the Glass and Glazing Industry. It is understood that the Employer's recognition of jurisdiction shall apply only when the Employer contracts for installation of any of the above materials. The fabrication of all metal inside the shop, all job-site fabrication, and assembly of all commercial sliding doors shall be done by the Glaziers.

    (a)  The Employer also recognizes the Union as having jurisdiction over drivers of installation trucks.

    (b)  When the Glazier has equity in the work claimed by another craft, the Employer agrees to abide by the decision of the Business Manager of District Council #4 and assign the work accordingly.

**Section 2.** The Employer recognizes the Union as having jurisdiction over the installation, unloading, and distribution of all material classified as the work of the glazier by the New York State Department of Labor.

**Section 3.** The Employer agrees to discuss the scope of any contract for work involving material to be supplied and/or labor to be performed at the request of the Union.

**Section 4.** Shop Stewards, the Business Manager, and International Representatives of the Brotherhood shall be given due recognition by the Employer to enter the Employer's place of business without interference, after reporting to the office according to past practice. Pre-Job Conference

**Section 5.** On all work not covered in this Article, the Employer agrees to abide by the following provisions:

    (1)    To meet with the Business Manager of the Union at the earliest opportunity prior to making an assignment.

    (2)    Whenever the Business Manager of the Union cannot agree with the Employer that the work is to be assigned to another craft other than Glaziers, the Employer agrees to give the original assignment of such work to the Glaziers, if there is a question of Jurisdiction.

**Section 6.** In the event any governmental agency, having full authority, or federal legislation is passed whereby the building industry is exempt from the provisions of the Taft-Hartley Act, the closed-shop clause will be immediately negotiated.

**Section 7.** The Employer shall not sublet by contract or otherwise glazing of any description to the employee governed by the terms of this Agreement. The Union agrees that no member will be permitted to enter into any glazing contract or contracts unless recognized by the Union as a Contractor under signed agreement.

## Employer-Journeyman Ratio

**Section 8.** An Employer working with the tools of the trade must employ journeymen at a ratio of one journeyman for each working member of the firm except for a one-man owner-operated shop. At all times the reduction of man power must be accomplished in reverse order by using the same ratio with the working member of the firm being the first to give up the use of the tools of the trade. At no time will it be permissible for an Employer and/or working member of the firm to work with the tools of the trade unless he is a member of Local #677.

## Area Residents Clause

**Section 9.** The Employer agrees wherever possible that preference in employment shall be given to persons who reside in the geographic area in which the Employer performs this work, in accordance with the following:

(a)    The geographic areas will consist of the Rochester area, as stated in Article I, Section 1, and the Syracuse area as stated in Article 1, Section 2. The Watertown area residents will consist of area residents that reside in Jefferson and St. Lawrence Counties.

(b)    To obtain the benefit of residence preference the person must have legally resided in the geographic area for one continuous year or more.  Such persons shall be called "Area Residents".

(c)    When the Employer requires employees, preference in hiring shall be    given    to    "Area Residents".

(d)    When layoffs or cutbacks in employment are necessary, "Area Residents" shall be preferred for being retained.

(e)    The preference for "Area Residents" provided in this Article shall be exercised without regard to union membership or non-membership and "Area Residents" is not deemed to imply or suggest any particular union membership.

<div align="center">Job Information List</div>

Section 10.  The Employer agrees that upon request by the Business Representative of Local #677 he will present a list of jobs that he has been awarded and discuss the scope of same.

<div align="center">ARTICLE III
Hours of Work</div>

Section 1.   The regular workday shall be eight (8) working hours with a thirty (30) minute unpaid lunch break.  The regular work week shall be forty (40) hours.  The regular work week shall be Monday through Friday inclusive.  All work over eight (8) hours in one day and over forty (40) hours in any week shall be paid at the rate of one and one half times at the regular rate

<div align="center">Overtime</div>

Section 2.
(a)    Any work performed in excess of an eight (8) hour period in one day or in excess of forty (40) hours in a week, Monday through Friday, shall be considered overtime.  Any work performed on Saturday, Sunday, or holidays shall also be considered overtime.

(b)    The employer may designate a four (4) day, ten (10) hours per day, work schedule at straight time after notification to the union and where it is permissible and permitted by law. Once the work schedule is established the work schedule may not be changed again without notification to the union.

(c)    In the event of work lost due to inclement weather conditions, when working a four (4) day work week, Friday shall be a make up day at straight time.  When working a five (5) day work week, where it is permissible and permitted by law, Saturday may also be a make up day at straight time when work is lost during the regular work week.  Saturday will be on a voluntary basis (the make up day shall be offered to the whole crew).  Saturday will be straight time for Targeted Occupied Buildings. Proper notification is needed for the men working and for the supervisors.

Section 3.    With the exception of a make-up day, time and one-half shall be paid for work performed an Saturday.  Any work performed prior to the designated job start time or after eight (8) hours on Saturday shall be paid at double time.  Double time shall also be paid for all work performed on Sundays and holidays.  The following days shall be holidays recognized by this

<div align="right">3</div>

Agreement: New Year's Day, Memorial Day, Independence Day, Thanksgiving Day, Christmas Day, or days when such holidays are celebrated. No work shall be performed on Labor Day. There will be no split shifts.

Section 4. If an employee has missed a day because of illness, he may, by mutual agreement between Employer and the employee, make up the sick day at straight time on Saturday.

## Show-Up Time

Section 5. Unless notified by the previous day, all glaziers and apprentices will receive not less than two (2) hours pay (the straight time rate) when reporting to the shop. When a glazier apprentice is called for work, he shall be paid not less than two (2) hours based on his straight time hourly rate, or if an overtime period, the equivalent rate or which- ever is greater, provided weather is such that work can be performed. In the event that the weather is such that normal work cannot be performed, the men shall be placed on other jobs wherever possible. The Employer shall attempt to notify the men before they leave for work. The employee shall also attempt to call the Employer to see if work can be performed during inclement weather. Show-up time is paid due to inclement weather only after work starts.

## Emergency Work

Section 6.

(a)     Emergency work and repairs performed on Saturday and Sunday shall be paid at one and a half (1 & 1/2) times the prevailing hourly rate with a guarantee of at least two (2) hours. No emergency work is to be performed on holidays unless mutually agreed upon by the Union and the Employer. On emergency work, the Employer will notify the Union in writing within forty-eight (48) hours after the work is performed, of the job, the location, the names of men used, and the actual hours paid. On all emergency work, the employee shall be paid from home to home. Emergency work shall be defined as the replacement of glass breakages and the repair of inoperable equipment normally installed by the glazier.

(b)     If glaziers are requested to board up on Saturday or Sunday, such work shall be considered as emergency work and paid for as outlined above.

(c)     The Employer agrees that if an emergency arises during the course of a strike, which could endanger the public, he will call the Union Office to discuss the nature of the emergency and to request sufficient Glaziers to perform that specific emergency work only. All Glaziers utilized for this emergency work will be dispatched only by the Business Representative of Local #677.

## Two Hour Guarantee

Section 7. In the event that any employee during regular working hours begins work and works less than two (2) hours, he shall receive a minimum of two (2) hours pay. In the event an employee during regular working hours works more than two (2) hours, but less than a full day, he shall be paid for the actual hours worked.

4

Contract Work

<u>Section 8</u>.  Contract work shall be that type of work covered by the terms of the Agreement in which an Employer agrees to provide labor and/or materials.  The Employer will notify the Union in advance of any contract work to be performed on Saturday or Sunday, giving the job location, the number of men to be used, and the number of hours expected to be worked.  No work is to be performed on holidays unless mutually agreed upon by the Employer and the Union.

ARTICLE IV

Fund Payments

<u>Section 1</u>.

(a)    Payments to the Glaziers and Glass Workers Local Union #677 Pension Trust Fund, Union Savings Fund, Local Dues Fund, IUPAT Pension Fund, and D.C.#4 Health & Welfare Fund shall be paid no later than the 15th    day following the end of the month for which payments are due.  One check for the total amount due shall be remitted to the Local #677 Funds Office by the 15th day of that month.

(b)    Payments to the Glaziers and Glass Workers Local Union #677 Dues Check-Off Fund shall be paid no later than the 15th day following the end of the month for which payments are due.  One check for the Dues Check-Off owed shall be remitted to the D.C.#4 Office by the 15th day of that month.

(c)    Payments to the Painters D.C. #4 JATC Fund shall be paid no later than the 15th day following the end of the month for which payments are due.  One check for the JATC contribution owed shall be remitted to the D.C. #4 Funds Office by the 15th day of that month. If the payment is not received in the offices listed in Section 1 (a), (b), or (c) by the 25th of that month, then the Union shall have the right to remove all employees from the job, notwithstanding any other provisions of this Agreement. Any Employer who fails to have their payment in the offices listed in Section 1 (a), (b), or (c) by the 25th of that month, shall also pay a service charge of fifteen percent (15%) of the total amount due, together with the costs incurred by the Administrator, the Trustees, or the Union in collecting such delinquent accounts, including, but not limited to, reasonable attorney fees, court costs, and disbursements, in addition to the service charge of fifteen percent (15%).  All payments shall be made to the Financial Secretary, the Trustees, the Administrator of the Funds, or the Banker's Agent designated by the Union, on the Employer's reporting forms to be provided by the Union.  In any event, the "Employers Statement of Payments" <u>must</u> be received in the offices listed in Section 1 (a), (b), or (c)  by the 15th of the month.

Bonding Clause

<u>Section 2</u>.  An Employer whose established place of business is outside of the territorial jurisdiction of the Union, shall provide his surety bond for a period of one year in the amount of twenty thousand dollars ($ 20,000) for each fund covered by the terms of this Agreement, to be deposited with the Trustees.  The bond or cash, shall be held for the purpose of guaranteeing payments of the service charges and costs provided for herein and shall be returned, or so much of the same as left, as demands upon it are made, after the Trustees of the funds have certified that the Employer has paid everything owing the funds.  The bonding form supplied by the Union must be used.

5

**Section 3.** Any Employer, regardless of where his principal office is, shall be obligated to serve the same bond, or deposit the same amount of cash as provided above, if such Employer fails to make payments within the time prescribed in Section 1. In that event, the bond or cash deposit, shall remain with the Trustees for one year and at the end of that time, with Trustees' approval, may be withdrawn.

Penalty Clause

**Section 4.** In the event the Employer fails to send in a report or report the names of all employees and the correct number of hours for which payments shall be made, within fifteen (15) days after being notified by the Administrator of the fund that the Reporting Form is delinquent or in error, such failure shall constitute a violation of this agreement and for such failure the Employer shall be liable in the amount of $100.00 per fund, which shall include the Pension, IUPAT Pension, Health & Welfare, Apprentice, and Check-Off.

Change In Funds

**Section 5.** If, for economic reasons, it becomes necessary to change the amount of the dues check-off, or any other funds covered under the terms of this Agreement, the Employer will be allowed thirty (30) days after notification to comply. It is understood that any increase shall come from the employee's wages.

**Section 6.** All Employers agree to furnish such information as may be necessary concerning their employees as will enable the Trustees to carry out their duty to furnish adequate benefits to employees.

**Section 7.** Failure on the part of an Employer to contribute regularly as specified herein shall make him liable for all claims, damages, etc., plus errors in any payment.

**Section 8.** The Union shall have the right to withdraw its members from Employers who are delinquent in payment of the contributions provided for in this Article.

**Section 9.** All Employers signatory to this Agreement sending employees from Local #677 out of the jurisdiction of Local #677 agree to pay all funds required for their employees in the area in which they are working except where a reciprocal agreement exists.

ARTICLE V

Pay Conditions

**Section 1.** Wages shall be paid weekly by check no later than 4:30 P.M. on Thursday in the shop. Employees working on the job shall receive their pay check no later than 12:00 Noon on Thursday. Local employees working out-of-town for a local Employer must make arrangements with the Employer for distribution of their pay check. Employees compelled to wait beyond this hour as outlined in this Article, for their pay shall have such time credited to them as working time and shall be paid eight (8) hours additional pay at the straight time hourly rate for each day the employee has to wait for his pay except in case of extreme emergency. The Employer will make arrangements with a bank as close to the job as possible, if cashing company checks is a problem for his employees.

6

Lay Offs

**Section 2.** When an employee is laid off, he shall be paid in full on the next regular payday. This applies only to signatory contractors with an established place of business within the area Local #677 covers. All out-of-area contractors will pay in full, on the job, all Glaziers on the day they are laid off.

Pay Records

**Section 3.** Each employee is to receive a separate weekly record showing his regular and overtime hours, earnings, and all deductions that he can retain for his records. This pay record must correspond with the current week's paycheck.

**Section 4.** If an employee quits or is discharged, he shall be paid on the next regular payday.

Payroll Inspection

**Section 5.** (a) The Business Manager, a representative of the International Union, or the Administrator of any fund covered under the terms of this Agreement, shall have the right during business hours to inspect all time and payroll records, the 941 Quarterly Federal Reporting Forms, and the WT-4 New York State Withholding and Wage Reporting Forms which pertains to the employees covered by the terms of this Agreement. Such inspections will be done during regular working hours of the Employer. The appointment for such inspection must be scheduled by the Employer to take place within two (2) working days following the date of the original request. For an Employer whose time and payroll records are maintained outside of the jurisdiction of Local #677, he shall be required to have all said records available for inspection by the Business Manager of D. C. #4 at a reasonable location (agreed upon by both parties) within the city limits of Rochester, New York within a period of five (5) working days following.

**Section 5.** (CONT.)
(a) the date of the original request. The Employer will furnish the Union with copies of their WT-4 New York State Withholding and Wage Reporting forms along with copies of their employees' W-2 forms and they will be sent to the Union at the same time as the W-2's are given to their employees.

(b) The Employer agrees that he will maintain accurate payroll records indicating the days worked, the hours worked each day, all regular and overtime hours, as well as all travel time, mileage, and out-of-town expenses, if applicable.

Time Sheets

**Section 6.** The Employer agrees that he will either provide written daily time sheets, as approved by the Joint Trade Board, or use the time sheets supplied by Local #677, at cost, and will in no way alter or change the time sheet of any of his employees without the employee's consent. If any changes are necessary, the Employer will discuss said corrections or changes with the employee and/or his steward. All daily time sheets shall contain the date, name of jobs worked on that day, **task that was being performed and time spent on that task, classification of task,** overtime, riding time, driving time, mileage and/or expenses, if any. These daily time sheets shall be made available for inspection by the Business Representative of Local #677 immediately upon his request.

7

## ARTICLE VI

### Working Conditions

<u>Section 1</u>. All rigging, erection, and taking down of all types of scaffolding used by glaziers or apprentices is the work of the glazier.

### Material Handling Jobsite

<u>Section 2</u>. The Employer, at his discretion, may utilize Journeyman Glaziers, Apprentices, or Industrial Employees for jobsite material handling. This would include all glass and glazing material, (crafted or otherwise), and glazing accessories delivered and unloaded at the jobsite at a central location by a Delivering Agent.

### Signed Agreements

<u>Section 3</u>. Members of the Union will not work for any glazing and/or glass contractor that has not signed this Agreement, or one similar, as approved by the International Union of Painters and Allied Trades, AFL-CIO, or any Employer who does not live up to the provisions contained herein.

### Safety

<u>Section 4</u>.     (a)     The Employer shall, at all times, provide safe tools, materials and equipment and safe working conditions. If, at any time, in the opinion of an employee, shop steward, or Business Representative, such tools, materials, equipment, or working conditions are unsafe and constitute a hazard to health or physical safety, the employee shall not be required to work with such tools, materials, and equipment, or under such conditions unless or until they are made safe and approved by the Union or its authorized agent. No employee shall be dismissed or otherwise disciplined for refusal to work with such unsafe tools, materials, or equipment or under such unsafe working conditions. The Employer shall supply all required safety equipment, including rubber gloves, hard hats, and protective gear. The employee shall use all safety equipment provided by the Employer.

(b)     The Employer agrees that should one of his Glazier employees be requested by an O.S.H.A. Inspector to accompany him on a walk around inspection of a jobsite pertaining to safety conditions related to our equipment, work or work area, such time shall be considered working time. The employee will call the shop to notify management prior to making this inspection.

(c)     Mandatory Safety meetings will be held at the Employer's shop and each employee will be required to attend two (2) mandatory meetings on their own time annually. There will be one (1) safety meeting during coffee breaks.

(d)     A drug and alcohol program will be worked out at the Labor Management meetings.

## Scaffolding

<u>Section 5.</u>    (a)    Specialty scaffolding may be erected by the rental agency, such as swingstages, etc.

(b)    Scaffolding will be manned according to OSHA standards.

## Glass Trucks Marked

<u>Section 6.</u>    All glass trucks are to be marked conspicuously with the name and address of the company.

## Glazing on Jobsite

<u>Section 7.</u>    All glazing work shall be done on the jobsite whenever practical, and the Employer agrees that he will not subcontract, by piecework or otherwise, to any individual member of the Union or employee covered by this agreement.

<u>Section 8.</u>    All local employers signatory to this Agreement agree to notify Local #677 before sending any of their employees out of the jurisdiction of Local #677 to work for said contractor.

<u>Section 9.</u>    All out-of-area Employers, signatory to this Agreement, agree to notify Local #677 prior to sending any employees of said contractor to work in the jurisdiction of Local #677 and before any job is resumed that has been started by said contractor previously. The said out-of-area Employer further agrees that he will call the Local #677 office for all Glaziers needed.

## Higher Rate of Pay

<u>Section 10.</u>    The Employer agrees that when sending their employees out of their home area into an area with a higher rate of pay that these employees shall receive the higher rate of pay.  If the rate of pay is lower in that area, then the employees must receive the higher rate of pay.

## Mechanical Equipment

<u>Section 11.</u>    All mechanical glass setting equipment shall be assigned to the glaziers.

## Tool List

<u>Section 12.</u>

(a)    The following is a list of the tools to be furnished by the Employer as needed and the employee will be checked out for each item when issued and in when returned by the employee. The employee shall show proper respect and act responsibly with the Employer's tools and equipment.

1.) All power tools
2.) Extension cords
* 3.) Caulking gun
4.) Suction cup
5.) Glass Cutters
6.) Levels

7.) Hack Saw Blades
8.) Point Gun
9.) Drill bits & Counter sink
10.) Taps
* 11.) Rubber gloves
12.) All special tools required for specific products
13.) All special screwdrivers (except for straight and phillips)

9

LABOR AND MANAGEMENT WILL DISCUSS AND BRING UP-TO-DATE THE LIST OF TOOLS DURING THE CONTRACT YEAR.

\* Caulking guns and rubber gloves will be issued by the Employer and will be replaced when no longer useable item is turned in. Lost caulking guns or gloves will be replaced by the employee.

<u>Section 12.</u> (CONT.)

(b)    The following is a list of the hand tools that will be furnished by the employees:

| 1. | Tool Box | 15. | Cold Chisels |
|---|---|---|---|
| 2. | Combination Square | 16. | Putty Knives |
| 3. | Bevel Square | 17. | Screwdrivers (3 sizes straight) |
| 4. | Hacksaw Frame | 18. | Screwdrivers (3 sizes Phillips) |
| 5. | Glass Pliers | 19. | Offset screwdrivers |
| 6. | Channel Lock Pliers | 20. | Tape Measure (16' minimum) |
| 7. | Vise Grip Pliers | 21. | Files |
| 8. | Diagonal Cutters | 22. | Nail Sets |
| 9. | Tin Snips | 23. | Scratch Awl |
| 10. | Tap Wrench | 24. | Chalk Line |
| 11. | Crescent Wrench | 25. | Plumb Bob |
| 12. | Assorted Wrenches | 26. | Jimmy Bar |
| 13. | Claw Hammer | 27. | Pry Bar |
| 14. | Wood Chisels | 28. | Razor Blade Holder |

ARTICLE VII

Emergency Help

<u>Section 1</u>.   When an Employer calls another shop for help, the employee's travel time and car fare shall be paid.

<u>Section 2</u>.   The Employer agrees that the additional employees will receive, between the two Employers, an eight (8) hour day, but not to conflict with the provisions of Article III, Section 6 of this Agreement.

Glass Workers Working Outside

<u>Section 3</u>.   The Employer agrees that when additional employees are needed to perform services covered by the terms of this Agreement, providing there are no glaziers available, that he will give preference in employment to any person employed as an inside worker. Inside glass workers, working outside, shall be paid the outside rate.

Additional Help

<u>Section 4</u>.   The Employer agrees to compensate in wages all additional help performing glaziers work with glaziers rates prescribed in this Agreement.

Borrowing Men

**Section 5.** The Employer agrees that during periods of full employment that the Union shall have the right to borrow men when needed by mutual agreement.

Eight Hour Guarantee

**Section 6.** When an Employer calls the Union Office for additional Glaziers, they shall be guaranteed a minimum of eight (8) hours pay at the Glaziers' rate.

## ARTICLE VIII
### State and Federal Laws

**Section 1.** The Employer agrees that regardless of the number of employees he employs, he will provide and cover such employees with Workman's Compensation Insurance, Unemployment Insurance, Social Security, and New York State Disability Insurance. Members of the Union will not be permitted to work for any Employer, nor will the Union enter into a contract with any Employer, who does not prove to the Union's satisfaction that the above coverage is provided for the employee. All out-of-state Employers agree to sign a New York State application for voluntary D.B.L.(Form DB135) and voluntary application for coverage under Section 561 of the New York State Unemployment Insurance Law before work commences.

**Section 2.** The Union agrees that its members shall not be permitted to work for any Employer who does not provide the coverage outlined above.

**Section 3.** It is agreed that in case any provision of this Agreement shall be found contrary to law, such findings shall not in any other way affect other provisions of this Agreement.

**Section 4.** The Employer will comply with all State and Federal laws regarding safety and working conditions and no employee will be discriminated against for refusing to work under unsafe and/or substandard conditions as determined by State and Federal laws.

## ARTICLE IX
### Union Security

**Section 1.** EMPLOYMENT-The Employer agrees to recognize the Union as the sole bargaining agent for all employees covered by this Agreement.

**Section 2.** UNION SECURITY-Each employee covered by this Agreement shall become a member of the Union and remain in good standing for the duration of this Agreement, of the appropriate local affiliated with the Union, no later than the day following the seventh day after the beginning of the employment of such employee, or the signing date of this Agreement, whichever is later; or each employee shall make application to be a member in good standing for the duration of this Agreement.

**Section 3.** The Employer recognizes the right of any Union member to refuse to work with an employee who has worked for a period of more than seven (7) days and has not joined the Union or made application as provided herein, and any refusal to work either concerted or otherwise with such employee or employees, shall not constitute a breach of this Agreement.

New Hire (24 Hour Notice)

Section 4.  The Employer agrees to notify the Union in writing within twenty-four (24) hours after any non-member has been hired, providing the name, address, and Social Security number.  These cards will be furnished by the Union.

Section 5.  The Employer agrees to remove from work covered by this Agreement any employee who has failed to perform his obligation to become and remain a Union member as provided for in this Agreement.  Upon receipt of notice from the Union that such employee is delinquent, he shall be removed and shall not be re-employed by the Employer until he is reinstated and in good standing with Glaziers Local #677.

Section 6.    If, after a request by the Employer, the Union is unable to supply qualified workers, the Employer will be allowed to hire a non-member, as required to fill the Employer's requirement to complete the work for a given project.  The Employer shall notify the union in writing identifying the project in which non-members are being employed.  If, after hiring non-members, a member(s) of the Union become(s) available to fill position(s) being performed by non-members, it shall be at the sole discretion of the Employer whether to replace those non-members with Union members for the remainder of the project.

Section 7.  The Employer agrees that he will in no way discriminate against any employee for union membership, for serving on union committees, union officers, or stewards.  The Employer further agrees that he will grant up to a five (5) day leave for union officials to transact Union business with three (3) days prior notice.  If the leave is expected to be more than five (5) days, but not to exceed ten (10) days, prior notice of one (1) week shall be given.  Any leave over two (2) weeks must be mutually agreed upon by the Employer and the Union.

Section 8.    The Employer, being desirous of having in its employ fully qualified workmen, acknowledges the Union as one source of obtaining such workmen, in the event that some are available.  The Employer agrees to notify the Union when men are required, and he shall give the Union an equal opportunity with all other sources to provide suitable applicants.

Non-Discrimination Clause

Section 9.  The Employer and the Union agree not to discriminate against any employees or applicants for race, color, religion, national origin, sex or age.

No Leasing Clause

Section 10.  The Employer agrees not to enter into any private agreements or leases pertaining to the transportation of his employees, members of Local #677, and the use of their vehicles for trucking in connection with employment operations.

Picket Lines

Section 11.  The Employer agrees that the refusal of his employees to cross or work behind a picket line will not cause a breach of this Agreement, nor shall the refusal to cross or work behind such picket line be grounds for discharge.

12

Discharge

**Section 12.** The Employer agrees to notify the Business Manager of Local #677 immediately in case an employee is discharged, giving the reason for such discharge. In the event any employee shall be discharged from his employment and he believes he has been unjustly dealt with, he shall, within five (5) calendar days from the date of his discharge, follow the procedure outlined in the Grievance-Arbitration clause of this Agreement. If it is decided under any of the steps of the grievance procedure that the employee has been discharged without just cause, then the employee shall be reinstated in accordance with the Arbitrator's decision.

Thirty (30) Day Review

**Section 13.** All new journeymen hires are subject to a thirty (30) working day review in regards to their skill level. The Review Board will consist of the Employer Representative, their respective Forman and the Business Representative. If, at this time, it is determined that the new hire is not of full journeyman skill level, a determination will be made as to appropriate placement into the Apprenticeship Program.

Function of Management

**Section 14.** In the exercise of its functions of management, the Employer shall have the right to plan, direct and control operations of all its work, hire employees, direct the working forces in the field, assign employees to their jobs, discharge, suspend or discipline for proper cause (proper cause for discharge includes but is not necessarily limited to incompetence, insubordination, habitual tardiness or absenteeism) transfer, promote, demote, or lay off employees because of lack of work, or for other legitimate reasons, require employees to observe the Employer's and/or contracting entities, rules and regulations not inconsistent with this Agreement, institute a fair and consistent drug policy, regulate the amount of equipment used and the use of equipment and other property of the Employer, decide the number of employees needed; provided, however, that the Employer will not use its rights for the purpose of discrimination against any employee.

ARTICLE X

Stewards

**Section 1.** All shops, party to this Agreement employing glaziers, shall have a union steward. The shop steward shall be mutually appointed by the Joint Trade Board. The shop steward will then be the last man laid off, providing he is capable of doing the work available and the first man rehired.

**Section 2.** It is specifically understood that the steward shall have no authority to threaten, encourage work stoppages, or work slowdowns. To threaten, encourage, or cause such action, shall be grounds for discharge.

**Section 3.** The job steward shall be the last man to be laid off on all jobs. On any job where the steward has been laid off under this section, if the same job is resumed, he shall be the first man recalled to work providing the steward is capable of doing the work available. A working foreman shall not be eligible to be a steward

13

<u>Section 4</u>.    The Employer may remove the steward for just cause, subject to the arbitration procedure set forth in this Agreement.

<u>Section 5</u>.    The shop steward or job steward shall report to the Business Representative of the Union any violation of working agreement or working rules, in writing and by telephone.

<u>Section 6</u>.    No contractor may perform any of the services of employees covered under this Agreement exceeding normal working hours unless there is a steward on the job. This shall apply to contract work only.

<u>Section 7</u>.    The Business Representative shall appoint a steward on any job that Local Union #677 feels needs a steward.   This steward shall then be the first man placed or hired on said job, providing he is capable of doing the work available.

<u>Section 8</u>.    All stewards shall be working stewards.

<u>Section 9</u>.    The steward shall be allowed sufficient time to perform the duties assigned to him by the Business Representative of Local #677.

## ARTICLE XI

### Arbitration

<u>Section 1</u>.    During the term of this Agreement, any questions relating to its interpretation or its violation shall be submitted to the Chairman of the Joint Trade Board who will meet with both parties within three (3) days of the date of request.   If his recommendation is not satisfactory to either party, the dispute shall be submitted to and determined by the Joint Trade Board.   All violations must be submitted in writing.

## ARTICLE XII

### Grievance Procedure

<u>Section 1</u>.    JOINT TRADE BOARD-Each dispute or threatened dispute between the parties hereto must be submitted to the Joint Trade Board for decision. This Board is to meet within five (5) working days after request is presented in writing to all parties to this Agreement.

<u>Section 2</u>.    The Joint Trade Board shall have the power to interpret this Agreement, and said Board, as well as each of the parties hereto, shall have the power to enforce this Agreement, and the decision of said Board shall be final and binding on all parties to this Agreement.

<u>Section 3</u>.    The Joint Trade Board shall be composed of three (3) Union contractors and three (3) Journeymen members of Local Union #677,  Rochester, New York.

<u>Section 4</u>.    Members of the Joint Trade Board shall be selected from the membership of the respective negotiating committees, who have worked out the provisions of this Agreement, wherever possible.  The union contractors will select three (3) men to represent them.  Glaziers

14

Local Union #677 will select three (3) men to represent them. In the event a member from either group is not available, then an alternate shall be selected by their respective group. In all cases, the voting power of the Employers and the Union shall be on an equal basis.

Section 5.    In all matters before the Joint Trade Board for a decision, a majority vote of all members of the Board will rule. In the case of a tie vote and/or the Joint Trade Board's becoming deadlocked, the Joint Trade Board will petition the New York State Mediation Board to furnish one of its members to sit with the committee and determine the proper decision. If, for some reason, the said Mediation Board is unable to furnish one of its members, then the Joint Trade Board shall request a panel of arbitrators from the American Arbitration Association and the Joint Trade Board shall select from such panel one (1) member to sit with them as chairman. The decision shall be binding on all parties concerned. All expenses of the arbitration, except the cost to each party of its representative, attorneys, and witnesses, shall be borne by the loser.

Section 6.    Provided that both parties comply with the provisions of this Article and abide by the decision of the Joint Trade Board and/or the arbitrator appointed pursuant hereto, there shall be no suspension of work, strike, or lockout during the term of this Agreement.

## ARTICLE XIII

### Legal Provisions

Section 1.    It is agreed that in case any provisions of this Agreement shall be found to be contrary to law, such findings shall not in any way affect other provisions of this Agreement, which shall, notwithstanding, continue in full force and effect.

Section 2.

(a)    The parties agree that any Employer who violates any provision of this Agreement, or who directs any of his employees to perform services, the performances of which is under terms and conditions of employment inferior to those agreed upon in this Agreement, shall be liable to the Joint Trade Board in damages.

(b)    The Joint Trade Board shall, in its discretion, assess damages where involved and award the same to the person or parties so damaged. In addition, the Joint Trade Board is empowered to fine any Employer found to have violated the Agreement as prescribed herein an amount in excess of $250.00 to be paid into the Joint Apprenticeship Fund.

(c)    Where a decision of the Joint Trade Board becomes necessary to be confirmed under the laws of this state after thirty (30) days following notice of the award to the party charged, the cost for reasonable attorney fees, in accordance with the minimum bar rates for the area, to obtain such confirmation shall be borne by the party charged with such violation.

Section 3.    It is agreed that this Agreement only covers those who are signatories to the Agreement, and is in no way to be construed that the International Union of Painters and Allied Trades are part of this Agreement, and that no legal proceeding will be instituted against such Brotherhood for violation of this Agreement.

15

Section 4. There shall be no strikes, lockouts, slowdowns, stoppages, or other interference by any of the parties of this Agreement for its duration, except as provided for in Federal and State laws: and, in the event of any illegal strike, slowdown, stoppage, or other interference, the Union agrees to use every reasonable means at its disposal to persuade the men to go back to work.

## Abnormally Dangerous Conditions

Section 5. Nothing in this Agreement shall be construed to require an individual employee to render services without his consent nor shall the quitting of his labor because of abnormally dangerous conditions be deemed a strike.

## Sub-Contracting

Section 6. Should the Employer subcontract or employ other than glaziers for any of said work under conditions permitted by this agreement the employer agrees to advise and discuss such subcontracting or hiring of other trades with the union before actually selecting the subcontractor or other trades. If the union and the employer cannot agree over the assignment of work, the employer agrees to give the original assignment of work to the glaziers and be governed by the procedural rules for settlement of jurisdictional disputes.

Section 7. The subcontractor will be bound by the terms and conditions of this Agreement for the duration of the subcontracted project. Notwithstanding any other provision of this Agreement, if after request by the Employer, the Union is unable to supply qualified workers within 24 hours of such request, the Employer will be allowed to subcontract the work otherwise covered by this Agreement to non-members as required to fulfill the Employer's requirements to complete the work for a given project. The Employer shall notify the Union in writing, identifying the project in which non-members are being employed after he has subcontracted non-members to do so. If after subcontracting work to non-members, a member(s) of the Union become(s) available to fill the position(s) being subcontracted to non-members, it shall be at the sole discretion of the Employer whether to replace those non-members with Union members for the remainder of the project. The Employer's decision not to replace non-members with Union members after the work has been subcontracted to non-members shall not be grievable in any forum. Should the Employer choose to retain the non-members, it is with the express understanding that it shall be only for the duration of the project previously identified as part of this paragraph.

Section 8. In the event that the subcontracted work should fall into a disputed area with regard to the jurisdiction of another union building trade, the work will be accomplished with a 50/50 composite crew between the Glazier and the other union building trade.

Section 9. Other than the exceptions stated above for the term of this Agreement, the Employer agrees that it will not subcontract bargaining unit work to any Employer or employee who is not signatory to this full area wide Agreement. Bargaining unit work is described as work that is recognized as glaziers by State and Federal Departments of Labor

Section 10. All contractors signatory to a full project Agreement will hire labor exclusively through the Local #677 Union Hall to perform Collective Bargaining work covered under a full project Agreement.

16

**Section 11.**    All signatory contractors will have the right to subcontract any work other than glass and glazing to other trades.

**Section 12.**    All signatory contractors are not permitted to subcontract glass & glazing from other non-signatory glazing contractors in the jurisdictional area of this agreement.

<div align="center">Accretion Clause</div>

**Section 13.**  The Employer agrees that all accretions will be governed by the term as used by the NLRB as amended and will be included in the Bargaining Unit and covered by this Agreement.

<div align="center">Industrial Controversy</div>

**Section 14.**    All signatory contractors, for the duration of this agreement, agree not to sub-contract any work from a contractor that is involved in an industrial controversy with Local #677.

<div align="center">"Fifty, fifty" percent clause</div>

**Section 15.**

    (a)    The contractor or the Employer party to this agreement, when engaged in work outside the geographical jurisdiction of the Union party agreement, shall employ not less than fifty percent (50%) of the workers employed on such work from residents of the area where the work is performed or from among persons who are employed the greater percentage of their time in such area; any others shall be employed only from the contractor's home area.

    (b)    "The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to this agreement, comply with all of the the lawful clauses of the Collective Bargaining Agreement in effect in said other geographic jurisdiction and executed by the Employers of the industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits, and procedure for settlement of grievances set fourth therein; provided however, that where no affiliated Union has a current effective agreement covering such out-of-area work, the Employer shall perform such work in accordance with this agreement; and provided further that as to employees employed by such employer from within the geographic jurisdiction of the Union party to this agreement and who are brought into an outside jurisdiction, such employee shall be entitled to receive the wages          and conditions effective in either the home or outside jurisdiction whichever are more favorable to such employees. In situations covered by the last provision, fringe benefit contributions on behalf of such employees shall be made solely to their home funds in accordance with their governing documents, and the difference between the wages and benefit contributions required by the away funds and the home funds, if any, shall be paid to the employees as additional wages or benefits at the employees discretion. This provision is enforceable by the District Council or Local Union in whose jurisdiction the work is being performed, both through the procedure for settlement of grievances set forth in its applicable Collective Bargaining Agreement and through the courts, and is also enforceable by the Union party to this agreement, both through the procedure for settlement of grievances set forth in this agreement and through the courts."

## ARTICLE XIV

### Preservation of Work Clause

**Section 1.**

(a) To protect and preserve, for the employees covered by this agreement, all work they have performed and all work covered by this Agreement, and to prevent any device subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the Employer performs on-site construction work of the type covered by this Agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the Employer, through its officers, directors, partnered, owners, or stockholders, exercises directly or indirectly (through family members or otherwise), management, control, or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.

(b) All charges of violations of Section 14 (a) of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement on the handling of the grievances and the final and binding resolution of disputes. As a remedy for violations of this Article, the Joint Trade Board arbitrator shall be able, at the request of the Union, to require an Employer to pay 1) to affected employees covered by this Agreement, including registered applicants for the employment, the equivalent of wages those employees have lost because of violations, and 2) into the affected Joint Trust Funds to which this Agreement requires contributions, any delinquent contributions that result from violations. The Joint Trade Board or Arbitrator shall be able also to provide any other appropriate remedies, whether provided by law of this Agreement. The Union shall enforce a decision of the Joint Trade Board or Arbitrator under this Article only through arbitral, judicial, or government (for example, the National Labor Relations Board) channels.

(c) If, after an Employer has violated this Article, the Union and/or the Trustees of one or more Joint Trust Funds to which this Agreement requires contributions institute legal action to enforce an award by an Arbitrator or the Joint Trade Board remedying such violation, or defend an action that seeks to vacate such award, the Employer shall pay any accountants' and/or attorneys' fees incurred by the Union and/or the Joint Trust Funds, plus costs of the litigation, that have resulted from such legal action. This section does not affect other remedies, whether provided by the law or this Agreement, that may be available to the Union and/or the Joint Trust Funds.

## ARTICLE XV

### Labor Management Cooperation Fund

**Section 1.**    (a) Commencing with the 1st day of May, 2006, and for the duration of the Agreement, and any renewals or extension thereof, the Employer agrees to make payments to The Painters and Allied Trades Labor Management Cooperation Fund ("Fund") for each employee covered by this Agreement, as follows:

(b) For each hour or portion thereof, for which an employee receives pay, the Employer shall make a contribution of $.05/hr. to the Fund. (Included in Apprentice contribution total.) (for Rochester & Syracuse)

18

(c)    For the purpose of this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(d)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but not limited to, apprentices, helpers, trainees, and probationary employees.

(e)    The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust, as amended from time to time, establishing the Fund.

<u>Section 2.</u>    The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve as Employer Trustees, together with their successors.

<u>Section 3.</u>    All contributions shall be made at such time and in such manner as the Trustees required; and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

<u>Section 4.</u>    If an Employer fails to make contributions to the Fund within twenty (20) days after the date required by the trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

ARTICLE XVI

Rochester Area Wages

<u>Section 1.</u>    The following schedule of wage rates shall apply to all Glaziers for the duration of the Agreement:

| <u>Effective</u> | Rate Basic Wage |
|---|---|
| May 1st, 2006 | $21.50 hour |
| May 1st, 2007 | *$  1.16 |
| May 1st 2008 | *$  1.20 |

(* To be allocated prior to 5/01/07)
(* To be allocated prior to 5/01/08)

Height Pay

<u>Section 2.</u>    As of May 1st, 2006 a premium pay of fifty ($.50) per hour above the regular wage rate shall be paid on all swing stagework, beltwork, open steel or scaffolding twenty-five (25) feet from floor, ground, or roof levels. Overtime, if applicable, shall be paid at the premium rate. Height pay will not be paid on Scissors lifts, JLG, or Bucket lifts.

Foreman Pay

<u>Section 3.</u>    As of May 1st, 2006 and for the duration of this agreement, the foreman shall be appointed by the Employer at their discretion and receive a premium of one dollar ($ 1.00) per hour above the basic wage rate. Overtime, if applicable, shall be paid at the premium rate. On all jobs where another craft is supplying men on a composite basis, there shall be a Glazier Foreman in charge at the above rate. The foreman's rate does not apply to service work. On five man jobs and up to nine there will be at least one Foreman on that job.

General Foreman

<u>Section 4.</u>    On all jobs with ten (10) man crew plus the foreman, a General Foreman will be appointed and will receive two dollars ($2.00) per hour above the basic wage rate.

Metal Fabrication

<u>Section 5 .</u>    a.    As of May 1st, 2006 and for the duration of this agreement, the Employer shall employ a ratio of one journeyman to one apprentice or industrial worker to perform metal fabrication work in the shop.

b.    If the Business Representative of Local #677 is unable to meet demands for metal fabricators as prescribed by the above Section (a) he will appoint more industrial workers to such shop that is in demand, until such time that Local #677 can meet the required ratio. This decision will be made at the Business Representative's discretion.

20

Metal Fabrication Benefits

<u>Section 6.</u>    Employer contributions for fringe benefits for all journeymen performing metal fabrication work in the shop will be paid as described in Section 7 below:

Rochester Area Funds
(Glaziers)

<u>Section 7.</u>    The Employer agrees to participate, or continue to participate with the Union in a jointly administered Health Trust Fund, Pension Trust Fund and Apprentice Training Trust Fund, and IUPAT Pension Trust Fund. The Declaration of Trusts of the various funds covered by the terms of this Agreement, or any trust that is approved by the Employer and the Union, shall be considered part of this Agreement.

Contributions shall be as follows:

<u>Effective May 1, 2006:</u>

| | | |
|---|---|---|
| Pension Fund | $ 3.58 | per hour |
| Health & Welfare Fund | 6.31 | per hour |
| Apprentice Fund | .45 | per hour |
| IUPAT Pension Fund | 1.50 | per hour |
| TOTAL | $ 11.84 | per hour |

All contributions to the Funds shall be made on the hours paid, with the exception of overtime hours, which shall be paid on the hours worked. Upon signing this Agreement, the Employer agrees to be bound by, and subscribe to, the terms of the "Pension Trust Fund", and the "National Glaziers and Glass Workers Industry Apprenticeship Training and Journeyman Education Fund", and the Plan of Benefits provided for in these Agreements.

IUPAT Union and Industry Pension Fund

<u>Section 8.</u>    Commencing with the first day of May, 2006, and for the duration of the Agreement and any renewals or extension thereof, the Employer agrees to make payments to the IUPAT Union Industry Pension Fund for each employee covered by this Agreement as follows:

(a)    For each hour or portion thereof for which an employee receives pay, the Employer shall make a contribution of $ 1.50 to the above named Pension Fund; $ 1.50 to be allocated to the IUPAT Union and Industry Pension Plan and $ -0- to be allocated to the IUPAT Union and Industry Annuity Plan.

(b)    For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with this Agreement, shall    be counted as hours for which contributions are payable.

(c)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but not limited to, apprentices, helpers, trainees, and probationary employees.

(d)    The payments to the Pension Fund required above shall be made to the IUPAT Union Industry Pension Fund, which was established under an Agreement and Declaration of

21

Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had actually signed the same.

Section 9.    The Employer hereby irrevocably designates as its representatives on the Board of Trustees such as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

Section 10.  All contributions shall be made at such time and in such manner as the Trustees require; and, the Trustees may, at any time, conduct an audit in accordance with Article V, Section 5 (a) and (b) of said Agreement and Declaration of Trust.

Section 11.  If an Employer fails to make contributions to the Pension Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of this payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

Section 12.  The Pension Plan or Annuity Plan adopted by the Trustees shall at all times conform with the requirements of the Internal Revenue Code so as enable the Employer at all times to treat contributions to the IUPAT Union and Industry Pension Fund as a deduction for income tax purposes.

## Submission of Deduction Authorization

Section 13.  The Employer agrees that at the time of employment of any employee covered by the terms of the Agreement, he will submit to each employee, for his voluntary signature, a deduction authorization supplied by the Union for Dues Check-Off. The Employer further agrees that he will notify the Union of the failure of any employee to sign such dues deduction authorization, the number of hours worked, and the amount of money earned by such employee at least once a month.

Section 14.  Commencing May 1, 2006 and for so long as the employee has signed an authorization permitting the withholding from wages as more particularly set forth hereinafter, each Employer agrees to withhold from wages of the employees covered by this Agreement, the following sum per hour:  Effective May 1, 2006, seven percent (7%) of the Basic Wage Rate called for in this Agreement as specified in Article XVI, Section 1 above as five percent (5%) Dues Check-Off and two percent (2%) Union Savings, as well as $ 8.00 per week for Local Union Dues.  The authorization form is as follows:

## DUES ADMINISTRATION AUTHORIZATION CARD

TO:  Any Employer by whom I am employed during the balance of the 2006-2009 contract between Glaziers and Glass Workers Local Union #677 and Glazing Contractors of Rochester,

New York and vicinity. I authorize such employer to deduct from my pay for each week the sums of eight ($ 8.00) per week for Local Union Dues, two percent (2%) of my gross wages for Union Savings, and five percent (5%) of my gross wages for Dues Check-Off during the period May 1, 2006 to April 30, 2009, owing to Glaziers and Glass Workers Local Union #677 of Rochester, New York. Such deductions shall be made from my pay on each regularly scheduled payday and remitted to such bank, or agent designated by the Union no later than the 15th day of the following month which deductions shall be made. This authorization and assignment shall become effective with the date of execution of the agreement between the same Union and yourself and shall continue in full force and effect for a period not to exceed one (1) year or the life of this agreement, whichever occurs sooner, and for any subsequent period thereafter unless revoked by me within fifteen (15) days immediately preceding such contract term of one (1) year, whichever occurs sooner. The above revocation must be in writing and bear my signature and the date.

DATE: ..........................................................................

SIGNATURE: ..................................................................

# ARTICLE XVII

Rochester & Syracuse
Travel Time

Section 1.

(a)    From May 1, 2006 through April 30, 2009 travel time shall be paid based on two thirds (2/3) of $7.70 per hour at time and one-half. This shall apply Monday through Friday prior to designated job start time or after eight (8) hours from the shop to the job and from the job back to the shop. When directed to report to the shop to start the workday, the employee's workday should also end at the shop.

(b)    When the Employer directs his employees to report directly from home,   to start their workday on the job, within the jurisdiction of Local #677, no travel time shall be paid for traveling to the job, prior to the designated job to start time or for traveling back home after eight (8) hours. Any and all travel time between the designated job start time and eight (8) hours Monday through Friday will be paid at the straight time hourly rate and the applicable overtime rate on Saturday, Sunday, or holidays.

Rochester & Syracuse
Mileage

Section 2.  Employees requested to drive their own vehicle to and from jobs shall be compensated by the Employer at the rate of thirty-five cents ($.35) per mile, per man, from May 1, 2006 to April 30, 2009.

Rochester & Syracuse
Toll Roads

Section 3.  When employees are requested to use toll roads, they shall be compensated by the Employer.  A receipt will be furnished by the member for reimbursement.

Rochester & Syracuse
Supper  Allowance

Section 4.  It is agreed by the Employer that any employee working more than ten (10) hours shall be paid for his supper at the rate of seven dollars and fifty cents ($ 7.50).

Section 5.  All truck driving shall be considered as working time and shall receive the rate of wages called for in normal straight time hours worked.

ROCHESTER
Free Zone

Section 6.

(a)    It is agreed by the employees, if requested by the Employer, to drive their own vehicle from their home to the job within the jurisdiction of Rochester as described by Article 1, Section 1, they will do so at their own expense, other than parking expense.  If employees are requested by the Employer to drive their own vehicle from the Employer's shop, the mileage and travel time shall commence from the shop and back to the shop. Employees will not, at any time be requested to carry passengers or materials in their private vehicles. If  employees are requested

24

to drive their own vehicles outside of the free zone from their home to the job, their mileage shall start from a thirty five (35) mile radius from the Four Corners (Main & State Streets) to the job and back to the thirty five (35) mile radius.

(b)    Any Employer whose established place of business is located outside of Monroe County, the above mentioned free zone shall be a thirty five (35) mile radius from the Court House in said shop's vicinity instead of the Four Corners and said shop must have been established before the effective date of this Agreement (May 1, 2006). Any new locations must be negotiated at the time of establishment.

(c)    All mileage shall start from the Four Corners (Main & State Streets) for all employees working for an Employer who does not have an established place of business within the jurisdiction of Glaziers Local #677.

(d)    Any other area outside of the thirty-five (35) mile free zone shall be computed, at thirty-five cents ($ .35) per mile and the actual riding time, if applicable. The rate of pay for riding time listed herein shall be included in the gross wages, but the mileage is to be considered reimbursed expenses and, therefore, not taxable.

Section 6. (CONT.)

## SYRACUSE
### Free Zone

(a)    It is agreed by the employees, if requested by the Employer, to drive their own vehicle from their home to the job within the jurisdiction of Syracuse as described by Article 1, Section 2, they will do so at their own expense, other than parking expense. If employees are requested by the Employer to drive their own vehicle from the Employer's shop, the mileage and travel time shall commence from the shop back to the shop. Employees will not, at any time be requested to carry any passengers or materials in their private vehicles. If employees are requested to drive their own vehicle outside of the free zone from their home to the job, their mileage shall start from a thirty five (35) mile radius from Down Town Syracuse to the job and back to the thirty five (35) mile radius.

(b)    Any Employer whose established place of business is located outside of Onondaga County, the above mentioned free zone shall be a thirty five (35) mile radius from the Court House in said shop's vicinity instead of Down Town and said shop must have been established before the effective date of this Agreement (May 1, 2006). Any new locations must be negotiated at the time establishment.

(c)    All mileage shall start from Down Town Syracuse for all employees working for an Employer who does not have an established place of business within the jurisdiction of Glaziers Local #677.

(d)    Any other area outside of the thirty-five (35) mile free zone shall be computed at thirty-five cents ($ .35) per mile and the actual riding time, if applicable. The rate of pay for riding time listed herein shall be included in the gross wages, but the mileage is to be considered reimbursed expenses and, therefore, not taxable.

25

## ARTICLE XVIII

Rochester & Syracuse
Out-of-Town Expenses

<u>Section 1</u>.     When an employee is sent out-of-town and is instructed by the Employer to stay overnight, the Employer shall provide reasonable lodging and pay a minimum of $ 25.00 per day for meals and pay for transportation, or mileage when he is using his own vehicle to and from the job, and any reasonable parking expense. This amount is to be paid in a check or cash, in advance, separate from any payroll check or wages and must include a separate itemized record of all.

<u>Section 2</u>.     Where the above schedule proves to be inadequate, a weekly amount mutually agreed upon between the Employer and the employee will be advanced prior to starting work each week.

<u>Section 3</u>.     Employees requested to work out-of-town and to stay overnight shall be notified twenty-four (24) hours in advance, if possible.

<u>Section 4</u>.   The Employer agrees that he will notify Local #677 prior to sending his men out-of-town on room and board expenses.

## ARTICLE XIX
Rochester  Apprentice & Trainees

<u>Section 1</u>.

(a)     Painters District Council #4 J.A.T.C. (Joint Apprentice Training Committee) shall place all apprentices, discipline and removal in same accordance with  D.C. #4 rules and regulations.  The JATC Committee will appoint a glazier coordinator as an exclusive liaison between the signatory contractor and the District Council and be involved in all decisions that involve apprentices in the jurisdictional area contract.

(b)     There will be mandatory meetings of the JATC Committee yearly and all trustees of this jurisdictional area will be invited.

<u>Section 2</u>.   The Joint Apprenticeship Training Committee shall have the authority to control apprentices and trainees and protect their interests.  All apprentices will be indentured to the Joint Apprenticeship Committee for a four (4) year term.

<u>Section 3</u>.   The ratio of apprentice and trainees shall be governed by the Joint Apprenticeship Training Committee.

**Section 4.** Apprentice & Trainee wage rates shall be a percentage of the Journeyman's Wage Rate as follows:

| | | | | RATE | FRINGE | TOTAL |
|---|---|---|---|---|---|---|
| 1 a. | 50% | 1st | 1,000 hours | $ 10.75 | $ 8.26 | $ 19.01 |
| 1 b. | 55% | 2nd | 1,000 hours | 11.83 | 8.26 | 20.09 |
| 2 a. | 60% | 3rd | 1,000 hours | 12.90 | 10.41 | 23.31 |
| 2 b. | 65% | 4th | 1,000 hours | 13.98 | 10.59 | 24.57 |
| 3 a. | 70% | 5th | 1,000 hours | 15.05 | 10.77 | 25.82 |
| 3 b. | 75% | 6th | 1,000 hours | 16.13 | 10.95 | 27.08 |
| 4 a. | 80% | 7th | 1,000 hours | 17.20 | 11.12 | 28.32 |
| 4 b. | 90% | 8th | 1,000 hours | 19.35 | 11.48 | 30.83 |

**Section 4.** (CONT.)

| Fringe Benefits: | 1st Yr | 2nd Yr | 3rd Yr | 4th Yr |
|---|---|---|---|---|
| L.U. 677 Health | $ 6.31 | $ 6.31 | $ 6.31 | $ 6.31 |
| L.U. 677 Pension | -0- | $ 2.15/2.33 | $ 2.51/2.69 | $ 2.86/3.22 |
| D.C.# 4 Apprentice | .45 | .45 | .45 | .45 |
| I.U.P.A.T. Pension | 1.50 | 1.50 | 1.50 | 1.50 |

**Effective:**  May 1, 2006

**Wage Increase:**  May 1, 2007
May 1, 2008

**Contract Expires:**  April 30, 2009

**Deduction:**
Dues Check-Off: Three percent (3%) from gross wages.

Two percent (2%) Union Savings (Market Recovery) (From Start)

$ 8.00 per week Local Union Dues (From Start)

No pension fund contribution (Annuity) will be paid for the first year of the Apprenticeship Term. The pension fund contribution (Annuity) will be based on the above corresponding percentages for the second, third, fourth, & Fifth year apprentices. The IUPAT contribution will be paid for all five years.

**Section 5.**  Apprentices and Trainees shall not be allowed to work on any project without the presence of at least one (1) journeyman Glazier for each Apprentice or Trainee, except in the last six (6) months of their term.

**Section 6.**  In addition to the above rates, the Employer agrees to pay the Apprentice and Trainee any premium received by a journeyman Glazier. It is further agreed that the Employer will pay for Apprentices and Trainees to any funds covered by this Agreement for journeymen Glaziers except as stated in Article XIX, Section 4.

<u>Section 7</u>.    The Apprenticeship standard for Glaziers, formulated by the D.C. #4 Joint Apprenticeship Committee for Rochester, New York and vicinity, and approved by the State of New York, and subsequent amendments thereto, shall become a part of this contract.

### National Fund

<u>Section 8</u>.    The Employer and the Union hereby agree that they shall, for the term of this Agreement, be bound by the terms of the "D.C. #4/JATF" and the "Agreement and Declarations of Trust" establishing "IUPAT - JATF", which Agreement and Declarations shall be considered part of this Agreement, and that they shall at all times conform and adhere to the requirements for payment and remittance imposed, or be imposed, by the Trustees thereof: provided, further that the Employer agrees that he will, effective the 1st day of May, 2006 pay the sum of forty-five cents ($.45) per hour for each hour paid to each employee, covered by the terms of this Agreement, in his employ, to the office of the Trustees for said fund or the designated agent.

<u>Section 9</u>.  All Apprentices and Trainees shall pass a final written examination given by the Joint Apprenticeship Committee prior to graduating from our program.

### Journeyman Training

<u>Section 10</u>.    All employees, except Apprentices, must complete ten (10) hours of Journeyman Upgrading or Health & Safety Training provided by the J.A.T.C. per contract year in order to maintain employment with current or future companies.  Ten (10) hours of training per contract year is required.

<u>Section 11</u>.    For the purpose of this section, a year refers to the contract year.

### ARTICLE XX

### Syracuse Area Wages

<u>Section 1</u>.    The following schedule of wage rates shall apply to all Glaziers for the duration of the Agreement:

| Effective | Rate Basic Wage |
|---|---|
| May 1st, 2006 | $20.48 Hour |
| May 1st, 2007 | *$ 1.03 |
| May 1st, 2008 | *$ 1.06 |

(* To be allocated prior to 5/01/07)
(* To be allocated prior to 5/01/08)

28

Height Pay

**Section 2.**
As of May 1st, 2006 a premium pay of fifty cents ($.50) per hour above the regular wage rate shall be paid on all swing stagework, beltwork, open steel or scaffolding twenty-five (25) feet from floor, ground, or roof levels. Overtime, if applicable, shall be paid at the premium rate. Height pay will not be paid on Scissors lifts, JLG, or Bucket lifts.

Foreman Pay

**Section 3.**
As of May 1st, 2006 and for the duration of this agreement, the foreman shall be appointed by the Employer at their discretion and receive a premium of one dollar ($ 1.00) per hour above the basic wage rate. Overtime, if applicable, shall be paid at the premium rate. On all jobs where another craft is supplying men on a composite basis, there shall be a Glazier Foreman in charge at the above rate. The foreman's rate does not apply to service work. On five man jobs and up to nine there will be at least one Foreman on that job.

General Foreman

**Section 4.**
On all jobs with a ten (10) man crew plus the foreman, a General Foreman will be appointed and will receive two dollars ($2.00) per hour above the basic wage rate.

Metal Fabrication

**Section 5 .**
a.      As of May 1st, 2006 and for the duration of this Agreement, the Employer shall employ a ratio of one journeyman to one apprentice or industrial worker to perform metal fabrication work in the shop.

b.      If the Business Representative of Local #677 is unable to meet demands for metal fabricators as prescribed by the above Section (a), he will appoint more industrial workers to such shop that is in demand, until such time that Local #677 can meet the required ratio. This decision will be made at the business Representative's discretion.

Metal Fabrication Benefits

**Section 6.** Employer contributions for fringe benefits for all journeymen performing metal fabrication work in the shop shall be paid as described in Section 7 below.

Syracuse Area Funds

**Section 7.**
The Employer agrees to participate, or continue to participate with the Union in a jointly administered Health Trust Fund, Pension Trust Fund and Apprentice Training Trust Fund, and IUPAT Pension Trust Fund. The Declaration of Trusts of the various funds covered by the terms of this Agreement, or any trust that is approved by the Employer and the Union, shall be considered part of this Agreement.

29

Section 7. (CONT.)

Contributions shall be as follows:

Effective May 1, 2006:

| | | |
|---|---|---|
| Pension Fund | $ 2.18 | per hour |
| Health & Welfare Fund | 5.24 | per hour |
| Apprentice Fund | .40 | per hour |
| IUPAT Pension Fund | 1.10 | per hour |
| TOTAL | $ 8.92 | per hour |

All contributions to the Funds shall be made on the hours paid, with the exception of overtime hours, which shall be paid on the hours worked. Upon signing this Agreement, the Employer agrees to be bound by, and subscribe to, the terms of the "Pension Trust Fund", and the "National Glaziers and Glass Workers Industry Apprenticeship Training and Journeyman Education Fund", and the Plan of Benefits provided for in these Agreements. IUPAT Union and Industry Pension Fund

Section 8.    Commencing with the first day of May, 2006, and for the duration of the Agreement, and any renewals or extension thereof, the Employer agrees to make payments to the IUPAT Union Industry Pension Fund for each employee covered by this Agreement as follows:

(a)    For each hour or portion thereof for which an employee receives pay, the Employer shall make a contribution of $ 1.10 to the abovenamed Pension Fund; & 1.10 to be allocated to the IUPAT Union and Industry Pension Plan and $ -0- to be allocated to the IUPAT Union    and Industry Annuity Plan.

(b)    For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable.

(c)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but not limited to, apprentices, helpers, trainees, and probationary employees.

(d)    The payments to the Pension Fund required above shall be made    to the IUPAT Union Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had actually signed the same.

Section 9.    The Employer hereby irrevocably designates as its representatives on the Board of Trustees such as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

Section 10.    All contributions shall be made at such time and in such manner as the Trustees require; and, the Trustees may, at any time, conduct an audit in accordance with Article V, Section 5 (a) and (b) of said Agreement and Declaration of Trust.

<u>Section 11</u>. If an Employer fails to make contributions to the Pension Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of this payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

<u>Section 12</u>. The Pension Plan or Annuity Plan adopted by the Trustees shall at all times conform with the requirements of the Internal Revenue Code so as enable the Employer at all times to treat contributions to the IUPAT Union and Industry Pension Fund as a deduction for income tax purposes.

<p align="center">Submission of Deduction Authorization</p>

<u>Section 13</u>. The Employer agrees that at the time of employment of any employee covered by the terms of the Agreement, he will submit to each employee, for his voluntary signature, a deduction authorization supplied by the Union for Dues Check-Off. The Employer further agrees that he will notify the Union of the failure of any employee to sign such dues deduction authorization, the number of hours worked, and the amount of money earned by such employee at least once a month.

<u>Section 14</u>. Commencing May 1, 2006 for as long as the employee has signed an authorization permitting the withholding from wages as more particularly set forth hereinafter, each Employer agrees to withhold from wages of the employees covered by this Agreement, the following sum per hour: Effective May 1, 2006, six and one half percent (6 1/2%) of the Basic Wage Rate called for in this Agreement as specified in Article XX, Section 1 above as five percent (5%) Dues Check-Off and one and one half percent (1 1/2%) Union Savings, as well as $ 8.00 per week for Local Union Dues. The authorization form is as follows:

31

## DUES ADMINISTRATION AUTHORIZATION CARD

TO: Any Employer by whom I am employed during the balance of the 2006-2009 contract between Glaziers and Glass Workers Local Union #677 and Glazing Contractors of Syracuse, New York and vicinity. I authorize such employer to deduct from my pay for each week the sums of eight dollars ($ 8.00) per week for Local Dues, one and one half percent (1 1/2%) of my gross wages for Union Savings, and five percent (5%) of my gross wages for Dues Check-Off during the period May 1, 2006 to April 30, 2009, owing to Glaziers and Glass Workers Local Union #677 of Syracuse, New York. Such deductions shall be made from my pay on each regularly scheduled payday and remitted to such bank, or agent designated by the Union no later than the 15th day of the following month which deductions shall be made. This authorization and assignment shall become effective with the date of execution of the agreement between the same Union and yourself and shall continue in full force and effect for a period not to exceed one (1) year or the life of this agreement, whichever occurs sooner, and for any subsequent period thereafter unless revoked by me within fifteen (15) days immediately preceding such contract term of one (1) year, whichever occurs sooner. The above revocation must be in writing and bear my signature and the date.

DATE: ...............................................................

SIGNATURE: ...........................................................

## ARTICLE XXI

### Syracuse Apprentices and Trainees

Section 1.

(a)    Painters District Council #4 J.A.T.C. (Joint Apprentice Training Committee) shall place all apprentices, discipline and removal in same accordance with D.C. #4 rules and regulations. The JATC Committee will appoint a glazier coordinator as an exclusive liaison between the signatory contractors and the District Council and be involved in all decisions that involve apprentices in the jurisdictional area contract.

(b)    There will be mandatory meetings of the JATC Committee yearly and all trustees of this jurisdictional area will be invited.

Section 2. The Joint Apprenticeship Training Committee shall have the authority to control apprentices and trainees and protect their interests. All apprentices will be indentured to the Joint Apprenticeship Training Committee for a four (4) year term.

Section 3. The ratio of apprentice and trainees shall be governed by the Joint Apprenticeship Training Committee.

<u>Section 4</u>.   Starting pay will be no less than $ 8.00 per hour to start.  Apprentice and trainee wage rates will be as follows:

| | | | | RATE | FRINGE | TOTAL |
|---|---|---|---|---|---|---|
| 1 a. | 50% | 1st | 1,000 hours | $ 10.24 | $ 8.92 | $ 19.16 |
| 1 b. | 55% | 2nd | 1,000 hours | 11.26 | 8.92 | 20.18 |
| 2 a. | 60% | 3rd | 1,000 hours | 12.29 | 8.92 | 21.21 |
| 2 b. | 65% | 4th | 1,000 hours | 13.31 | 8.92 | 22.23 |
| 3 a. | 70% | 5th | 1,000 hours | 14.34 | 8.92 | 23.26 |
| 3 b. | 75% | 6th | 1,000 hours | 15.36 | 8.92 | 24.28 |
| 4 a. | 80% | 7th | 1,000 hours | 16.38 | 8.92 | 25.30 |
| 4 b. | 90% | 8th | 1,000 hours | 18.43 | 8.92 | 27.35 |

| <u>Fringe Benefits:</u> | <u>1st Yr</u> | <u>2nd Yr</u> | <u>3rd Yr</u> | <u>4th Yr</u> |
|---|---|---|---|---|
| L.U. 677 Health | $ 5.24 | $ 5.24 | $ 5.24 | $ 5.24 |
| L.U. 677 Pension | 2.18 | 2.18 | 2.18 | 2.18 |
| D.C.#4 Apprentice | .40 | .40 | .40 | .40 |
| I.U.P.A.T. Pension | 1.10 | 1.10 | 1.10 | 1.10 |

Effective:  May 1, 2006

Wage Increase:   May 1, 2007
                 May 1, 2008

Contract Expires:  April 30, 2009

Deduction:
Dues Check-Off:  Three percent (3%) from gross wages.

One and one half  percent (1 1/2%) Union Savings (Market Recovery) (From Start)

$ 8.00 per week Local Dues (From Start)

<u>Section 5</u>.  Apprentices and trainees shall not be allowed to work on any project without the presence of at least one (1) journeyman Glazier for each Apprentice or Trainee, except in the last six (6) months of their term.

<u>Section 6</u>.  In the addition to the above rates, the employer agrees to pay the Apprentice and Trainee any premium received by a Journeyman Glazier.  It is further agreed that the Employer will pay for Apprentices and Trainees to any funds covered by this Agreement for Journeyman Glaziers.

<u>Section 7</u>.  The Apprenticeship standard for Glaziers, formulated by the D.C. #4 Joint Apprenticeship Committee for Syracuse, New York and vicinity, and approved by the State of New York, and subsequent amendments thereto, shall become a part of this contract.

National Fund

<u>Section 8</u>. The Employer and the Union hereby agree that they shall for the term of this Agreement be bound by the terms of the "D.C. #4/JATF" and the "Agreement and Declarations of Trust" establishing "IUPAT - JATF" which Agreement and Declarations shall be considered part of this Agreement, and that they shall at times conform and adhere to the requirements for payment and remittance imposed, or be imposed, by the Trustees thereof: provided, further that the Employer agrees that he will, effective the 1st day of May, 2006 pay the sum of forty cents ($ .40) per hour paid to each employee, covered by the terms of this Agreement, in his employ, to the office of the Trustees for said fund or the designated agent.

<u>Section 9</u>. All Apprentices and Trainees shall pass a final written examination given by the Joint Apprenticeship Committee prior to graduating from our program.

Journeyman Training

<u>Section 10</u>.    All employees, except Apprentices, must complete ten (10) hours of Journeyman Upgrading or Health & Safety Training provided by the J.A.T.C. per contract year in order to maintain employment with current or future companies. Ten (10) hours of training per contract year is required.

<u>Section 11</u>. For the purpose of this section, a year refers to the contract year.

34

METAL FABRICATORS/RESIDENTIAL/SERVICE
Syracuse

## ARTICLE XXII

### Recognition

**Section 1.**

a.    This Section shall cover the rates of pay, rules and working conditions of all employees of the Employer, hereinafter referred to as Residential Glaziers, engaged in the installation, repairing, replacing and servicing of all residential windows, patio doors, exterior metal and glass work, including interior mirrors, shower doors, mirrored sliding doors, and entrances. This section shall also include the filming of glass.

b.    Residential glazing work shall be further defined as applying to work on any single family dwelling, Residential apartment buildings, Town Houses, and Condominiums that have no more than four (04) stories of living space, plus a basement. Any and all buildings, residential or otherwise, over four (04) stories are excluded from this Residential section.

### Hours, Overtime & Wages

**Section 2.**

a.    The regular work week will consist of any consecutive ten (10) hour day or any forty (40) hour week, Monday through Friday, with thirty (30) minutes for lunch from 12:00 noon to 12:30 pm.

b.    Any work performed in excess of such ten (10) hour period in one day or forty (40) hours in one week Monday through Friday, shall be considered overtime and be paid at time and one half. Any work performed on Saturday will be paid at time and one half, and, double time will be paid on Sundays and holidays.

c.    The wage rate for Metal Fabricators/Residential/Service shall be as follows:

| | |
|---|---|
| Basic Wage Rate | $14.00 |
| H&W Fund | $ 5.24 |
| Pension Fund | $ 2.18 |
| Total Benefits | $21.42 |

35

## METAL FABRICATORS/RESIDENTIAL/SERVICE

<u>Section 3.</u>    New hires will follow the pay schedule below.  Class A will receive no benefits for the first ninety (90) days.

| | | | |
|---|---|---|---|
| Class A | 0-3 MONTHS | 57% | $8.00 |
| Class B | 1st 6 MONTHS | 60% | 8.50 |
| Class C | 2nd 6 MONTHS | 64% | 9.00 |
| Class D | 3rd 6 MONTHS | 69% | 9.75 |
| Class E | 4th 6 MONTHS | 75% | 10.50 |
| Class F | 5th 6 MONTHS | 80% | 11.25 |
| Class G | 6th 6 MONTHS | 85% | 12.00 |
| Class H | 7th 6 MONTHS | 92% | 13.00 |
| Class I | 8th 6 MONTHS | 100% | 14.00 |

## SHOP/TRUCK DRIVERS

Section 4.    New hires will follow the pay schedule below.  Class A will receive no benefits for the first ninety (90) days.

| | | | |
|---|---|---|---|
| Class A | 0-3 MONTHS | 58% | $7.00 |
| Class B | 1st 6 MONTHS | 62% | 7.50 |
| Class C | 2nd 6 MONTHS | 66% | 8.00 |
| Class D | 3rd 6 MONTHS | 70% | 8.50 |
| Class E | 4th 6 MONTHS | 75% | 9.00 |
| Class F | 5th 6 MONTHS | 79% | 9.50 |
| Class G | 6th 6 MONTHS | 83% | 10.00 |
| Class H | 7th 6 MONTHS | 87% | 10.50 |
| Class I | 8th 6 MONTHS | 91% | 11.00 |
| Class J | 9th 6 MONTHS | 100% | 12.00 |

## FUNDS

<u>Section 5.</u>    The Employer agrees to participate, or continue to participate with the Union in a jointly administered Health Trust Fund ad Pension Trust Fund.  The Declaration of Trust of the various funds, covered by the terms of this Agreement, or any Trust that replaces them, that is approved by the Employer and the Union, shall be considered part of this Agreement. Contributions shall be as follows:

| PENSION FUND (Annuity) | HEALTH FUND | TOTAL |
|---|---|---|
| $2.18 / HOUR | $ 5.24 / HOUR | $7.42 / HOUR |

## Union Security

<u>Section 6</u>

a.    All employees covered by this Residential Section shall be required, as a condition of employment, to become and remain members of the Union, in good standing, during the term of this Agreement. All employees shall make application for membership in the Union within eight (08) days following their date of employment, or the effective date of this Agreement, whichever is later.

b.    Upon receipt of written notice from the Union that an employee has not acquired or maintained membership in good standing, therein as provided for in this section, the Company shall immediately discharge such employee, and such employee shall not be employed until he, or she, is reinstated and in good standing with Glaziers Local #677.

## Grievance Procedure

Section 7.    During the term of this Residential Section, any questions relating to its interpretation, or its violation, shall be submitted to the Chairman of the Joint Trade Board, who will meet with both parties, within three (03) days of the date of request. If the recommendation of the Chairman is not satisfactory to either party, the dispute shall be submitted to and be determined by the Joint Trades Board, as per Article XII of the Glaziers Collective Bargaining Agreement.

## Legal Provisions

Section 8.    It is agreed that in case any provisions of this Residential Section shall be found to be contrary to law, such findings shall not in any way affect other provisions of this Residential Section, which shall, notwithstanding, continue in full force and effect.

## ARTICLE XXIII

### Rochester and Syracuse Jurisdiction
### (ARTICLE 1, Section 1&2)

### Termination Procedure

Section 1.    This Agreement shall be in effect from May 1st, 2006 to and including April 30th, 2009 and shall continue in force and effect from year to year thereafter, unless either party desires to change any of the terms, in which case a written notice of the desire to change must be served to the other party at least sixty (60) days prior to the expiration date of April 30th, 2009.

Section 2.    If during the course of this Agreement, conditions warrant the changing of, or adding to, any of the terms of this Agreement, such changes or additions may be made with mutual approval of the Employer and the Union.

In witness whereof, the parties hereto sign their
names this day of:

DATE: _____

FOR: _____
              (Company)

BY: _____
          (Name)              (Title)

FOR:    Glaziers and Glass Workers Local Union #677

BY: _____
          (Name)              (Title)

38

## ARTICLE XXIV

### Rochester and Syracuse Jurisdiction
(ARTICLE 1, Section 1 & 2)

#### Termination Procedure

<u>Section 1.</u>  This Agreement shall be in effect from May 1, 2006 to and including April 30, 2009 and shall continue in force and effect from year to year thereafter, unless either party desires to change any of the terms, in which case a written notice of the desire to change must be served to the other party at least sixty (60) days prior to the expiration date of April 30, 2009.

<u>Section 2.</u>  If during the course of this Agreement, conditions warrant the changing of, or adding to, any of the terms of this Agreement, such changes or additions may be made with mutual approval of the Employer and the Union.

In witness whereof, the parties hereto sign their names this day of:

DATE:  5/31/06

FOR: Rose City Glass Co. Inc.
(Company)

BY: _____ Pres
(Name)          (Title)

FOR:   Glaziers and Glass Workers Local Union #677

BY: Robert Kroon  Business Rep
(Name)          (Title)

46

LOCAL UNION  G00677

DATES  5/1/06 - 4/30/09

PENSION PAGES  pp. 7, 16, 17, 18, 20, 21, 22, 33, 38

RATES  $1.60

WAGES  pg. 20

APPRENTICESHIP RATES  pg. 27, 33

SUBCONTRACTING  pg. 7/16

50% CLAUSE  pg. 17

JURISDICTION CLAUSE  pg. 17

ROLLOVER  pg. 38

MODEL CLAUSE  pg. 21, 22

LMCI  pg. 18 (.05¢)

PAT

JATC



PLAINTIFF'S
EXHIBIT

1b

AUG 1 5 2007

**ROCHESTER**

April 4, 2007

To All Employers:

At our April 2, 2007 Union meeting, the Glaziers and Apprentices voted to allocate the raise, effective May 1, 2007 as follows:

| Glaziers: | Current | Increase | Effective 5/01/07 |
|---|---|---|---|
| Basic Wage Rate | $ 21.50 | $  .25 | $ 21.75 |
| H & W Fund | 6.31 | .49 | 6.80 |
| Pension Fund | 3.58 | .27 | 3.85 |
| D.C. #4 Apprentice | .45 | .05 | .50 |
| Nat. Pension Fund | 1.50 | .10 | 1.60 |
| Totals | $ 33.34 | $  1.16 | $ 34.50 |

| Apprentices: | | % of Rate | New Rate Effective 5/01/07 | Pension Contribution |
|---|---|---|---|---|
| 1 a. | 1st    1,000 hours | 50% | $ 10.88 | $ 0.00 |
| 1 b. | 2nd   1,000 hours | 55% | 11.96 | 0.00 |
| 2 a. | 3rd   1,000 hours | 60% | 13.05 | 2.31 |
| 2 b. | 4th   1,000 hours | 65% | 14.14 | 2.50 |
| 3 a. | 5th   1,000 hours | 70% | 15.23 | 2.70 |
| 3 b. | 6th   1,000 hours | 75% | 16.31 | 2.89 |
| 4 a. | 7th   1,000 hours | 80% | 17.40 | 3.08 |
| 4 b. | 8th   1,000 hours | 90% | 19.58 | 3.47 |

Apprentices receive no annuity the 1st year.  The Apprentice is paid annuity beginning the second year and thereafter based on the percentage of base pay they are receiving, for example:  If they are being paid 60% of the base pay they will receive 60% of the total annuity.

If you have any questions, please do not hesitate to contact the Union Office.

Yours very truly,


Robert Sinopoli
Business Representative

cc - All Members

# Contract Profile (Inquiry)

## Master Collective Bargaining Agreement
**Title:** (LU677) GLAZIERS - ROCHESTER & SYRACUSE (GO0677) ID Number: DC000004180000010

| Effective Date | End Date | Status | Report Day | Report Form |
|---|---|---|---|---|
| 2006-05-01 | 2009-04-30 | ACTIVE | 20 | MONTHLY |
| Status Modification Date | Pension Participation Date | Administration Method | Revision Number | Revision Date |
| 2004-04-02 | 1991-06-01 | N | 01 | 2007-07-17 |

**Contract Rates Data**
**SCHEDULE A**

For RATE HISTORY & PROJECTIVE FUTURE please select Zone and Trade    

| | Zone | Affiliation | Zone Description | Trade | WAGES | IUPAT INDUSTRY PENSION | HEALTH WELFARE FUND | LOCAL APPRENTISHIP FUND | LO PE F |
|---|---|---|---|---|---|---|---|---|---|
| ⊙ | 01 | LU000677/DC000004 | GO0677 ROCHESTER NY/GLZRS & GLS WRKRS OUTSIDE | GLAZING | $21.75 | $1.60 | $6.80 | $0.50 | $ |

For SCHEDULE B please select Zone and Trade    

**Contract Features Data**

| Feature Code | Feature Description | Reference |
|---|---|---|
| FT100 | JURISDICTION GEOGRAPHIC | PAGE 1 |
| FT101 | JURISDICTION WORK | PAGE 1 |
| FT102 | SIGNATORY PAGE | PAGE 45 |
| FT105 | ADMINISTRATOR DUES | PAGE 24 |
| FT106 | PENSION AFFILIATED | |
| MC001 | 50/50 CLAUSE SECTION 241 | PAGE 20 |
| MC003 | WORK PRESERVATION - SEC 243 | PAGE 21 |
| MC005 | NATIONAL IUPAT-JATF SECT 245 | |
| MC014 | LMCI CLAUSE - SECTION 246 | PAGE 22 |
| MC016 | ROLLOVER CLAUSE | |

**Contract Funds Data**

| Zone | Fund Code | Fund Description | Reference |
|---|---|---|---|
| 01 | FND001 | WAGES | |
| | FND002 | IUPAT INDUSTRY PENSION | |
| | FND011 | HEALTH WELFARE FUND | |
| | FND024 | LOCAL APPRENTISHIP FUND | |
| | FND029 | LOCAL PENSION FUND | |





RECEIVED
JUL 10 2007
GENERAL PRESIDENT'S OFFICE

# GLAZIERS AND GLASS WORKERS

# UNION LOCAL #677

# MAY 1ST , 2006 THROUGH APRIL 30TH, 2009

# INDEX

| ARTICLE | CONTENTS | PAGE |
|---|---|---|
| Article I | Rochester Jurisdiction (Territory)<br>Syracuse Jurisdiction (Territory) | 1 |
| Article II | Scope of Work<br>Pre-Job Conference<br>Employer-Journeyman Ratio,<br>Area Residents Clause, Job Information List | 1-2<br>2<br>3 |
| Article III | Hours of Work, Overtime,<br>Show-Up Time, Emergency Work<br>Two Hour Guarantee<br>Contract Work | 4<br>5<br><br>6 |
| Article IV | Fund Payments<br>Bonding Clause, Penalty Clause, Change In Funds | 6<br>7 |
| Article V | Pay Conditions, Lay Offs, Pay Records,<br>Payroll Inspection<br>Time Sheets | 8<br>8-9<br>9 |
| Article VI | Working Conditions, Material Handling Jobsite,<br>Signed Agreements<br>Safety, Scaffolding, Glass Trucks Marked,<br>Glazing on Jobsite<br>Higher Rate of Pay,  Mechanical Equipment,<br>Tool List | 9<br><br>10<br>10-11<br>11<br>11-12 |
| Article VII | Emergency Help, Glass Workers Working Outside,<br>Additional Help<br>Borrowing Men, Eight Hour Guarantee | 12<br>12<br>13 |
| Article VIII | State and Federal Laws | 13 |
| Article IX | Union Security, New Hire (24 Hour Notice)<br>Non-Discrimination Clause, No Leasing Clause,<br>Picket Lines, Discharge<br>Thirty (30) Day Review, Function of Management | 14-15<br>15<br><br>16 |
| Article X | Stewards | 16-17 |
| Article XI | Arbitration | 17 |

| Article XII | Grievance Procedure | 17-18 |
|---|---|---|
| Article XIII | Legal Provisions | 18-19 |
| | Abnormally Dangerous Conditions, | 19 |
| | Sub-Contracting | 19-20 |
| | Accretion Clause | 20 |
| | Industrial Controversy, "Fifty-fifty" percent Clause | 21 |
| Article XIV | Preservation of Work Clause | 22 |
| Article XV | Labor Management Cooperation Fund | 23 |
| Article XVI | Rochester Area Wages, Height Pay, Foreman Pay | 24 |
| | General Foreman Pay, Metal Fabrication | |
| | Metal Fabrication Benefits, | 25 |
| | Rochester Area Funds (Glaziers) | |
| | IUPAT Union and Industry Pension Fund | 25-26 |
| | Submission of Deduction Authorization, | 26-27 |
| | Dues Administration Authorization Card | 27 |
| Article XVII | Rochester & Syracuse Travel Time, Mileage, | 28 |
| | Toll Roads, Supper Allowance | |
| | Rochester Free Zone | 29 |
| | Syracuse Free Zone | 30 |
| Article XVIII | Rochester & Syracuse Out-of-Town Expenses | 30-31 |
| Article XIX | Rochester Apprentice & Trainees, | 31/32 |
| | National Fund, Journeyman Training | 33 |
| Article XX | Syracuse Area Wages, Height Pay, | 33 |
| | Foreman Pay, General Foreman Pay, Metal | 34 |
| | Fabrication Metal Fabrication Benefits | |
| | Syracuse Area Funds | 34-35 |
| | IUPAT Union and Industry Pension Fund | 35-36 |
| | Submission of Deduction Authorization, | 36 |
| | Dues Administration Authorization Card | 37 |
| Article XXI | Syracuse Apprentices & Trainees | 37-39 |
| | National Fund, Journeyman Training | 39 |
| Article XXII | Syracuse - Metal Fabricators/Residential/Service | 40 |
| | Section, Recognition, Hours, Overtime, & Wages | |
| | Metal Fabricators/Residential/Service Schedule | 41 |
| | Shop/Truck Drivers Schedule, Funds | |

Union Security, Grievance Procedure,     42
Legal Provisions
Rochester and Syracuse Jurisdiction     43
Termination Procedure

GLAZIER'S AGREEMENT
May 1, 2006 thru April 30, 2009

This Agreement entered into between _____ of Rochester and/or Syracuse, New York hereafter known as the Employer and Glaziers & Glass Workers Local Union #677 of the International Union of Painters and Allied Trades, AFL-CIO hereafter known as the Union.

## ARTICLE I
Rochester Jurisdiction (Territory)

Section 1.  The jurisdiction of Local Union #677 (Rochester) includes the following counties: Monroe, Wayne, Seneca, Ontario, Livingston, and Yates County.

Syracuse Jurisdiction (Territory)

Section 2.

(a)     The jurisdiction of Local #677 (Syracuse) includes the following counties: Cortland, Herkimer, Cayuga, Oswego, Onondaga, Madison, Oneida, and such other territory as may be assigned to the Union by the International Union of Painters and Allied Trades of America.

(b)     Jefferson, St. Lawrence, and Lewis Counties (Northern Zone) are also in the Syracuse jurisdiction.  However, wages and benefits are to be paid at the Rochester wage and benefit rate.

## ARTICLE II
Scope of Work

Section 1.  The Employer recognizes the Union as having the jurisdiction over the installation, unloading, and distribution of all types and kinds of glass, materials used as substitutes for glass, all types of metal, plastics, and or store front construction, metal doors and frames, or any material that replaces the same, shower doors, art glass, residential glazing, solar heat collectors containing glass or glass substitutes, skylights, showcases, display cases, glass shelves and binning, removal of glass, Metal and/or sash in connection with our work, pre-glazed sash or any incidental work in connection with metal or glass doors, (FRP) doors, sliding type doors, sealants, caulking and any other type of installation work normally considered as glaziers' work by the Glass and Glazing Industry.  It is understood that the Employer's recognition of jurisdiction shall apply only when the Employer contracts for installation of any of the above materials. The fabrication of all metal inside the shop, all job-site fabrication, and assembly of all commercial sliding doors shall be done by the Glaziers.

(a)     The Employer also recognizes the Union as having jurisdiction over drivers of installation trucks.

(b)     When the Glazier has equity in the work claimed by another craft, the Employer agrees to abide by the decision of the Business Manager of District Council #4 and assign the work accordingly.

**Section 2.** The Employer recognizes the Union as having jurisdiction over the installation, unloading, and distribution of all material classified as the work of the glazier by the New York State Department of Labor.

**Section 3.** The Employer agrees to discuss the scope of any contract for work involving material to be supplied and/or labor to be performed at the request of the Union.

**Section 4.** Shop Stewards, the Business Manager, and International Representatives of the Brotherhood shall be given due recognition by the Employer to enter the Employer's place of business without interference, after reporting to the office according to past practice. Pre-Job Conference

**Section 5.** On all work not covered in this Article, the Employer agrees to abide by the following provisions:

    (1)    To meet with the Business Manager of the Union at the earliest opportunity prior to making an assignment.

    (2)    Whenever the Business Manager of the Union cannot agree with the Employer that the work is to be assigned to another craft other than Glaziers, the Employer agrees to give the original assignment of such work to the Glaziers, if there is a question of Jurisdiction.

**Section 6.** In the event any governmental agency, having full authority, or federal legislation is passed whereby the building industry is exempt from the provisions of the Taft-Hartley Act, the closed-shop clause will be immediately negotiated.

**Section 7.** The Employer shall not sublet by contract or otherwise glazing of any description to the employee governed by the terms of this Agreement. The Union agrees that no member will be permitted to enter into any glazing contract or contracts unless recognized by the Union as a Contractor under signed agreement.

## Employer-Journeyman Ratio

**Section 8.** An Employer working with the tools of the trade must employ journeymen at a ratio of one journeyman for each working member of the firm except for a one-man owner-operated shop. At all times the reduction of man power must be accomplished in reverse order by using the same ratio with the working member of the firm being the first to give up the use of the tools of the trade. At no time will it be permissible for an Employer and/or working member of the firm to work with the tools of the trade unless he is a member of Local #677.

## Area Residents Clause

**Section 9.** The Employer agrees wherever possible that preference in employment shall be given to persons who reside in the geographic area in which the Employer performs this work, in accordance with the following:

(a)    The geographic areas will consist of the Rochester area, as stated in Article I, Section 1, and the Syracuse area as stated in Article 1, Section 2. The Watertown area residents will consist of area residents that reside in Jefferson and St. Lawrence Counties.

2

(b)    To obtain the benefit of residence preference the person must have legally resided in the geographic area for one continuous year or more.  Such persons shall be called "Area Residents".

(c)    When the Employer requires employees, preference in hiring shall be  given  to  "Area Residents".

(d)    When layoffs or cutbacks in employment are necessary, "Area Residents" shall be preferred for being retained.

(e)    The preference for "Area Residents" provided in this Article shall be exercised without regard to union membership or non-membership and "Area Residents" is not deemed to imply or suggest any particular union membership.

Job Information List

**Section 10.**  The Employer agrees that upon request by the Business Representative of Local #677 he will present a list of jobs that he has been awarded and discuss the scope of same.

ARTICLE III
Hours of Work

**Section 1.**    The regular workday shall be eight (8) working hours with a thirty (30) minute unpaid lunch break.  The regular work week shall be forty (40) hours.  The regular work week shall be Monday through Friday inclusive.  All work over eight (8) hours in one day and over forty (40) hours in any week shall be paid at the rate of one and one half times at the regular rate

Overtime

**Section 2.**
(a)    Any work performed in excess of an eight (8) hour period in one day or in excess of forty (40) hours in a week, Monday through Friday, shall be considered overtime.  Any work performed on Saturday, Sunday, or holidays shall also be considered overtime.

(b)    The employer may designate a four (4) day, ten (10) hours per day, work schedule at straight time after notification to the union and where it is permissible and permitted by law. Once the work schedule is established the work schedule may not be changed again without notification to the union.

(c)    In the event of work lost due to inclement weather conditions, when working a four (4) day work week, Friday shall be a make up day at straight time.  When working a five (5) day work week, where it is permissible and permitted by law, Saturday may also be a make up day at straight time when work is lost during the regular work week.  Saturday will be on a voluntary basis (the make up day shall be offered to the whole crew).  Saturday will be straight time for Targeted Occupied Buildings. Proper notification is needed for the men working and for the supervisors.

**Section 3.**    With the exception of a make-up day, time and one-half shall be paid for work performed an Saturday.  Any work performed prior to the designated job start time or after eight (8) hours on Saturday shall be paid at double time.  Double time shall also be paid for all work performed on Sundays and holidays.  The following days shall be holidays recognized by this

Agreement: New Year's Day, Memorial Day, Independence Day, Thanksgiving Day, Christmas Day, or days when such holidays are celebrated. No work shall be performed on Labor Day. There will be no split shifts.

Section 4. If an employee has missed a day because of illness, he may, by mutual agreement between Employer and the employee, make up the sick day at straight time on Saturday.

## Show-Up Time

Section 5. Unless notified by the previous day, all glaziers and apprentices will receive not less than two (2) hours pay (the straight time rate) when reporting to the shop. When a glazier apprentice is called for work, he shall be paid not less than two (2) hours based on his straight time hourly rate, or if an overtime period, the equivalent rate or which- ever is greater, provided weather is such that work can be performed. In the event that the weather is such that normal work cannot be performed, the men shall be placed on other jobs wherever possible. The Employer shall attempt to notify the men before they leave for work. The employee shall also attempt to call the Employer to see if work can be performed during inclement weather. Show-up time is paid due to inclement weather only after work starts.

## Emergency Work

Section 6.

(a)    Emergency work and repairs performed on Saturday and Sunday shall be paid at one and a half (1 & 1/2) times the prevailing hourly rate with a guarantee of at least two (2) hours. No emergency work is to be performed on holidays unless mutually agreed upon by the Union and the Employer. On emergency work, the Employer will notify the Union in writing within forty-eight (48) hours after the work is performed, of the job, the location, the names of men used, and the actual hours paid. On all emergency work, the employee shall be paid from home to home. Emergency work shall be defined as the replacement of glass breakages and the repair of inoperable equipment normally installed by the glazier.

(b)    If glaziers are requested to board up on Saturday or Sunday, such work shall be considered as emergency work and paid for as outlined above.

(c)    The Employer agrees that if an emergency arises during the course of a strike, which could endanger the public, he will call the Union Office to discuss the nature of the emergency and to request sufficient Glaziers to perform that specific emergency work only. All Glaziers utilized for this emergency work will be dispatched only by the Business Representative of Local #677.

## Two Hour Guarantee

Section 7. In the event that any employee during regular working hours begins work and works less than two (2) hours, he shall receive a minimum of two (2) hours pay. In the event an employee during regular working hours works more than two (2) hours, but less than a full day, he shall be paid for the actual hours worked.

Contract Work

Section 8.  Contract work shall be that type of work covered by the terms of the Agreement in which an Employer agrees to provide labor and/or materials.  The Employer will notify the Union in advance of any contract work to be performed on Saturday or Sunday, giving the job location, the number of men to be used, and the number of hours expected to be worked.  No work is to be performed on holidays unless mutually agreed upon by the Employer and the Union.

ARTICLE IV

Fund Payments

Section 1.

(a)    Payments to the Glaziers and Glass Workers Local Union #677 Pension Trust Fund, Union Savings Fund, Local Dues Fund, IUPAT Pension Fund, and D.C.#4 Health & Welfare Fund shall be paid no later than the 15th    day following the end of the month for which payments are due.  One check for the total amount due shall be remitted to the Local #677 Funds Office by the 15th day of that month.

(b)    Payments to the Glaziers and Glass Workers Local Union #677 Dues Check-Off Fund shall be paid no later than the 15th day following the end of the month for which payments are due.  One check for the Dues Check-Off owed shall be remitted to the D.C.#4 Office by the 15th day of  that month.

(c)    Payments to the Painters D.C. #4 JATC Fund shall be paid no later than the 15th day following the end of the month for which payments are due.  One check for the JATC contribution owed shall be remitted to the D.C. #4 Funds Office by the 15th day of that month. If the payment is not received in the offices listed in Section 1 (a), (b), or (c) by the 25th of that month, then the Union  shall have the right to remove all employees from the job, notwithstanding any other provisions of this Agreement.  Any Employer who fails to have their payment in the offices listed in Section 1 (a), (b), or (c) by the 25th of that month, shall also pay a service charge of fifteen percent (15%) of the total amount due, together with the costs incurred by the Administrator, the Trustees, or the Union in collecting such delinquent accounts, including, but not limited to, reasonable attorney fees, court costs, and disbursements, in addition to the service charge of fifteen percent (15%).  All payments shall be made to the Financial Secretary, the Trustees, the Administrator of the Funds, or the Banker's Agent designated by the Union, on the Employer's reporting forms to be provided by the Union.  In any event, the "Employers Statement of Payments" must be received in the offices listed in Section 1 (a), (b), or (c)  by the 15th of the month.

Bonding Clause

Section 2.  An Employer whose established place of business is outside of the territorial jurisdiction of the Union, shall provide his surety bond for a period of one year in the amount of twenty thousand dollars ($ 20,000) for each fund covered by the terms of this Agreement, to be deposited with the Trustees.  The bond or cash, shall be held for the purpose of guaranteeing payments of the service charges and costs provided for herein and shall be returned, or so much of the same as left, as demands upon it are made, after the Trustees of the funds have certified that the Employer has paid everything owing the funds.  The bonding form supplied by the Union must be used.

5

Section 3.   Any Employer, regardless of where his principal office is, shall be obligated to serve the same bond, or deposit the same amount of cash as provided above, if such Employer fails to make payments within the time prescribed in Section 1.  In that event, the bond or cash deposit, shall remain with the Trustees for one year and at the end of that time, with Trustees' approval, may be withdrawn.

## Penalty Clause

Section 4.   In the event the Employer fails to send in a report or report the names of all employees and the correct number of hours for which payments shall be made, within fifteen (15) days after being notified by the Administrator of the fund that the Reporting Form is delinquent or in error, such failure shall constitute a violation of this agreement and for such failure the Employer shall be liable in the amount of $100.00 per fund, which shall include the Pension, IUPAT Pension, Health & Welfare, Apprentice, and Check-Off.

## Change In Funds

Section 5.   If, for economic reasons, it becomes necessary to change the amount of the dues check-off, or any other funds covered under the terms of this Agreement, the Employer will be allowed thirty (30) days after notification to comply.  It is understood that any increase shall come from the employee's wages.

Section 6.  All Employers agree to furnish such information as may be necessary concerning their employees as will enable the Trustees to carry out their duty to furnish adequate benefits to employees.

Section 7.   Failure on the part of an Employer to contribute regularly as specified herein shall make him liable for all claims, damages, etc., plus errors in any payment.

Section 8.  The Union shall have the right to withdraw its members from Employers who are delinquent in payment of the contributions provided for in this Article.

Section 9.  All Employers signatory to this Agreement sending employees from Local #677 out of the jurisdiction of Local #677 agree to pay all funds required for their employees in the area in which they are working except where a reciprocal agreement exists.

## ARTICLE V

## Pay Conditions

Section 1.   Wages shall be paid weekly by check no later than 4:30 P.M. on Thursday in the shop. Employees working on the job shall receive their pay check no later than 12:00 Noon on Thursday.  Local employees working out-of-town for a local Employer must make arrangements with the Employer for distribution of their pay check.  Employees compelled to wait beyond this hour as outlined in this Article, for their pay shall have such time credited to them as working time and shall be paid eight (8) hours additional pay at the straight time hourly rate for each day the employee has to wait for his pay except in case of extreme emergency.  The Employer will make arrangements with a bank as close to the job as possible, if cashing company checks is a problem for his employees.

6

## Lay Offs

<u>Section 2</u>. When an employee is laid off, he shall be paid in full on the next regular payday. This applies only to signatory contractors with an established place of business within the area Local #677 covers. All out-of-area contractors will pay in full, on the job, all Glaziers on the day they are laid off.

## Pay Records

<u>Section 3</u>. Each employee is to receive a separate weekly record showing his regular and overtime hours, earnings, and all deductions that he can retain for his records. This pay record must correspond with the current week's paycheck.

<u>Section 4</u>. If an employee quits or is discharged, he shall be paid on the next regular payday.

## Payroll Inspection

<u>Section 5</u>.     (a)      The Business Manager, a representative of the International Union, or the Administrator of any fund covered under the terms of this Agreement, shall have the right during business hours to inspect all time and payroll records, the 941 Quarterly Federal Reporting Forms, and the WT-4 New York State Withholding and Wage Reporting Forms which pertains to the employees covered by the terms of this Agreement. Such inspections will be done during regular working hours of the Employer. The appointment for such inspection must be scheduled by the Employer to take place within two (2) working days following the date of the original request. For an Employer whose time and payroll records are maintained outside of the jurisdiction of Local #677, he shall be required to have all said records available for inspection by the Business Manager of D. C. #4 at a reasonable location (agreed upon by both parties) within the city limits of Rochester, New York within a period of five (5) working days following.

<u>Section 5</u>. (CONT.)
      (a)      the date of the original request. The Employer will furnish the Union with copies of their WT-4 New York State Withholding and Wage Reporting forms along with copies of their employees' W-2 forms and they will be sent to the Union at the same time as the W-2's are given to their employees.
      (b)      The Employer agrees that he will maintain accurate payroll records indicating    the days worked, the hours worked each day, all regular and overtime hours, as well as all travel time, mileage, and out-of-town expenses, if applicable.

## Time Sheets

<u>Section 6</u>. The Employer agrees that he will either provide written daily time sheets, as approved by the Joint Trade Board, or use the time sheets supplied by Local #677, at cost, and will in no way alter or change the time sheet of any of his employees without the employee's consent. If any changes are necessary, the Employer will discuss said corrections or changes with the employee and/or his steward. All daily time sheets shall contain the date, name of jobs worked on that day, **task that was being performed and time spent on that task, classification of task**, overtime, riding time, driving time, mileage and/or expenses, if any. These daily time sheets shall be made available for inspection by the Business Representative of Local #677 immediately upon his request.

## ARTICLE VI

### Working Conditions

<u>Section 1</u>. All rigging, erection, and taking down of all types of scaffolding used by glaziers or apprentices is the work of the glazier.

### Material Handling Jobsite

<u>Section 2</u>. The Employer, at his discretion, may utilize Journeyman Glaziers, Apprentices, or Industrial Employees for jobsite material handling. This would include all glass and glazing material, (crafted or otherwise), and glazing accessories delivered and unloaded at the jobsite at a central location by a Delivering Agent.

### Signed Agreements

<u>Section 3</u>. Members of the Union will not work for any glazing and/or glass contractor that has not signed this Agreement, or one similar, as approved by the International Union of Painters and Allied Trades, AFL-CIO, or any Employer who does not live up to the provisions contained herein.

### Safety

<u>Section 4</u>.    (a)    The Employer shall, at all times, provide safe tools, materials and equipment and safe working conditions. If, at any time, in the opinion of an employee, shop steward, or Business Representative, such tools, materials, equipment, or working conditions are unsafe and constitute a hazard to health or physical safety, the employee shall not be required to work with such tools, materials, and equipment, or under such conditions unless or until they are made safe and approved by the Union or its authorized agent. No employee shall be dismissed or otherwise disciplined for refusal to work with such unsafe tools, materials, or equipment or under such unsafe working conditions. The Employer shall supply all required safety equipment, including rubber gloves, hard hats, and protective gear. The employee shall use all safety equipment provided by the Employer.

(b)    The Employer agrees that should one of his Glazier employees be requested by an O.S.H.A. Inspector to accompany him on a walk around inspection of a jobsite pertaining to safety conditions related to our equipment, work or work area, such time shall be considered working time. The employee will call the shop to notify management prior to making this inspection.

(c)    Mandatory Safety meetings will be held at the Employer's shop and each employee will be required to attend two (2) mandatory meetings on their own time annually. There will be one (1) safety meeting during coffee breaks.

(d)    A drug and alcohol program will be worked out at the Labor Management meetings.

8

## Scaffolding

<u>Section 5</u>.    (a)    Specialty scaffolding may be erected by the rental agency, such as swingstages, etc.

(b)    Scaffolding will be manned according to OSHA standards.

## Glass Trucks Marked

<u>Section 6</u>.    All glass trucks are to be marked conspicuously with the name and  address of the company.

## Glazing on Jobsite

<u>Section 7</u>.    All glazing work shall be done on the jobsite whenever practical, and the Employer agrees that he will not subcontract, by piecework or otherwise, to any individual member of the Union or employee covered by this agreement.

<u>Section 8</u>.    All local employers signatory to this Agreement agree to notify Local #677 before sending any of their employees out of the jurisdiction of Local #677 to work for said contractor.

<u>Section 9</u>.    All out-of-area Employers, signatory to this Agreement, agree to notify Local  #677 prior to sending any employees of said contractor to work in the jurisdiction of Local #677 and before any job is resumed that has been started by said contractor previously.  The said out-of-area Employer further agrees that he will call the Local #677 office for all Glaziers needed.

## Higher Rate of Pay

<u>Section 10</u>.  The Employer agrees that when sending their employees out of their home area into an area with a higher rate of pay that these employees shall receive the higher rate of pay.  If the rate of pay is lower in that area, then the employees must receive the higher rate of pay.

## Mechanical Equipment

<u>Section 11</u>.  All mechanical glass setting equipment shall be assigned to the glaziers.

## Tool List

<u>Section 12</u>.

(a)    The following is a list of the tools to be furnished by the Employer as  needed  and the employee will be checked out for each item when issued and in when returned by the employee.  The employee shall show proper respect and act responsibly with the Employer's tools and equipment.

1.) All power tools
2.) Extension cords
* 3.) Caulking gun
4.) Suction cup
5.) Glass Cutters
6.) Levels

7.) Hack Saw Blades
8.) Point Gun
9.) Drill bits & Counter sink
10.) Taps
* 11.) Rubber gloves
12.) All special tools required for specific products
13.) All special screwdrivers (except for straight and phillips)

9

LABOR AND MANAGEMENT WILL DISCUSS AND BRING UP-TO-DATE THE LIST OF TOOLS DURING THE CONTRACT YEAR.

\* Caulking guns and rubber gloves will be issued by the Employer and will be replaced when no longer useable item is turned in.  Lost caulking guns or gloves will be replaced by the employee.

Section 12. (CONT.)

    (b)    The following is a list of the hand tools that will be furnished by the employees:

| | | | |
|---|---|---|---|
| 1. | Tool Box | 15. | Cold Chisels |
| 2. | Combination Square | 16. | Putty Knives |
| 3. | Bevel Square | 17. | Screwdrivers (3 sizes straight) |
| 4. | Hacksaw Frame | 18. | Screwdrivers (3 sizes Phillips) |
| 5. | Glass Pliers | 19. | Offset screwdrivers |
| 6. | Channel Lock Pliers | 20. | Tape Measure (16' minimum) |
| 7. | Vise Grip Pliers | 21. | Files |
| 8. | Diagonal Cutters | 22. | Nail Sets |
| 9. | Tin Snips | 23. | Scratch Awl |
| 10. | Tap Wrench | 24. | Chalk Line |
| 11. | Crescent Wrench | 25. | Plumb Bob |
| 12. | Assorted Wrenches | 26. | Jimmy Bar |
| 13. | Claw Hammer | 27. | Pry Bar |
| 14. | Wood Chisels | 28. | Razor Blade Holder |

## ARTICLE VII

### Emergency Help

Section 1.  When an Employer calls another shop for help, the employee's travel time and car fare shall be paid.

Section 2.  The Employer agrees that the additional employees will receive, between the two Employers, an eight (8) hour day, but not to conflict with the provisions of Article III, Section 6 of this Agreement.

### Glass Workers Working Outside

Section 3.  The Employer agrees that when additional employees are needed to perform services covered by the terms of this Agreement, providing there are no glaziers available, that he will give preference in employment to any person employed as an inside worker.  Inside glass workers, working outside, shall be paid the outside rate.

### Additional Help

Section 4.  The Employer agrees to compensate in wages all additional help performing glaziers work with glaziers rates prescribed in this Agreement.

### Borrowing Men

**Section 5.** The Employer agrees that during periods of full employment that the Union shall have the right to borrow men when needed by mutual agreement.

### Eight Hour Guarantee

**Section 6.** When an Employer calls the Union Office for additional Glaziers, they shall be guaranteed a minimum of eight (8) hours pay at the Glaziers' rate.

## ARTICLE VIII
### State and Federal Laws

**Section 1.** The Employer agrees that regardless of the number of employees he employs, he will provide and cover such employees with Workman's Compensation Insurance, Unemployment Insurance, Social Security, and New York State Disability Insurance. Members of the Union will not be permitted to work for any Employer, nor will the Union enter into a contract with any Employer, who does not prove to the Union's satisfaction that the above coverage is provided for the employee. All out-of-state Employers agree to sign a New York State application for voluntary D.B.L.(Form DB135) and voluntary application for coverage under Section 561 of the New York State Unemployment Insurance Law before work commences.

**Section 2.** The Union agrees that its members shall not be permitted to work for any Employer who does not provide the coverage outlined above.

**Section 3.** It is agreed that in case any provision of this Agreement shall be found contrary to law, such findings shall not in any other way affect other provisions of this Agreement.

**Section 4.** The Employer will comply with all State and Federal laws regarding safety and working conditions and no employee will be discriminated against for refusing to work under unsafe and/or substandard conditions as determined by State and Federal laws.

## ARTICLE IX
### Union Security

**Section 1.** EMPLOYMENT-The Employer agrees to recognize the Union as the sole bargaining agent for all employees covered by this Agreement.

**Section 2.** UNION SECURITY-Each employee covered by this Agreement shall become a member of the Union and remain in good standing for the duration of this Agreement, of the appropriate local affiliated with the Union, no later than the day following the seventh day after the beginning of the employment of such employee, or the signing date of this Agreement, whichever is later; or each employee shall make application to be a member in good standing for the duration of this Agreement.

**Section 3.** The Employer recognizes the right of any Union member to refuse to work with an employee who has worked for a period of more than seven (7) days and has not joined the Union or made application as provided herein, and any refusal to work either concerted or otherwise with such employee or employees, shall not constitute a breach of this Agreement.

11

New Hire (24 Hour Notice)

Section 4. The Employer agrees to notify the Union in writing within twenty-four (24) hours after any non-member has been hired, providing the name, address, and Social Security number. These cards will be furnished by the Union.

Section 5. The Employer agrees to remove from work covered by this Agreement any employee who has failed to perform his obligation to become and remain a Union member as provided for in this Agreement. Upon receipt of notice from the Union that such employee is delinquent, he shall be removed and shall not be re-employed by the Employer until he is reinstated and in good standing with Glaziers Local #677.

Section 6. If, after a request by the Employer, the Union is unable to supply qualified workers, the Employer will be allowed to hire a non-member, as required to fill the Employer's requirement to complete the work for a given project. The Employer shall notify the union in writing identifying the project in which non-members are being employed. If, after hiring non-members, a member(s) of the Union become(s) available to fill position(s) being performed by non-members, it shall be at the sole discretion of the Employer whether to replace those non-members with Union members for the remainder of the project.

Section 7. The Employer agrees that he will in no way discriminate against any employee for union membership, for serving on union committees, union officers, or stewards. The Employer further agrees that he will grant up to a five (5) day leave for union officials to transact Union business with three (3) days prior notice. If the leave is expected to be more than five (5) days, but not to exceed ten (10) days, prior notice of one (1) week shall be given. Any leave over two (2) weeks must be mutually agreed upon by the Employer and the Union.

Section 8. The Employer, being desirous of having in its employ fully qualified workmen, acknowledges the Union as one source of obtaining such workmen, in the event that some are available. The Employer agrees to notify the Union when men are required, and he shall give the Union an equal opportunity with all other sources to provide suitable applicants.

Non-Discrimination Clause

Section 9. The Employer and the Union agree not to discriminate against any employees or applicants for race, color, religion, national origin, sex or age.

No Leasing Clause

Section 10. The Employer agrees not to enter into any private agreements or leases pertaining to the transportation of his employees, members of Local #677, and the use of their vehicles for trucking in connection with employment operations.

Picket Lines

Section 11. The Employer agrees that the refusal of his employees to cross or work behind a picket line will not cause a breach of this Agreement, nor shall the refusal to cross or work behind such picket line be grounds for discharge.

12

## Discharge

**Section 12.** The Employer agrees to notify the Business Manager of Local #677 immediately in case an employee is discharged, giving the reason for such discharge. In the event any employee shall be discharged from his employment and he believes he has been unjustly dealt with, he shall, within five (5) calendar days from the date of his discharge, follow the procedure outlined in the Grievance-Arbitration clause of this Agreement. If it is decided under any of the steps of the grievance procedure that the employee has been discharged without just cause, then the employee shall be reinstated in accordance with the Arbitrator's decision.

## Thirty (30) Day Review

**Section 13.** All new journeymen hires are subject to a thirty (30) working day review in regards to their skill level. The Review Board will consist of the Employer Representative, their respective Forman and the Business Representative. If, at this time, it is determined that the new hire is not of full journeyman skill level, a determination will be made as to appropriate placement into the Apprenticeship Program.

## Function of Management

**Section 14.** In the exercise of its functions of management, the Employer shall have the right to plan, direct and control operations of all its work, hire employees, direct the working forces in the field, assign employees to their jobs, discharge, suspend or discipline for proper cause (proper cause for discharge includes but is not necessarily limited to incompetence, insubordination, habitual tardiness or absenteeism) transfer, promote, demote, or lay off employees because of lack of work, or for other legitimate reasons, require employees to observe the Employer's and/or contracting entities, rules and regulations not inconsistent with this Agreement, institute a fair and consistent drug policy, regulate the amount of equipment used and the use of equipment and other property of the Employer, decide the number of employees needed; provided, however, that the Employer will not use its rights for the purpose of discrimination against any employee.

## ARTICLE X

## Stewards

**Section 1.** All shops, party to this Agreement employing glaziers, shall have a union steward. The shop steward shall be mutually appointed by the Joint Trade Board. The shop steward will then be the last man laid off, providing he is capable of doing the work available and the first man rehired.

**Section 2.** It is specifically understood that the steward shall have no authority to threaten, encourage work stoppages, or work slowdowns. To threaten, encourage, or cause such action, shall be grounds for discharge.

**Section 3.** The job steward shall be the last man to be laid off on all jobs. On any job where the steward has been laid off under this section, if the same job is resumed, he shall be the first man recalled to work providing the steward is capable of doing the work available. A working foreman shall not be eligible to be a steward

Section 4.   The Employer may remove the steward for just cause, subject to the arbitration procedure set forth in this Agreement.

Section 5.   The shop steward or job steward shall report to the Business Representative of the Union any violation of working agreement or working rules, in writing and by telephone.

Section 6.   No contractor may perform any of the services of employees covered under this Agreement exceeding normal working hours unless there is a steward on the job. This shall apply to contract work only.

Section 7.   The Business Representative shall appoint a steward on any job that Local Union #677 feels needs a steward.  This steward shall then be the first man placed or hired on said job, providing he is capable of doing the work available.

Section 8.   All stewards shall be working stewards.

Section 9.   The steward shall be allowed sufficient time to perform the duties assigned to him by the Business Representative of Local #677.

ARTICLE XI

Arbitration

Section 1.   During the term of this Agreement, any questions relating to its interpretation or its violation shall be submitted to the Chairman of the Joint Trade Board who will meet with both parties within three (3) days of the date of request.  If his recommendation is not satisfactory to either party, the dispute shall be submitted to and determined by the Joint Trade Board.  All violations must be submitted in writing.

ARTICLE XII

Grievance Procedure

Section 1.   JOINT TRADE BOARD-Each dispute or threatened dispute between the parties hereto must be submitted to the Joint Trade Board for decision. This Board is to meet within five (5) working days after request is presented in writing to all parties to this Agreement.

Section 2.   The Joint Trade Board shall have the power to interpret this Agreement, and said Board, as well as each of the parties hereto, shall have the power to enforce this Agreement, and the decision of said Board shall be final and binding on all parties to this Agreement.

Section 3.   The Joint Trade Board shall be composed of three (3) Union contractors and three (3) Journeymen members of Local Union #677, Rochester, New York.

Section 4.   Members of the Joint Trade Board shall be selected from the membership of the respective negotiating committees, who have worked out the provisions of this Agreement, wherever possible.  The union contractors will select three (3) men to represent them.  Glaziers

14

Local Union #677 will select three (3) men to represent them. In the event a member from either group is not available, then an alternate shall be selected by their respective group. In all cases, the voting power of the Employers and the Union shall be on an equal basis.

Section 5. In all matters before the Joint Trade Board for a decision, a majority vote of all members of the Board will rule. In the case of a tie vote and/or the Joint Trade Board's becoming deadlocked, the Joint Trade Board will petition the New York State Mediation Board to furnish one of its members to sit with the committee and determine the proper decision. If, for some reason, the said Mediation Board is unable to furnish one of its members, then the Joint Trade Board shall request a panel of arbitrators from the American Arbitration Association and the Joint Trade Board shall select from such panel one (1) member to sit with them as chairman. The decision shall be binding on all parties concerned. All expenses of the arbitration, except the cost to each party of its representative, attorneys, and witnesses, shall be borne by the loser.

Section 6. Provided that both parties comply with the provisions of this Article and abide by the decision of the Joint Trade Board and/or the arbitrator appointed pursuant hereto, there shall be no suspension of work, strike, or lockout during the term of this Agreement.

## ARTICLE XIII

### Legal Provisions

Section 1. It is agreed that in case any provisions of this Agreement shall be found to be contrary to law, such findings shall not in any way affect other provisions of this Agreement, which shall, notwithstanding, continue in full force and effect.

Section 2.

(a) The parties agree that any Employer who violates any provision of this Agreement, or who directs any of his employees to perform services, the performances of which is under terms and conditions of employment inferior to those agreed upon in this Agreement, shall be liable to the Joint Trade Board in damages.

(b) The Joint Trade Board shall, in its discretion, assess damages where involved and award the same to the person or parties so damaged. In addition, the Joint Trade Board is empowered to fine any Employer found to have violated the Agreement as prescribed herein an amount in excess of $250.00 to be paid into the Joint Apprenticeship Fund.

(c) Where a decision of the Joint Trade Board becomes necessary to be confirmed under the laws of this state after thirty (30) days following notice of the award to the party charged, the cost for reasonable attorney fees, in accordance with the minimum bar rates for the area, to obtain such confirmation shall be borne by the party charged with such violation.

Section 3. It is agreed that this Agreement only covers those who are signatories to the Agreement, and is in no way to be construed that the International Union of Painters and Allied Trades are part of this Agreement, and that no legal proceeding will be instituted against such Brotherhood for violation of this Agreement.

15

Section 4. There shall be no strikes, lockouts, slowdowns, stoppages, or other interference by any of the parties of this Agreement for its duration, except as provided for in Federal and State laws: and, in the event of any illegal strike, slowdown, stoppage, or other interference, the Union agrees to use every reasonable means at its disposal to persuade the men to go back to work.

### Abnormally Dangerous Conditions

Section 5. Nothing in this Agreement shall be construed to require an individual employee to render services without his consent nor shall the quitting of his labor because of abnormally dangerous conditions be deemed a strike.

### Sub-Contracting

Section 6. Should the Employer subcontract or employ other than glaziers for any of said work under conditions permitted by this agreement the employer agrees to advise and discuss such subcontracting or hiring of other trades with the union before actually selecting the subcontractor or other trades. If the union and the employer cannot agree over the assignment of work, the employer agrees to give the original assignment of work to the glaziers and be governed by the procedural rules for settlement of jurisdictional disputes.

Section 7. The subcontractor will be bound by the terms and conditions of this Agreement for the duration of the subcontracted project. Notwithstanding any other provision of this Agreement, if after request by the Employer, the Union is unable to supply qualified workers within 24 hours of such request, the Employer will be allowed to subcontract the work otherwise covered by this Agreement to non-members as required to fulfill the Employer's requirements to complete the work for a given project. The Employer shall notify the Union in writing, identifying the project in which non-members are being employed after he has subcontracted non-members to do so. If after subcontracting work to non-members, a member(s) of the Union become(s) available to fill the position(s) being subcontracted to non-members, it shall be at the sole discretion of the Employer whether to replace those non-members with Union members for the remainder of the project. The Employer's decision not to replace non-members with Union members after the work has been subcontracted to non-members shall not be grievable in any forum. Should the Employer choose to retain the non-members, it is with the express understanding that it shall be only for the duration of the project previously identified as part of this paragraph.

Section 8.    In the event that the subcontracted work should fall into a disputed area with regard to the jurisdiction of another union building trade, the work will be accomplished with a 50/50 composite crew between the Glazier and the other union building trade.

Section 9. Other than the exceptions stated above for the term of this Agreement, the Employer agrees that it will not subcontract bargaining unit work to any Employer or employee who is not signatory to this full area wide Agreement. Bargaining unit work is described as work that is recognized as glaziers by State and Federal Departments of Labor

Section 10. All contractors signatory to a full project Agreement will hire labor exclusively through the Local #677 Union Hall to perform Collective Bargaining work covered under a full project Agreement.

16

**Section 11.**    All signatory contractors will have the right to subcontract any work other than glass and glazing to other trades.

**Section 12.**    All signatory contractors are not permitted to subcontract glass & glazing from other non-signatory glazing contractors in the jurisdictional area of this agreement.

<div align="center">Accretion Clause</div>

**Section 13.**  The Employer agrees that all accretions will be governed by the term as used by the NLRB as amended and will be included in the Bargaining Unit and covered by this Agreement.

<div align="center">Industrial Controversy</div>

**Section 14.**    All signatory contractors, for the duration of this agreement, agree not to sub-contract any work from a contractor that is involved in an industrial controversy with Local #677.

<div align="center">"Fifty, fifty" percent clause</div>

**Section 15.**

(a)    The contractor or the Employer party to this agreement, when engaged in work outside the geographical jurisdiction of the Union party agreement, shall employ not less than fifty percent (50%) of the workers employed on such work from residents of the area where the work is performed or from among persons who are employed the greater percentage of their time in such area; any others shall be employed only from the contractor's home area.

(b)    "The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to this agreement, comply with all of the the lawful clauses of the Collective Bargaining Agreement in effect in said other geographic jurisdiction and executed by the Employers of the industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits, and procedure for settlement of grievances set fourth therein; provided however, that where no affiliated Union has a current effective agreement covering such out-of-area work, the Employer shall perform such work in accordance with this agreement; and provided further that as to employees employed by such employer from within the geographic jurisdiction of the Union party to this agreement and who are brought into an outside jurisdiction, such employee shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction whichever are more favorable to such employees. In situations covered by the last provision, fringe benefit contributions on behalf of such employees shall be made solely to their home funds in accordance with their governing documents, and the difference between the wages and benefit contributions required by the away funds and the home funds, if any, shall be paid to the employees as additional wages or benefits at the employees discretion. This provision is enforceable by the District Council or Local Union in whose jurisdiction the work is being performed, both through the procedure for settlement of grievances set forth in its applicable Collective Bargaining Agreement and through the courts, and is also enforceable by the Union party to this agreement, both through the procedure for settlement of grievances set forth in this agreement and through the courts."

## ARTICLE XIV

### Preservation of Work Clause

Section 1.

(a)     To protect and preserve, for the employees covered by this agreement, all work they have performed and all work covered by this Agreement, and to prevent any device subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the Employer performs on-site construction work of the type covered by this Agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the Employer, through its officers, directors, partnered, owners, or stockholders, exercises directly or indirectly (through family members or otherwise), management, control, or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.

(b)     All charges of violations of Section 14 (a) of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement on the handling of the grievances and the final and binding resolution of disputes. As a remedy for violations of this Article, the Joint Trade Board arbitrator shall be able, at the request of the Union, to require an Employer to pay 1) to affected employees covered by this Agreement, including registered applicants for the employment, the equivalent of wages those employees have lost because of violations, and 2) into the affected Joint Trust Funds to which this Agreement requires contributions, any delinquent contributions that result from violations. The Joint Trade Board or Arbitrator shall be able also to provide any other appropriate remedies, whether provided by law of this Agreement. The Union shall enforce a decision of the Joint Trade Board or Arbitrator under this Article only through arbitral, judicial, or government (for example, the National Labor Relations Board) channels.

(c)     If, after an Employer has violated this Article, the Union and/or the Trustees of one or more Joint Trust Funds to which this Agreement requires contributions institute legal action to enforce an award by an Arbitrator or the Joint Trade Board remedying such violation, or defend an action that seeks to vacate such award, the Employer shall pay any accountants' and/or attorneys' fees incurred by the Union and/or the Joint Trust Funds, plus costs of the litigation, that have resulted from such legal action. This section does not affect other remedies, whether provided by the law or this Agreement, that may be available to the Union and/or the Joint Trust Funds.

## ARTICLE XV

### Labor Management Cooperation Fund

Section 1.     (a)     Commencing with the 1st day of May, 2006, and for the duration of the Agreement, and any renewals or extension thereof, the Employer agrees to make payments to The Painters and Allied Trades Labor Management Cooperation Fund ("Fund") for each employee covered by this Agreement, as follows:

(b)     For each hour or portion thereof, for which an employee receives pay, the Employer shall make a contribution of $.05/hr. to the Fund. (Included in Apprentice contribution total.) (for Rochester & Syracuse)

(c)     For the purpose of this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(d)     Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but not limited to, apprentices, helpers, trainees, and probationary employees.

(e)     The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust, as amended from time to time, establishing the Fund.

<u>Section 2.</u>     The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve as Employer Trustees, together with their successors.

<u>Section 3.</u>     All contributions shall be made at such time and in such manner as the Trustees required; and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

<u>Section 4.</u>     If an Employer fails to make contributions to the Fund within twenty (20) days after the date required by the trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

## ARTICLE XVI

### Rochester Area Wages

<u>Section 1</u>.    The following schedule of wage rates shall apply to all Glaziers for the duration of the Agreement:

| <u>Effective</u> | <u>Rate Basic Wage</u> |
|---|---|
| May 1ˢᵗ, 2006 | $21.50 hour |
| May 1ˢᵗ, 2007 | *$ 1.16 |
| May 1ˢᵗ 2008 | *$ 1.20 |

(* To be allocated prior to 5/01/07)
(* To be allocated prior to 5/01/08)

### Height Pay

<u>Section 2</u>.    As of May 1ˢᵗ, 2006 a premium pay of fifty ($.50) per hour above the regular wage rate shall be paid on all swing stagework, beltwork, open steel or scaffolding twenty-five (25) feet from floor, ground, or roof levels.  Overtime, if applicable, shall be paid at the premium rate. Height pay will not be paid on Scissors lifts, JLG, or Bucket lifts.

### Foreman Pay

<u>Section 3.</u>

As of May 1ˢᵗ, 2006 and for the duration of this agreement, the foreman shall be appointed by the Employer at their discretion and receive a premium of one dollar ($ 1.00) per hour above the basic wage rate.  Overtime, if applicable, shall be paid at the premium rate.  On all jobs where another craft is supplying men on a composite basis, there shall be a Glazier Foreman in charge at the above rate. The foreman's rate does not apply to service work.  On five man jobs and up to nine there will be at least one Foreman on that job.

### General Foreman

<u>Section 4.</u>

On all jobs with ten (10) man crew plus the foreman, a General Foreman will be appointed and will receive two dollars ($2.00) per hour above the basic wage rate.

### Metal Fabrication

<u>Section 5 .</u>

a.    As of May 1ˢᵗ, 2006 and for the duration of this agreement, the Employer shall employ a ratio of one journeyman to one apprentice or industrial worker to perform metal fabrication work in the shop.

b.    If the Business Representative of Local #677 is unable to meet demands for metal fabricators as prescribed by the above Section (a) he will appoint more industrial workers to such shop that is in demand, until such time that Local #677 can meet the required ratio. This decision will be made at the Business Representative's discretion.

20

Metal Fabrication Benefits

<u>Section 6.</u>    Employer contributions for fringe benefits for all journeymen performing metal fabrication work in the shop will be paid as described in Section 7 below:

Rochester Area Funds
(Glaziers)

<u>Section 7.</u>    The Employer agrees to participate, or continue to participate with the Union in a jointly administered Health Trust Fund, Pension Trust Fund and Apprentice Training Trust Fund, and IUPAT Pension Trust Fund.  The Declaration of Trusts of the various funds covered by the terms of this Agreement, or any trust that is approved by the Employer and the Union, shall be considered part of this Agreement.

Contributions shall be as follows:

<u>Effective May 1, 2006</u>:
Pension Fund                    $ 3.58  per hour
Health & Welfare Fund            6.31  per hour
Apprentice Fund                   .45  per hour
IUPAT Pension Fund              1.50  per hour
TOTAL                          $ 11.84  per hour

All contributions to the Funds shall be made on the hours paid, with the exception of overtime hours, which shall be paid on the hours worked.  Upon signing this Agreement, the Employer agrees to be bound by, and subscribe to, the terms of the "Pension Trust Fund", and the "National Glaziers and Glass Workers Industry Apprenticeship Training and Journeyman Education Fund", and the Plan of Benefits provided for in these Agreements.

IUPAT Union and Industry Pension Fund

<u>Section 8.</u>    Commencing  with  the  first  day  of  May, 2006,  and  for  the  duration  of  the Agreement and any renewals or extension thereof, the Employer agrees to make payments to the IUPAT Union Industry Pension Fund for each employee covered by this Agreement as follows:

(a)    For each hour or portion thereof for which an employee receives pay, the Employer shall make a contribution of $ 1.50 to the above named Pension Fund;  $ 1.50  to be allocated to the IUPAT Union and Industry Pension Plan and $ -0- to be allocated to the IUPAT Union and Industry Annuity Plan.

(b)    For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with this Agreement, shall    be counted as hours for which contributions are payable.

(c)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement.  This includes, but not limited to, apprentices, helpers, trainees, and probationary employees.

(d)    The payments to the Pension Fund required above shall be made to the IUPAT Union Industry Pension Fund, which was established under an Agreement and Declaration of

Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had actually signed the same.

Section 9.    The Employer hereby irrevocably designates as its representatives on the Board of Trustees such as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.  The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

Section 10.  All contributions shall be made at such time and in such manner as the Trustees require; and, the Trustees may, at any time, conduct an audit in accordance with Article V, Section 5 (a) and (b) of said Agreement and Declaration of Trust.

Section 11.  If an Employer fails to make contributions to the Pension Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of this payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike"  clause which may be provided or set forth elsewhere in this Agreement.

Section 12.   The Pension Plan or Annuity Plan adopted by the Trustees shall at all times conform with the requirements of the Internal Revenue Code so as enable the Employer at all times to treat contributions to the IUPAT Union and Industry Pension Fund as a deduction for income tax purposes.

## Submission of Deduction Authorization

Section 13.  The Employer agrees that at the time of employment of any employee covered by the terms of the Agreement, he will submit to each employee, for his voluntary signature, a deduction authorization supplied by the Union for Dues Check-Off. The Employer further agrees that he will notify the Union of the failure of any employee to sign such dues deduction authorization, the number of hours worked, and the amount of money earned by such employee at least once a month.

Section 14.   Commencing May 1, 2006 and for so long as the employee has signed an authorization permitting the withholding from wages as more particularly set forth hereinafter, each Employer agrees to withhold from wages of the employees covered by this Agreement, the following sum per hour:  Effective May 1, 2006, seven percent (7%) of the Basic Wage Rate called for in this Agreement as specified in Article XVI, Section 1 above as five percent (5%) Dues Check-Off and two percent (2%) Union Savings, as well as $ 8.00 per week for Local Union Dues.  The authorization form is as follows:

## DUES ADMINISTRATION AUTHORIZATION CARD

TO: Any Employer by whom I am employed during the balance of the 2006-2009 contract between Glaziers and Glass Workers Local Union #677 and Glazing Contractors of Rochester,

New York and vicinity. I authorize such employer to deduct from my pay for each week the sums of eight ($ 8.00) per week for Local Union Dues, two percent (2%) of my gross wages for Union Savings, and five percent (5%) of my gross wages for Dues Check-Off during the period May 1, 2006 to April 30, 2009, owing to Glaziers and Glass Workers Local Union #677 of Rochester, New York. Such deductions shall be made from my pay on each regularly scheduled payday and remitted to such bank, or agent designated by the Union no later than the 15th day of the following month which deductions shall be made. This authorization and assignment shall become effective with the date of execution of the agreement between the same Union and yourself and shall continue in full force and effect for a period not to exceed one (1) year or the life of this agreement, whichever occurs sooner, and for any subsequent period thereafter unless revoked by me within fifteen (15) days immediately preceding such contract term of one (1) year, whichever occurs sooner. The above revocation must be in writing and bear my signature and the date.

DATE: ...........................................................................

SIGNATURE: ..................................................................

ARTICLE XVII

Rochester & Syracuse
Travel Time

Section 1.

(a)    From May 1, 2006 through April 30, 2009 travel time shall be paid based on two thirds (2/3) of $7.70 per hour at time and one-half.  This shall apply Monday through Friday prior to designated job start time or after eight (8) hours from the shop to the job and from the job back to the shop. When directed to report to the shop to start the workday, the employee's workday should also end at the shop.

(b)    When the Employer directs his employees to report directly from home,  to start their workday on the job, within the jurisdiction of Local #677, no travel time shall be paid for traveling to the job, prior to the designated job to start time or for traveling back home after eight (8) hours.  Any and all travel time between the designated job start time and eight (8) hours Monday through Friday will be paid at the straight time hourly rate and the applicable overtime rate on Saturday, Sunday, or holidays.

Rochester & Syracuse
Mileage

Section 2.  Employees requested to drive their own vehicle to and from jobs shall be compensated by the Employer at the rate of thirty-five cents ($.35) per mile, per man, from May 1, 2006 to April 30, 2009.

Rochester & Syracuse
Toll Roads

Section 3.  When employees are requested to use toll roads, they shall be compensated by the Employer.  A receipt will be furnished by the member for reimbursement.

Rochester & Syracuse
Supper  Allowance

Section 4.  It is agreed by the Employer that any employee working more than ten (10) hours shall be paid for his supper at the rate of seven dollars and fifty cents ($ 7.50).

Section 5.  All truck driving shall be considered as working time and shall receive the rate of wages called for in normal straight time hours worked.

ROCHESTER
Free Zone

Section 6.

(a)    It is agreed by the employees, if requested by the Employer, to drive their own vehicle from their home to the job within the jurisdiction of Rochester as described by Article 1, Section 1, they will do so at their own expense, other than parking expense.  If employees are requested by the Employer to drive their own vehicle from the Employer's shop, the mileage and travel time shall commence from the shop and back to the shop.  Employees will not, at any time be requested to carry passengers or materials in their private vehicles.  If  employees are requested

to drive their own vehicles outside of the free zone from their home to the job, their mileage shall start from a thirty five (35) mile radius from the Four Corners (Main & State Streets) to the job and back to the thirty five (35) mile radius.

(b)   Any Employer whose established place of business is located outside of Monroe County, the above mentioned free zone shall be a thirty five (35) mile radius from the Court House in said shop's vicinity instead of the Four Corners and said shop must have been established before the effective date of this Agreement (May 1, 2006). Any new locations must be negotiated at the time of establishment.

(c)   All mileage shall start from the Four Corners (Main & State Streets) for all employees working for an Employer who does not have an established place of business within the jurisdiction of Glaziers Local #677.

(d)   Any other area outside of the thirty-five (35) mile free zone shall be computed, at thirty-five cents ($ .35) per mile and the actual riding time, if applicable. The rate of pay for riding time listed herein shall be included in the gross wages, but the mileage is to be considered reimbursed expenses and, therefore, not taxable.

Section 6. (CONT.)

SYRACUSE
Free Zone

(a)   It is agreed by the employees, if requested by the Employer, to drive their own vehicle from their home to the job within the jurisdiction of Syracuse as described by Article 1, Section 2, they will do so at their own expense, other than parking expense. If employees are requested by the Employer to drive their own vehicle from the Employer's shop, the mileage and travel time shall commence from the shop back to the shop. Employees will not, at any time be requested to carry any passengers or materials in their private vehicles. If employees are requested to drive their own vehicle outside of the free zone from their home to the job, their mileage shall start from a thirty five (35) mile radius from Down Town Syracuse to the job and back to the thirty five (35) mile radius.

(b)   Any Employer whose established place of business is located outside of Onondaga County, the above mentioned free zone shall be a thirty five  (35) mile radius from the Court House in said shop's vicinity instead of  Down Town and said shop must have been established before the effective date of this Agreement (May 1, 2006). Any new locations must be negotiated at the time establishment.

(c)   All mileage shall start from Down Town Syracuse for all employees working for an Employer who does not have an established place of business within the jurisdiction of Glaziers Local #677.

(d)   Any other area outside of the thirty-five (35) mile free zone shall be computed at thirty-five cents ($ .35) per mile and the actual riding time, if applicable. The rate of pay for riding time listed herein shall be included in the gross wages, but the mileage is to be considered reimbursed expenses and, therefore, not taxable.

25

ARTICLE XVIII

Rochester & Syracuse
Out-of-Town Expenses

Section 1.    When an employee is sent out-of-town and is instructed by the Employer to stay overnight, the Employer shall provide reasonable lodging and pay a minimum of $ 25.00 per day for meals and pay for transportation, or mileage when he is using his own vehicle to and from the job, and any reasonable parking expense. This amount is to be paid in a check or cash, in advance, separate from any payroll check or wages and must include a separate itemized record of all.

Section 2.    Where the above schedule proves to be inadequate, a weekly amount mutually agreed upon between the Employer and the employee will be advanced prior to starting work each week.

Section 3.    Employees requested to work out-of-town and to stay overnight shall be notified twenty-four (24) hours in advance, if possible.

Section 4.    The Employer agrees that he will notify Local #677 prior to sending his men out-of-town on room and board expenses.

ARTICLE XIX
Rochester  Apprentice & Trainees

Section 1.

(a)    Painters District Council #4 J.A.T.C. (Joint Apprentice Training Committee) shall place all apprentices, discipline and removal in same accordance with  D.C. #4 rules and regulations.  The JATC Committee will appoint a glazier coordinator as an exclusive liaison between the signatory contractor and the District Council and be involved in all decisions that involve apprentices in the jurisdictional area contract.

(b)    There will be mandatory meetings of the JATC Committee yearly and all trustees of this jurisdictional area will be invited.

Section 2.    The Joint Apprenticeship Training Committee shall have the authority to control apprentices and trainees and protect their interests.  All apprentices will be indentured to the Joint Apprenticeship Committee for a four (4) year term.

Section 3.    The ratio of apprentice and trainees shall be governed by the Joint Apprenticeship Training Committee.

**Section 4.**  Apprentice & Trainee wage rates shall be a percentage of the Journeyman's Wage
Rate as follows:

| | | | | RATE | FRINGE | TOTAL |
|---|---|---|---|---|---|---|
| 1 a. | 50% | 1st | 1,000 hours | $ 10.75 | $ 8.26 | $ 19.01 |
| 1 b. | 55% | 2nd | 1,000 hours | 11.83 | 8.26 | 20.09 |
| 2 a. | 60% | 3rd | 1,000 hours | 12.90 | 10.41 | 23.31 |
| 2 b. | 65% | 4th | 1,000 hours | 13.98 | 10.59 | 24.57 |
| 3 a. | 70% | 5th | 1,000 hours | 15.05 | 10.77 | 25.82 |
| 3 b. | 75% | 6th | 1,000 hours | 16.13 | 10.95 | 27.08 |
| 4 a. | 80% | 7th | 1,000 hours | 17.20 | 11.12 | 28.32 |
| 4 b. | 90% | 8th | 1,000 hours | 19.35 | 11.48 | 30.83 |

**Section 4.** (CONT.)

| Fringe Benefits: | 1st Yr | 2nd Yr | 3rd Yr | 4th Yr |
|---|---|---|---|---|
| L.U. 677 Health | $ 6.31 | $ 6.31 | $ 6.31 | $ 6.31 |
| L.U. 677 Pension | -0- | $ 2.15/2.33 | $ 2.51/2.69 | $ 2.86/3.22 |
| D.C.# 4 Apprentice | .45 | .45 | .45 | .45 |
| I.U.P.A.T. Pension | 1.50 | 1.50 | 1.50 | 1.50 |

**Effective:**   May 1, 2006

**Wage Increase:**  May 1, 2007
            May 1, 2008

**Contract Expires:**  April 30, 2009

**Deduction:**
Dues Check-Off:  Three percent (3%) from gross wages.

Two percent (2%) Union Savings (Market Recovery) (From Start)

$ 8.00 per week Local Union Dues (From Start)

No pension fund contribution (Annuity) will be paid for the first year of the Apprenticeship Term.
The pension fund contribution (Annuity) will be based on the above corresponding percentages for
the second, third, fourth, & Fifth year apprentices.  The IUPAT contribution will be paid for all
five years.

**Section 5.**   Apprentices and Trainees shall not be allowed to work on any project without the
presence of at least one (1) journeyman Glazier for each Apprentice or Trainee, except in the last
six (6) months of their term.

**Section 6.**  In addition to the above rates, the Employer agrees to pay the Apprentice and Trainee
any premium received by a journeyman Glazier.  It is further agreed that  the Employer will pay
for Apprentices and Trainees to any funds covered by this Agreement for journeymen Glaziers
except as stated in Article XIX, Section 4.

**Section 7.** The Apprenticeship standard for Glaziers, formulated by the D.C. #4 Joint Apprenticeship Committee for Rochester, New York and vicinity, and approved by the State of New York, and subsequent amendments thereto, shall become a part of this contract.

## National Fund

**Section 8.** The Employer and the Union hereby agree that they shall, for the term of this Agreement, be bound by the terms of the "D.C. #4/JATF" and the "Agreement and Declarations of Trust" establishing "IUPAT - JATF", which Agreement and Declarations shall be considered part of this Agreement, and that they shall at all times conform and adhere to the requirements for payment and remittance imposed, or be imposed, by the Trustees thereof: provided, further that the Employer agrees that he will, effective the 1st day of May, 2006 pay the sum of forty-five cents ($.45) per hour for each hour paid to each employee, covered by the terms of this Agreement, in his employ, to the office of the Trustees for said fund or the designated agent.

**Section 9.** All Apprentices and Trainees shall pass a final written examination given by the Joint Apprenticeship Committee prior to graduating from our program.

## Journeyman Training

**Section 10.** All employees, except Apprentices, must complete ten (10) hours of Journeyman Upgrading or Health & Safety Training provided by the J.A.T.C. per contract year in order to maintain employment with current or future companies. Ten (10) hours of training per contract year is required.

**Section 11.** For the purpose of this section, a year refers to the contract year.

## ARTICLE XX

## Syracuse Area Wages

**Section 1.** The following schedule of wage rates shall apply to all Glaziers for the duration of the Agreement:

| Effective | Rate Basic Wage |
|---|---|
| May 1st, 2006 | $20.48 Hour |
| May 1st, 2007 | *$ 1.03 |
| May 1st, 2008 | *$ 1.06 |

(* To be allocated prior to 5/01/07)
(* To be allocated prior to 5/01/08)

28

## Height Pay

### Section 2.

As of May 1st, 2006 a premium pay of fifty cents ($.50) per hour above the regular wage rate shall be paid on all swing stagework, beltwork, open steel or scaffolding twenty-five (25) feet from floor, ground, or roof levels. Overtime, if applicable, shall be paid at the premium rate. Height pay will not be paid on Scissors lifts, JLG, or Bucket lifts.

## Foreman Pay

### Section 3.

As of May 1st, 2006 and for the duration of this agreement, the foreman shall be appointed by the Employer at their discretion and receive a premium of one dollar ($ 1.00) per hour above the basic wage rate. Overtime, if applicable, shall be paid at the premium rate. On all jobs where another craft is supplying men on a composite basis, there shall be a Glazier Foreman in charge at the above rate. The foreman's rate does not apply to service work. On five man jobs and up to nine there will be at least one Foreman on that job.

## General Foreman

### Section 4.

On all jobs with a ten (10) man crew plus the foreman, a General Foreman will be appointed and will receive two dollars ($2.00) per hour above the basic wage rate.

## Metal Fabrication

### Section 5 .

a.    As of May 1st, 2006 and for the duration of this Agreement, the Employer shall employ a ratio of one journeyman to one apprentice or industrial worker to perform metal fabrication work in the shop.

b.    If the Business Representative of Local #677 is unable to meet demands for metal fabricators as prescribed by the above Section (a), he will appoint more industrial workers to such shop that is in demand, until such time that Local #677 can meet the required ratio. This decision will be made at the business Representative's discretion.

## Metal Fabrication Benefits

### Section 6. Employer contributions for fringe benefits for all journeymen
performing metal fabrication work in the shop shall be paid as described in Section 7 below.

## Syracuse Area Funds

### Section 7.

The Employer agrees to participate, or continue to participate with the Union in a jointly administered Health Trust Fund, Pension Trust Fund and Apprentice Training Trust Fund, and IUPAT Pension Trust Fund. The Declaration of Trusts of the various funds covered by the terms of this Agreement, or any trust that is approved by the Employer and the Union, shall be considered part of this Agreement.

Section 7. (CONT.)

Contributions shall be as follows:

Effective May 1, 2006:

| | | |
|---|---|---|
| Pension Fund | $ 2.18 | per hour |
| Health & Welfare Fund | 5.24 | per hour |
| Apprentice Fund | .40 | per hour |
| IUPAT Pension Fund | 1.10 | per hour |
| TOTAL | $ 8.92 | per hour |

All contributions to the Funds shall be made on the hours paid, with the exception of overtime hours, which shall be paid on the hours worked. Upon signing this Agreement, the Employer agrees to be bound by, and subscribe to, the terms of the "Pension Trust Fund", and the "National Glaziers and Glass Workers Industry Apprenticeship Training and Journeyman Education Fund", and the Plan of Benefits provided for in these Agreements. IUPAT Union and Industry Pension Fund

Section 8.    Commencing with the first day of May, 2006, and for the duration of the Agreement, and any renewals or extension thereof, the Employer agrees to make payments to the IUPAT Union Industry Pension Fund for each employee covered by this Agreement as follows:

(a)    For each hour or portion thereof for which an employee receives pay, the Employer shall make a contribution of $ 1.10 to the abovenamed Pension Fund; & 1.10 to be allocated to the IUPAT Union and Industry Pension Plan and $ -0- to be allocated to the IUPAT Union    and Industry Annuity Plan.

(b)    For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable.

(c)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but not limited to, apprentices, helpers, trainees, and probationary employees.

(d)    The payments to the Pension Fund required above shall be made    to the IUPAT Union Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he    had    actually    signed    the same.

Section 9.    The Employer hereby irrevocably designates as its representatives on the Board of Trustees such as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

Section 10.    All contributions shall be made at such time and in such manner as the Trustees require; and, the Trustees may, at any time, conduct an audit in accordance with Article V, Section 5 (a) and (b) of said Agreement and Declaration of Trust.

**Section 11.** If an Employer fails to make contributions to the Pension Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of this payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

**Section 12.** The Pension Plan or Annuity Plan adopted by the Trustees shall at all times conform with the requirements of the Internal Revenue Code so as enable the Employer at all times to treat contributions to the IUPAT Union and Industry Pension Fund as a deduction for income tax purposes.

<div align="center">Submission of Deduction Authorization</div>

**Section 13.** The Employer agrees that at the time of employment of any employee covered by the terms of the Agreement, he will submit to each employee, for his voluntary signature, a deduction authorization supplied by the Union for Dues Check-Off. The Employer further agrees that he will notify the Union of the failure of any employee to sign such dues deduction authorization, the number of hours worked, and the amount of money earned by such employee at least once a month.

**Section 14.** Commencing May 1, 2006 for as long as the employee has signed an authorization permitting the withholding from wages as more particularly set forth hereinafter, each Employer agrees to withhold from wages of the employees covered by this Agreement, the following sum per hour: Effective May 1, 2006, six and one half percent (6 1/2%) of the Basic Wage Rate called for in this Agreement as specified in Article XX, Section 1 above as five percent (5%) Dues Check-Off and one and one half percent (1 1/2%) Union Savings, as well as $ 8.00 per week for Local Union Dues. The authorization form is as follows:

## DUES ADMINISTRATION AUTHORIZATION CARD

TO: Any Employer by whom I am employed during the balance of the 2006-2009 contract between Glaziers and Glass Workers Local Union #677 and Glazing Contractors of Syracuse, New York and vicinity. I authorize such employer to deduct from my pay for each week the sums of eight dollars ($ 8.00) per week for Local Dues, one and one half percent (1 1/2%) of my gross wages for Union Savings, and five percent (5%) of my gross wages for Dues Check-Off during the period May 1, 2006 to April 30, 2009, owing to Glaziers and Glass Workers Local Union #677 of Syracuse, New York. Such deductions shall be made from my pay on each regularly scheduled payday and remitted to such bank, or agent designated by the Union no later than the 15th day of the following month which deductions shall be made. This authorization and assignment shall become effective with the date of execution of the agreement between the same Union and yourself and shall continue in full force and effect for a period not to exceed one (1) year or the life of this agreement, whichever occurs sooner, and for any subsequent period thereafter unless revoked by me within fifteen (15) days immediately preceding such contract term of one (1) year, whichever occurs sooner. The above revocation must be in writing and bear my signature and the date.

DATE: ...........................................................................

SIGNATURE: ............................................................

## ARTICLE XXI

### Syracuse Apprentices and Trainees

Section 1.

(a)    Painters District Council #4 J.A.T.C. (Joint Apprentice Training Committee) shall place all apprentices, discipline and removal in same accordance with D.C. #4 rules and regulations. The JATC Committee will appoint a glazier coordinator as an exclusive liaison between the signatory contractors and the District Council and be involved in all decisions that involve apprentices in the jurisdictional area contract.

(b)    There will be mandatory meetings of the JATC Committee yearly and all trustees of this jurisdictional area will be invited.

Section 2. The Joint Apprenticeship Training Committee shall have the authority to control apprentices and trainees and protect their interests. All apprentices will be indentured to the Joint Apprenticeship Training Committee for a four (4) year term.

Section 3. The ratio of apprentice and trainees shall be governed by the Joint Apprenticeship Training Committee.

<u>Section 4</u>.   Starting pay will be no less than $ 8.00 per hour to start.  Apprentice and trainee wage rates will be as follows:

|  |  |  |  | RATE | FRINGE | TOTAL |
|---|---|---|---|---|---|---|
| 1 a. | 50% | 1st | 1,000 hours | $ 10.24 | $ 8.92 | $ 19.16 |
| 1 b. | 55% | 2nd | 1,000 hours | 11.26 | 8.92 | 20.18 |
| 2 a. | 60% | 3rd | 1,000 hours | 12.29 | 8.92 | 21.21 |
| 2 b. | 65% | 4th | 1,000 hours | 13.31 | 8.92 | 22.23 |
| 3 a. | 70% | 5th | 1,000 hours | 14.34 | 8.92 | 23.26 |
| 3 b. | 75% | 6th | 1,000 hours | 15.36 | 8.92 | 24.28 |
| 4 a. | 80% | 7th | 1,000 hours | 16.38 | 8.92 | 25.30 |
| 4 b. | 90% | 8th | 1,000 hours | 18.43 | 8.92 | 27.35 |

| **Fringe Benefits:** | **1st Yr** | **2nd Yr** | **3rd Yr** | **4th Yr** |
|---|---|---|---|---|
| L.U. 677 Health | $ 5.24 | $ 5.24 | $ 5.24 | $ 5.24 |
| L.U. 677 Pension | 2.18 | 2.18 | 2.18 | 2.18 |
| D.C.#4 Apprentice | .40 | .40 | .40 | .40 |
| I.U.P.A.T. Pension | 1.10 | 1.10 | 1.10 | 1.10 |

Effective: May 1, 2006

Wage Increase:   May 1, 2007
                 May 1, 2008

Contract Expires:   April 30, 2009

Deduction:
Dues Check-Off:  Three percent (3%) from gross wages.

One and one half  percent (1 1/2%) Union Savings (Market Recovery) (From Start)

$ 8.00 per week Local Dues (From Start)

<u>Section 5</u>.  Apprentices and trainees shall not be allowed to work on any project without the presence of at least one (1) journeyman Glazier for each Apprentice or Trainee, except in the last six (6) months of their term.

<u>Section 6</u>.  In the addition to the above rates, the employer agrees to pay the Apprentice and Trainee any premium received by a Journeyman Glazier.  It is further agreed that the Employer will pay for Apprentices and Trainees to any funds covered by this Agreement for Journeyman Glaziers.

<u>Section 7</u>.  The Apprenticeship standard for Glaziers, formulated by the D.C. #4 Joint Apprenticeship Committee for Syracuse, New York and vicinity, and approved by the State of New York, and subsequent amendments thereto, shall become a part of this contract.

33

National Fund

<u>Section 8</u>. The Employer and the Union hereby agree that they shall for the term of this Agreement be bound by the terms of the "D.C. #4/JATF" and the "Agreement and Declarations of Trust" establishing "IUPAT - JATF" which Agreement and Declarations shall be considered part of this Agreement, and that they shall at times conform and adhere to the requirements for payment and remittance imposed, or be imposed, by the Trustees thereof: provided, further that the Employer agrees that he will, effective the 1st day of May, 2006 pay the sum of forty cents ($ .40) per hour paid to each employee, covered by the terms of this Agreement, in his employ, to the office of the Trustees for said fund or the designated agent.

<u>Section 9</u>. All Apprentices and Trainees shall pass a final written examination given by the Joint Apprenticeship Committee prior to graduating from our program.

Journeyman Training

<u>Section 10</u>.    All employees, except Apprentices, must complete ten (10) hours of Journeyman Upgrading or Health & Safety Training provided by the J.A.T.C. per contract year in order to maintain employment with current or future companies.  Ten (10) hours of training per contract year is required.

<u>Section 11</u>. For the purpose of this section, a year refers to the contract year.

METAL FABRICATORS/RESIDENTIAL/SERVICE
Syracuse

ARTICLE XXII

Recognition

<u>Section 1.</u>

     a.    This Section shall cover the rates of pay, rules and working conditions of all employees of the Employer, hereinafter referred to as Residential Glaziers, engaged in the installation, repairing, replacing and servicing of all residential windows, patio doors, exterior metal and glass work, including interior mirrors, shower doors, mirrored sliding doors, and entrances. This section shall also include the filming of glass.

     b.    Residential glazing work shall be further defined as applying to work on any single family dwelling, Residential apartment buildings, Town Houses, and Condominiums that have no more than four (04) stories of living space, plus a basement. Any and all buildings, residential or otherwise, over four (04) stories are excluded from this Residential section.

Hours, Overtime & Wages

<u>Section 2.</u>

     a.    The regular work week will consist of any consecutive ten (10) hour day or any forty (40) hour week, Monday through Friday, with thirty (30) minutes for lunch from 12:00 noon to 12:30 pm.

     b.    Any work performed in excess of such ten (10) hour period in one day or forty (40) hours in one week Monday through Friday, shall be considered overtime and be paid at time and one half. Any work performed on Saturday will be paid at time and one half, and, double time will be paid on Sundays and holidays.

     c.    The wage rate for Metal Fabricators/Residential/Service shall be as follows:

| | |
|---|---|
| Basic Wage Rate | $14.00 |
| H&W Fund | $ 5.24 |
| Pension Fund | $ 2.18 |
| Total Benefits | $21.42 |

35

## METAL FABRICATORS/RESIDENTIAL/SERVICE

<u>Section 3.</u>   New hires will follow the pay schedule below.  Class A will receive no benefits for the first ninety (90) days.

| Class A | 0-3 MONTHS | 57% | $8.00 |
|---------|-----------|-----|-------|
| Class B | 1st 6 MONTHS | 60% | 8.50 |
| Class C | 2nd 6 MONTHS | 64% | 9.00 |
| Class D | 3rd 6 MONTHS | 69% | 9.75 |
| Class E | 4th 6 MONTHS | 75% | 10.50 |
| Class F | 5th 6 MONTHS | 80% | 11.25 |
| Class G | 6th 6 MONTHS | 85% | 12.00 |
| Class H | 7th 6 MONTHS | 92% | 13.00 |
| Class I | 8th 6 MONTHS | 100% | 14.00 |

### SHOP/TRUCK DRIVERS

Section 4.   New hires will follow the pay schedule below.  Class A will receive no benefits for the first ninety (90) days.

| Class A | 0-3 MONTHS | 58% | $7.00 |
|---------|-----------|-----|-------|
| Class B | 1st 6 MONTHS | 62% | 7.50 |
| Class C | 2nd 6 MONTHS | 66% | 8.00 |
| Class D | 3rd 6 MONTHS | 70% | 8.50 |
| Class E | 4th 6 MONTHS | 75% | 9.00 |
| Class F | 5th 6 MONTHS | 79% | 9.50 |
| Class G | 6th 6 MONTHS | 83% | 10.00 |
| Class H | 7th 6 MONTHS | 87% | 10.50 |
| Class I | 8th 6 MONTHS | 91% | 11.00 |
| Class J | 9th 6 MONTHS | 100% | 12.00 |

### FUNDS

<u>Section 5.</u>   The Employer agrees to participate, or continue to participate with the Union in a jointly administered Health Trust Fund ad Pension Trust Fund.  The Declaration of Trust of the various funds, covered by the terms of this Agreement, or any Trust that replaces them, that is approved by the Employer and the Union, shall be considered part of this Agreement. Contributions shall be as follows:

PENSION FUND (Annuity)      HEALTH FUND          TOTAL
$2.18 / HOUR                $ 5.24 / HOUR        $7.42 / HOUR

36

## Union Security

<u>Section 6</u>

      a.    All employees covered by this Residential Section shall be required, as a condition of employment, to become and remain members of the Union, in good standing, during the term of this Agreement.  All employees shall make application for membership in the Union within eight (08) days following their date of employment, or the effective date of this Agreement, whichever is later.

      b.    Upon receipt of written notice from the Union that an employee has not acquired or maintained membership in good standing, therein as provided for in this section, the Company shall immediately discharge such employee, and such employee shall not be-employed until he, or she, is reinstated and in good standing with Glaziers Local #677.

## Grievance Procedure

Section 7.    During the term of this Residential Section, any questions relating to its interpretation, or its violation, shall be submitted to the Chairman of the Joint Trade Board, who will meet with both parties, within three (03) days of the date of request.  If the recommendation of the Chairman is not satisfactory to either party, the dispute shall be submitted to and be determined by the Joint Trades Board, as per Article XII of the Glaziers Collective Bargaining Agreement.

## Legal Provisions

Section 8.    It is agreed that in case any provisions of this Residential Section shall be found to be contrary to law, such findings shall not in any way affect other provisions of this Residential Section, which shall, notwithstanding, continue in full force and effect.

## ARTICLE XXIII

Rochester and Syracuse Jurisdiction
(ARTICLE 1, Section 1&2)

Termination Procedure

**Section 1.**      This Agreement shall be in effect from May 1st, 2006 to and including April 30th, 2009 and shall continue in force and effect from year to year thereafter, unless either party desires to change any of the terms, in which case a written notice of the desire to change must be served to the other party at least sixty (60) days prior to the expiration date of April 30th, 2009.

**Section 2.**      If during the course of this Agreement, conditions warrant the changing of, or adding to, any of the terms of this Agreement, such changes or additions may be made with mutual approval of the Employer and the Union.

In witness whereof, the parties hereto sign their
names this day of:

DATE:        _____

FOR:         _____
                          (Company)

BY:          _____
                   (Name)              (Title)

FOR:         <u>Glaziers and Glass Workers Local Union #677</u>

BY:          _____
                   (Name)              (Title)

38

# RESTATED
# AGREEMENT AND DECLARATION OF TRUST

## Establishing the

## International Painters and Allied Trades

## Industry Pension Fund

This AGREEMENT AND DECLARATION OF TRUST is by and between the INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES (hereinafter referred to as the "Union"), and the FINISHING CONTRACTORS ASSOCIATION (hereinafter referred to as the "F.C.A."), and various employers of members of the union who are or may become parties to this Agreement as hereinafter defined (hereinafter referred to as "Employer" or "Employers").

## WITNESSETH:

WHEREAS, the International Union of Painters and Allied Trades, and/or various Local Unions or District Councils of the Union, and Employers have entered into or expect to enter into collective bargaining agreements which provide, among other things, for the establishment of a Pension Fund and prescribe the contributions or payments to be made by the Employers to such Fund; and

WHEREAS, to accomplish the aforesaid purpose, it is desired to establish a Pension Fund as a Trust Fund for receiving contributions and providing benefits for eligible employees; and

WHEREAS, the said Trust Fund is to be known as the "International Painters and Allied Trades Industry Pension Fund"; and

WHEREAS, it is desired to set forth the terms and conditions under which the said Fund is to

JG479-1



be established and administered; and

WHEREAS, it has been mutually agreed that the Fund shall be administered by Trustees, and it is desired to define the powers and duties of the Trustees and the nature of benefits to be provided;

NOW, THEREFORE, in consideration of the premises, and the mutual covenants herein contained it is mutually understood and agreed as follows:

## ARTICLE I

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

*Section 1.*    AGREEMENT AND DECLARATION OF TRUST. The terms "Agreement and Declaration of Trust" or "Trust Agreement" shall mean this instrument, including any amendments hereto and modifications hereof. This Trust Agreement shall govern the operation of both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan.

*Section 2.*    PENSION FUND. The terms "Pension Fund" or "Fund" shall mean the International Painters and Allied Trades Industry Pension Fund, established by the Trust Agreement and shall mean generally the monies and other items of value which comprise the corpus and additions thereto, contributions payable to the Fund, and amounts received or held for or on behalf of the Trustees under both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan and title to all such monies, and other items of value including contributions owed but not yet received, shall be vested in the Trustees of Fund. The Fund also shall be known as the "IUPAT Industry Pension Fund."

*Section 3.*    PENSION PLAN.  The Term "Pension Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Pension Plan, and any modification, amendment, extension or renewal thereof.  The Pension Plan also shall be known as the "IUPAT Industry Pension Plan."

*Section 4.*    ANNUITY PLAN.  The term "Annuity Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Annuity Plan and any modification, amendment, extension or renewal thereof.  The Annuity Plan shall also be known as the "IUPAT Industry Annuity Plan."

*Section 5.*    TRUSTEES.

(a)    The term "Employer Trustees" shall mean the Trustees appointed by the Employers who are parties to this Agreement.

(b)    The term "Union Trustees" shall mean the Trustees appointed by the Union.

(c)    The terms "Board of Trustees," "Trustees" and "Board" shall mean the Employer Trustees and the Union Trustees, collectively, and shall include their successors when acting as Trustees.  Except where "United States" or "Canadian" is used in conjunction with them, the terms "Board of Trustees," "Trustees" and "Board" shall mean United States Trustees in matters involving their competence, or Canadian Trustees in matters involving their competence as set forth in Article IV, Section 1.

*Section 6.*    UNION.  The term "Union" shall mean the International Union of Painters and Allied Trades and its affiliated Local Unions and District Councils.

- 3 -

36479-3

Section 7.    CONTRIBUTING EMPLOYER. The term "Contributing Employer" shall mean any person, company or business organization which is or shall become a party to the Trust Agreement and which has agreed or shall agree in a Collective Bargaining Agreement with the Union to make contributions to the Pension Fund. In the case of an employer having more than one place of business, the term "Contributing Employers" shall apply only to the place of business specifically covered by the Collective Bargaining Agreement requiring contributions to the Pension Fund.

Section 8.    COLLECTIVE BARGAINING AGREEMENT.   The term "Collective Bargaining Agreement" shall mean any written labor contract by and between a Contributing Employer and the Union which provides for contributions to this Pension Fund with any and all extensions or renewals thereof and successor agreements thereto.

Section 9.    EMPLOYEE. The term "Employee means: (a) Any person who performs work under a Collective Bargaining Agreement between a Contributing Employer and the Union and for whom the Employer is obligated to make contributions to the Trust; (b) any full-time salaried officer and employee of any Local Union or District Council which is permitted to participate in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan; (c) any member of such other class of employees employed by an Employer which is not within the bargaining unit represented by the Union provided that the employee's class is accepted for participation in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan. The term "Employee" shall not include any self-employed person, a sole proprietor of or a partner in an unincorporated business, or, unless the Rules and Regulations provide otherwise, a

- 4 -

16479 3

corporate shareholder who spends less than 50% of his time performing work covered by a collective bargaining agreement.

*Section 10.* EMPLOYER CONTRIBUTIONS. The term "Employer Contributions" shall mean payments made or that are required to be made to the Fund, including amounts owed but not yet paid, by a Contributing Employer under the provisions of, or in accordance with, a Collective Bargaining Agreement and the Trust Agreement, or with regard to a Local Union or District Council or special classes of employees of a Contributing Employer, payments to the Fund pursuant to and in accordance with the Rules and Regulations of the Pension Plan and the Annuity Plan. All such Employer Contributions are, and shall be considered as, plan assets from the date on which the hours (whether worked or paid) for which the Contributing Employer is obligated to pay contributions to the Fund accrue, whether or not such Employer Contributions are collected or received by the Fund. No Contributing Employer has any right, title, or interest to any sum payable by the Contributing Employer to the Fund, but not yet paid into the Fund. Title to all Employer Contributions paid into and/or due and owing to the Fund shall be vested in the Trustees of the Fund.

# ARTICLE II

# GENERAL

*Section 1.* ESTABLISHMENT OF FUND. As hereby created, the International Painters and Allied Trades Industry Pension Fund shall comprise the entire assets derived from Employer Contributions made or payable to or for the account of this Fund under Collective Bargaining Agreements, together with any and all investments made and held by the Trustees, or monies received or payable to by the Trustees as contributions or as income from investments made and held

- 5 -

36479-3

by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees for the uses, purposes and trust set forth in this Agreement and Declaration of Trust.

Section 2.    GENERAL PURPOSE. The Fund shall be a Trust Fund and shall be used for the purpose of providing Pension and Annuity Benefits, as decided by the Trustees, and shall further provide the means for financing the expenses of the Trustees and the operation and administration of the Fund, in accordance with this Agreement and Declaration of Trust.

## ARTICLE III

## UNITED STATES TRUSTEES

Section 1.    JOINT ADMINISTRATION. The operation and administration of the Pension Fund shall be the joint responsibility of the Trustees appointed by the Employers and the Trustees appointed by the Union.

Section 2.    ACCEPTANCE OF TRUSTEESHIP. The Trustees, by affixing their signatures at the end of this Agreement and Declaration of Trust, agree to accept the Trusteeship and act in their capacities strictly in accordance with the provisions thereof. Each additional or successor Trustee shall execute a written acceptance in a form satisfactory to the Trustees and thereby shall be deemed to have accepted the Trust created and established by this instrument and to have consented to act as Trustee or to have agreed to administer the Trust Fund as provided herein. Such written acceptance shall be filed with the Fund Administrator who shall notify the remaining Trustees of the receipt of such acceptance.

Section 3.    TERMS OF TRUSTEES. Each Trustee shall continue to serve as such until his death, incapacity, resignation, inability to serve pursuant to Section 9 of this Article, or removal,

- 6 -

as hereinafter provided.

Section 4.    The Board of Trustees shall consist of up to 24 Trustees, 12 to be appointed by the Union and 12 to be appointed by the Employers.

Section 5.    UNION TRUSTEES.  The Union shall be and is empowered to appoint all Union Trustees.

Section 6.    EMPLOYER TRUSTEES.  The F.C.A. shall be and is empowered to appoint all Employer Trustees; provided, however, that the FCA must remain an organization that admits to its membership only 100% Union Signatory Employers in order to maintain its rights hereunder.

Section 7.    REMOVAL OF TRUSTEES.  The Union or the F.C.A. may remove any Trustee(s) appointed by it at any time, for any reason, with or without cause.

Section 8.    WHO MAY BE TRUSTEES.  At the time of his/her appointment to the Board of Trustees, each Employer Trustee must be signatory to a collective bargaining agreement requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction its principal place of business is located and such Employer Trustees must also employ an average of twenty-five (25) or more employees.  Employer Trustees who satisfy these requirements at the time of their original appointment shall be considered as qualified during their tenure, until removed in accordance with provisions in this Trust.  Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

Section 9.    FORM OF NOTIFICATION.  In the event any Union Trustees are appointed or removed, a statement in writing by the Union shall be sufficient evidence of the action taken by

- 7 -

the Union  In the event any Employer Trustees are appointed or removed, a statement in writing by the Employer or Association empowered to so appoint or remove shall be sufficient evidence of the action taken by said Employer or Association.  Any resignation by a Trustee shall be by certified mail, addressed to the office of the Fund.

Section 10.    VESTING OF POWERS AND DUTIES.  Any additional or successor Trustee shall, immediately upon his appointment and his acceptance in writing filed with the Trustees, become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as a Trustee and all the Trustees then in office and any Corporate Trustee or Corporate Agent appointed pursuant to Article V, Section 3, of this Trust Agreement and all other necessary persons shall be notified immediately.

# ARTICLE IV

# CANADIAN TRUSTEES

Section 1.    DECISIONS.  The Canadian Board of Trustees shall make all decisions, and only such decisions, that affect Canadian participants, retirees and beneficiaries, Canadian Employers and monies contributed by them, and funds maintained in Canada.

Section 2.    APPOINTMENT.  The Canadian Board of Trustees shall consist of up to 6 Trustees.  The Union may appoint 3 Trustees, 2 of whom shall be Canadian citizens.  Canadian Employers may appoint 2 Trustees who shall be Canadian citizens.  Employer Trustees of this Fund may appoint 1 Trustee.

Section 3.    REMOVAL.  The Union or Employers empowered by this Article to appoint Trustees may remove any Trustee(s) appointed by it or them.

- 8 -

36479-3

*Section 4.*    WHO MAY BE TRUSTEES. Each Employer Trustee must be signatory to a collective bargaining agreement, requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction his principal place of business is located. Each Employer Trustee must also employ an average of twenty-five or more employees. Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

*Section 5.*    PROCEDURES. The procedures, rights and obligations set forth in Article III, Sections 2, 3, 9 and 10, shall apply to this Board of Trustees.

- 9 -

36479-3

# ARTICLE V

## POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES

*Section 1.*    PROPERTY AND ASSISTANCE.  The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire and employ and retain such legal counsel, investment manager or counsel, administrative, accounting, actuarial, clerical and other assistants or employees as in their discretion they may find necessary or appropriate in the performance of their duties and to pay the costs thereof out of the Fund.

*Section 2.*    CONSTRUCTION OF AGREEMENT. The Trustees shall have the power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Contributing Employers, the employees and their families, dependents, beneficiaries and/or legal representatives.

*Section 3.*    GENERAL POWERS. The Trustees are hereby empowered, in addition to other such powers as set forth herein or conferred by law:

(a) to establish and administer a Pension Fund, and Pension and Annuity Plans, on behalf of the Employees referred to in this instrument;

(b) to enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Pension Fund and to do all acts as they, in their discretion, may deem necessary and advisable;

(c) to compromise, settle, arbitrate and release claims or demands in favor of or against the Pension Fund or the Trustees on such terms and conditions as the Trustees may deem advisable;

- 10 -

(d) to establish and accumulate as part of the Pension Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purpose of such Trust;

(e) to pay out of the Pension Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund or any money, property, or securities forming a part thereof;

(f) to make appropriate allocations of common administrative expenses and disbursements shared or to be shared with any other Plan or Fund;

(g) to receive contributions or payments from any source whatsoever to the extent permitted by law;

(h) to invest and reinvest the Pension Funds in any type of investments and to take any and all action with respect to holding, buying, selling or maintaining such investments as they, in their sole discretion, may deem appropriate;

(i) to procure a group annuity contract or contracts in accordance with the Insurance Code of the District of Columbia for the purpose of providing some or all of the benefits to be provided under this Pension Fund and/or appoint a bank or banks or trust company or trust companies to be designated as (1) "Corporate Trustee," and to enter into and execute a trust agreement or agreements with such bank or banks or trust company or trust companies, to provide for the investment and reinvestment of assets of the Pension Fund with such other provisions incorporated therein as may be deemed desirable in the Trustee's sole discretion for the proper management of the Pension Fund and without limit with respect to the powers which the Trustees may grant to such Corporate Trustee, in such agreement to the extent permitted by law; or as (2) "Corporate Agent";

- 11 -

36479·3

(j) to do all acts, whether or not expressly authorized herein, that the Trustees may deem necessary or proper for the protection of the property held hereunder;

(k) to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish to the general objective of enabling the employees to obtain pension and annuity benefits in the most efficient and economical manner.

*Section 4.*    COMPENSATION.  The Union and Employer Trustees shall not receive compensation for the performance of their duties.  However, they may be reimbursed for reasonable out-of-pocket travel and incidental expenses in connection with their duties as Trustees.

*Section 5.*    AUTHORITY TO ENTER INTO AGREEMENTS WITH OTHER TRUSTEES. The Trustees are hereby given authority to enter into agreements with Trustees of other Pension Funds to which the Union is a party to permit such other Pension Funds to join or merge with the Pension Fund.

*Section 6.*    PERSONAL LIABILITY. The liability, if any, of the Board of Trustees or any individual Trustee or Trustees shall be governed by the following provisions to the extent permissible by applicable Federal law: Neither the Trustees nor any individual or Successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Fund contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Fund and the Fund is hereby charged with a first lien in favor of such Trustee for his or their security and indemnification for any amounts paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them may incur hereunder, including cost of defense of litigation; provided, however, that nothing

- 12 -

herein shall exempt any Trustee from liability arising out of his own willful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

The Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of their duties, except in case of willful misconduct, bad faith or gross negligence; nor shall any Trustee, in the absence of his own willful misconduct, bad faith or gross negligence, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees.

The Trustees shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Neither the Employers, nor the Union, shall in any way be liable in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively.

The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting upon such advice of counsel to the Trust as respects legal questions.

*Section 7.* BOOKS OF ACCOUNT. The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be audited annually or more often by a certified public accountant selected by the Trustees. A copy of such audit shall be available at all

- 13 -

times upon reasonable notice for inspection by signatories to this Agreement at the principal office of the Fund.

     *Section 8.*     EXECUTION OF DOCUMENTS. The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to execute jointly any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Pension Fund and the Trustees.

     *Section 9.*     DEPOSIT AND WITHDRAWAL OF FUNDS. All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by the Trustees authorized in writing by the Trustees to sign such checks. No check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee, except when signed by a designated employee as provided in this Section.

     The Employer Trustees shall designate in writing the name or names of any Employer Trustee who may sign checks in the above manner, and the Union Trustees shall likewise designate in writing the name or names of the Union Trustee who may sign checks in the above manner.

     The Trustees may, in their discretion, designate and authorize an employee of the Fund to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for that purpose.

     *Section 10.*     SURETY BONDS. The Trustees and any employees of the Trustees who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized

- 14 -

16479-3

surety company in such amount as may be determined from time to time by the Trustees. Each such employee employed by the Trustees who may be engaged in handling monies of the Pension Fund shall also be bonded by a duly authorized surety company in the same manner. The cost of the premium on such bonds shall be paid out of the Pension Fund.

## ARTICLE VI

## CONTRIBUTIONS TO THE PENSION FUND

*Section 1.*    RATE OF CONTRIBUTIONS. In order to effectuate the purpose hereof, each Employer shall contribute to the Pension Fund the amount required by the Collective Bargaining Agreement between the Union and the Employer. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modification thereto. On matters other than contribution rates, contributions to the Pension Plan shall be governed by the Rules and Regulations of the Pension Plan; contributions to the Annuity Plan shall be governed by the Rules and Regulations of the Annuity Plan.

*Section 2.*    EFFECTIVE DATE OF CONTRIBUTIONS. All contributions shall be made effective as required by the Collective Bargaining Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement with the Union or until he ceases to be an Employer within the meaning of this Agreement and Declaration of Trust, as hereinafter provided.

*Section 3.*    MODE OF PAYMENT. All contributions shall be payable to the "IUPAT Industry Pension Fund" and shall be paid in the manner and form determined by the Trustees.

- 15 -

36479-3

*Section 4.*    DEFAULT IN PAYMENT.    Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer in default for twenty days may be required at the discretion of the Trustees to pay such reasonable rate of interest as the Trustees may fix on the money due to the Trustees from the date when the payment was due to the date when payment is made, together with all expenses of collection (including attorneys' fees) incurred by the Trustees and such liquidated damages or penalties as may be assessed by the Trustees.

*Section 5.*    REPORT ON CONTRIBUTIONS. The Employers shall make all reports on contributions in such manner and form as required by the Trustees.

*Section 6.*    AUDITS. The Trustees may at any time have an audit made by certified public accountants of the payroll, wage and cash disbursement records, general ledger, and other financial records, including but not limited to tax returns, of any Employer in connection with the said contributions and/or reports. When an Employer receives notice that the Employer is scheduled for an audit, the Employer may write to the Fund 1) explaining why the time or date for the audit is impossible for the Employer to comply with and 2) offering alternative times or dates for an audit within a reasonable time. If the Fund does not receive such a written response from the Employer within 48 hours before the scheduled audit, the certified public accountants responsible for the audit may proceed as scheduled. If the Employer fails to cooperate with a scheduled audit, the Trustees may require that the Employer pay to the Fund all costs incurred as a result of the Employer's failure. Any Employer found delinquent or in violation of the Rules and Regulations of the Pension Plan

- 16 -

36479-3

and/or the Annuity Plan as a result of an audit may be required by the Trustees to pay to the Fund the cost of the audit.

# ARTICLE VII

# PLAN OF BENEFITS

*Section 1.*    BENEFITS. The Trustees shall have full authority to determine all questions of the nature, amount and duration of benefits to be provided, based on what is estimated the Fund can provide without undue depletion or excess accumulation; provided, however, that no benefits other than pension, annuity, death, disability and severance benefits may be provided for or paid under this Agreement and Declaration of Trust.

*Section 2.*    RECIPIENTS OF BENEFITS. Benefits may be provided in accordance with Section 1 of this Article for any employee of a Contributing Employer covered by a Collective Bargaining Agreement between the Employer and the Union or other classes of employee defined in Article I, Section 9(a), (b) and (c).

*Section 3.*    ELIGIBILITY REQUIREMENTS FOR BENEFITS. The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries.

*Section 4.*    METHOD OF PROVIDING BENEFITS. The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine.

*Section 5.*    WRITTEN PLAN OF BENEFITS. The detailed basis on which payment of benefits is to be made pursuant to this Agreement shall be specified in writing by appropriate action of the Trustees subject, however, to such changes or modifications by the Trustees from time to time

- 17 -

as they in their discretion may determine. All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

Section 6.    APPROVAL OF PLAN. (a) United States: The Pension Plan and Annuity Plan adopted by the Trustees shall be such as will qualify for approval by the Internal Revenue Service, U.S. Treasury Department, and will continue as qualified Plans, so as to ensure that the Employer contributions to the Pension Fund are proper deductions for income tax purposes. The Trustees are authorized to make whatever applications are necessary with the Internal Revenue Service to receive and maintain approval of the Pension Plan and the Annuity Plan. (b) Canada: The Pension Plan and Annuity Plan shall be such as will qualify for approval by Revenue Canada and for registration, as appropriate, under Provincial legislation.

Section 7.    LIMIT OF EMPLOYER'S LIABILITY. Except for withdrawal liability and delinquency liability provided by law, and except as provided in Article VI, the financial liability of any Employer shall in no event exceed the obligation to make contributions as set forth in its applicable Collective Bargaining Agreement with the Union.

# ARTICLE VIII

# MEETING AND DECISION OF TRUSTEES

Section 1.    OFFICERS OF TRUSTEES. The Trustees shall elect two Co-Chairmen, one from among the Union Trustees and the other from among the Employer Trustees. The terms of such officers shall commence on the date of their election and continue until his or their successors have been elected.

Section 2.    MEETING OF TRUSTEES. Meetings of the Trustees shall be held at such

- 18 -

36479-3

place or places as may be agreed upon by the Co-Chairmen and may be called by the said officers

upon twenty (20) days' notice to the other Trustees and may be held at any time without such notice

if all the Trustees consent thereto in writing. The Co-Chairmen may also convene a meeting of the

Trustees by telephone conference called upon five (5) days notice to the other Trustees.

Section 3.    ACTION BY TRUSTEES WITHOUT MEETING.  Action by the Trustees

may also be taken by them in writing without a meeting; provided, however, that in such cases there

shall be unanimous written concurrence by all the Trustees.

Section 4.    QUORUM (UNITED STATES).  In all meetings of the Trustees, two Trustees

shall constitute a quorum for the transaction of business providing that there is at least one Employer

and one Union Trustee present at the meeting.  The vote of any absent Trustee shall be cast by the

Trustees present, designated by the same party with the same force as if such absent Trustee was

present.  If at any time there is an unequal number of Employer and Union Trustees appointed, the

Employer Trustees and the Union Trustees shall have equal voting strength with the difference in the

number appointed treated as absent Trustees.

Section 5.    MAJORITY VOTE OF TRUSTEES (UNITED STATES).  All action by the

Trustees shall be by majority decision of the Employer and Union Trustees.  Such majority vote shall

govern not only this Article but any portion of this Agreement and Declaration of Trust which refers

to action by the Trustees.  In the event any matter presented for decision cannot be decided because

of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be

submitted to arbitration as hereinafter provided.

Section 6.    QUORUM AND VOTING (CANADA).  In all meetings of the Canadian

- 19 -

36479-3

Trustees, two Trustees shall constitute a quorum for the transaction of business. All action by the Trustees shall be by unit vote, with the Union Trustees having 1 vote and the Employer Trustees having 1 vote. How each such vote is cast shall be decided by majority vote within each respective unit. In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be submitted to arbitration as hereinafter provided.

*Section 7.*    MINUTES OF MEETINGS. The Trustees shall keep minutes of all meetings but such minutes need not be verbatim. Copies of the minutes shall be sent to all Trustees.

## ARTICLE IX

## IMPARTIAL ARBITRATOR

*Section 1.*    APPLICATION OF THIS ARTICLE. If the Trustees cannot agree on an arbitrator, either the Employer Trustees or the Union Trustees or both may apply to the District Court of the United States for the District in the area in which the Fund maintains its principal office (the Canadian Trustees may apply to the competent court in the jurisdiction of the Courts of Ontario) for the designation of an arbitrator who will decide any dispute among the Trustees or any other matter submitted to arbitration in accordance with the provisions of Article VIII, Sections 5 or 6. The decision of the arbitrator shall be final and binding.

*Section 2.*    EXPENSES OF ARBITRATION. The cost and expense incidental to any arbitration proceedings, including the fee, if any, of the impartial arbitrator, shall be proper charges against the Fund and the Trustees are authorized to pay such charges.

- 20 -

36479-3

## ARTICLE X

## EXECUTION OF AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    COUNTERPARTS.  This Agreement and Declaration of Trust may be executed in any number of counterparts.  The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.

*Section 2.*    WRITTEN INSTRUMENT.  An Employer may adopt and become a party to this Agreement and Declaration of Trust by executing a counterpart hereof or by executing any other written instrument wherein he agrees to participate in the Fund pursuant to the terms of this Agreement and Declaration of Trust, and upon written notification from the Trustees that he has been accepted as a Contributing Employer.

*Section 3.*    EFFECTIVE DATE.  The effective date of this Restated Agreement and Declaration of Trust is April 1, 2002.  This Restated Agreement and Declaration of Trust continues in effect, except as modified herein and by amendments duly adopted from time to time, the provisions of an Agreement and Declaration of Trust effective April 1, 1967.

## ARTICLE XI

## AMENDMENT TO AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    AMENDMENT BY TRUSTEES. This Agreement and Declaration of Trust may be amended in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees.  As to any amendment, the Trustees, in their discretion, shall have power to fix the effective date thereof.  Notice of the proposed amendment shall be given at the time the notice of the meeting is given, unless waived by the Trustees.

- 21 -

J6479-3

Section 2.    LIMITATION OF RIGHT TO AMENDMENT.  No amendment may be adopted which will be in conflict with the Collective Bargaining Agreements with the Union to the extent that such agreements affect contributions to the Fund created hereunder, be contrary to the laws governing trust funds of this nature, or be contrary to any agreements entered into by the Trustees.  Under no circumstances shall any amendment be adopted which will in any way alter Article XIII, Section 1.

Section 3.    NOTIFICATION OF AMENDMENT.  Whenever an amendment is adopted in accordance with this Article, a copy thereof shall be distributed to all Trustees, and the Trustees shall so notify all necessary parties and shall execute any instrument or instruments necessary in connection therewith.

## ARTICLE XII

## TERMINATION OF TRUST

Section 1.    BY THE TRUSTEES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing executed by all the Trustees when there is no longer in force and effect a Collective Bargaining Agreement between an Employer and the Union requiring contributions to the Fund.

Section 2.    BY THE PARTIES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing duly executed by the Employers and the Union.

Section 3.    PROCEDURE ON TERMINATION.  In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the Fund and shall distribute and apply any remaining surplus

- 22 -

36479-3

in such manner as will, in their opinion, best effectuate the purpose of the Fund; provided, however, that no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefits of the employees, their families, beneficiaries or dependents, or the administrative expenses of the Fund or for other payments in accordance with the provisions of the Fund.

*Section 4.*    NOTIFICATION OF TERMINATION. Upon termination of the Fund in accordance with this Article, the Trustees shall forthwith notify each Local Union and/or District Council of the Union and each Employer, who are parties hereto, and also all other necessary parties; and the Trustees shall continue as Trustees for the purpose of winding up the affairs of the Trust.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

*Section 1.*    NON-REVERSION. Under no circumstances shall any portion of the corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any Contributing Employer or Local Union, and/or District Council or the Union.

*Section 2.*    TERMINATION OF INDIVIDUAL EMPLOYERS. An Employer shall cease to be an Employer within the meaning of this Agreement and Declaration of Trust when he is no longer obligated, pursuant to a Collective Bargaining Agreement with the Union, to make contributions to this Pension Fund, or, as determined by the Trustees, when he is delinquent in his contributions or reports to the Pension Fund.

*Section 3.*    VESTED RIGHTS. No Employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or legal representative, shall have any

- 23 -

36479-3

right, title or interest in or to the Pension Fund or any property of the Pension Fund or any part thereof except as may be specifically determined by the Trustees.

Section 4.    ENCUMBRANCE OF BENEFITS.  No monies property or equity of any nature whatsoever, in the Pension Fund, or contracts or benefits or monies payable therefrom, shall be subject in any manner by an Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same subject thereto shall be null and void, except for a qualified domestic relations order issued by a court of competent jurisdiction pursuant to law.

Section 5.    SITUS. The City of Washington, D.C., shall be deemed the situs of the Trust Fund created hereunder.  All questions pertaining to validity, construction and administration shall be determined in accordance with federal law or, when applicable, the laws of the District of Columbia.

Section 6.    CONSTRUCTION OF TERMS.  Whenever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also in the feminine gender or neuter in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in the Agreement and Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

Section 7.    CERTIFICATION OF TRUSTEES' ACTIONS.  The Co-Chairmen of the

- 24 -

36479-3

Trustees may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Pension Fund or with the Trustees shall be fully protected in reliance placed on such duly executed documents.

Section 8.    NOTIFICATION TO TRUSTEES. The address of each of the Trustees shall be that stated on the signature page of this Agreement and Declaration of Trust. Any change of address shall be effected by written notice to the Trustees.

Section 9.    SEVERABILITY. Should any provision in this Agreement and Declaration of Trust or in the Plan or Rules and Regulations adopted thereunder or in any Collective Bargaining Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

Section 10.    TITLES. The title headings to the various Sections and Articles are for the purpose of convenience only and shall not have any legal significance apart from the text.

IN WITNESS THEREOF, the undersigned to hereby cause this instrument to be executed.

FOR THE INTERNATIONAL
UNION OF PAINTERS AND
ALLIED TRADES

BY: _James A. Williams_
James A. Williams
General President

FOR THE FINISHING CONTRACTORS
ASSOCIATION

BY: _John J. Frye_
John Frye
Chairman

- 25 -

36479-3

# INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND

United Unions Building, Suite 501
1750 New York Avenue, NW
Washington, DC 20006

Telephone: (202) 783-4884

## UNITED STATES TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

Kenneth E. Rigmaiden
George Galis
William D. Candelori, Jr.
Robert Kucheran
Raymond J. Price, III
Raymond Sesma

**Employer Trustees**

Aristotle G. Aivaliotis
Joseph Brescia
Robert L. Cusumano
Richard A. Grund
Michael LeGood
Leo J. Manta
Steve Sharpe

## CANADIAN TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

Robert Kucheran
William Nicholls

**Employer Trustees**

Adolf Gust
Richard Pazdzierski

International Painters And Allied Trades
Industry Pension Plan



Rules and Regulations
as amended and restated as of January 1, 2003



EXHIBIT

# IUPAT INDUSTRY PENSION PLAN

PAGE i

## TABLE OF CONTENTS

ARTICLE 1.    ESTABLISHMENT & CONSTRUCTION .................................................. 1

Section 1.01    Establishment of Plan and Name ..................................................... 1
Section 1.02    Purpose ................................................................................ 1
Section 1.03    Trustees ............................................................................... 1
Section 1.04    Plan Effective Date .................................................................. 1
Section 1.05    Amendment of Plan .................................................................... 2
Section 1.06    Prohibited Amendments ................................................................ 2
Section 1.07    Merger or Transfer of Plan Assets .................................................... 2
Section 1.08    Termination of Plan .................................................................. 2
Section 1.09    Termination Actions .................................................................. 3
Section 1.10    Notices ............................................................................... 3
Section 1.11    Unauthorized Representations .......................................................... 3
Section 1.12    Construction .......................................................................... 3
Section 1.13    Choice of Law ......................................................................... 4
Section 1.14    Severability .......................................................................... 4

ARTICLE 2.    ADMINISTRATION ......................................................................... 4

Section 2.01    Powers Of Trustees .................................................................... 4
Section 2.02    Duties and Powers of Plan Administrator ............................................... 5
Section 2.03    Discretion ............................................................................ 5
Section 2.04    Consultants ........................................................................... 5
Section 2.05    Delegation and Allocation of Responsibility ........................................... 5
Section 2.06    Reliance .............................................................................. 5
Section 2.07    Limitation of Liability ............................................................... 5
Section 2.08    Indemnity ............................................................................. 6

ARTICLE 3.    PARTICIPATION .......................................................................... 6

Section 3.01    Eligible Employees .................................................................... 6
Section 3.02    Entry Date ............................................................................ 7
Section 3.03    Termination of Participation .......................................................... 7
Section 3.04    Reinstatement of Participation ........................................................ 7
Section 3.05    Acceptance of a New Contributing Employer ............................................. 8
Section 3.06    Acceptance of A New Affiliated Employer ............................................... 8
Section 3.07    Additional Conditions ................................................................. 9
Section 3.08    Delinquent Employers .................................................................. 9
Section 3.09    Mergers ............................................................................... 10

ARTICLE 4.    VESTING ................................................................................ 10

Section 4.01    Vested Participant .................................................................... 10
Section 4.02    Service Vesting ....................................................................... 10
Section 4.03    Age Vesting ........................................................................... 11
Section 4.04    Termination Vesting ................................................................... 11
Section 4.05    Vesting Changes ....................................................................... 11
Section 4.06    Years of Vesting Service .............................................................. 11
Section 4.07    One-Year Break-in-Service ............................................................. 12
Section 4.08    Effect of One-Year Break .............................................................. 12
Section 4.09    Cure of One-Year Break ................................................................ 12
Section 4.10    Family and Medical Leave .............................................................. 13
Section 4.11    Qualified Military Service ............................................................ 13
Section 4.12    Permanent Break in Service ............................................................ 14

# IUPAT INDUSTRY PENSION PLAN                                  PAGE ii

Section 4.13    Effect of Permanent Break.....................................................................14

ARTICLE 5.    ACCRUED PENSION BENEFIT CALCULATION.....................................15

Section 5.01    Accrued Benefit...................................................................................15
Section 5.02    Pension Benefit for Service before the Contribution Period - Qualification........16
Section 5.03    Pension Benefit Credit for Service before the Contribution Period - Amount.......17
Section 5.05    Benefit Credit for Service during the Contribution Period...........................19
Section 5.06    Maximum Contribution Rates.....................................................................19
Section 5.07    Extra Contributions..............................................................................20
Section 5.08    Contribution Rate.................................................................................20
Section 5.09    Contribution Rate Changes......................................................................20
Section 5.10    Benefit Break-In-Continuity...................................................................21
Section 5.11    New Groups..........................................................................................22
Section 5.12    Reciprocal Pension Agreements..................................................................22
Section 5.13    Merger Agreements.................................................................................23
Section 5.14    Post-Retirement Benefit Increases.............................................................23

ARTICLE 6.    PENSION BENEFIT PAYMENT..................................................................24

Section 6.01    Normal Retirement Pension – Eligibility....................................................24
Section 6.02    Normal Retirement Age...........................................................................24
Section 6.03    Normal Retirement Pension – Amount...........................................................24
Section 6.04    Late Retirement Pension – Eligibility.......................................................25
Section 6.05    Late Retirement Pension - Amount..............................................................25
Section 6.06    Mandatory Payment of Benefits..................................................................25
Section 6.07    Mandatory Payment - Amount......................................................................26
Section 6.08    Special Early Retirement Pension - Eligibility............................................27
Section 6.09    Special Early Retirement Pension - Amount..................................................28
Section 6.10    Early Retirement Pension —Eligibility.......................................................28
Section 6.11    Early Retirement Pension - Amount.............................................................28
Section 6.12    Disability Pension — Eligibility.............................................................29
Section 6.13    Disability Pension - Amount....................................................................30
Section 6.14    Effect of Recovery by a Disabled Pensioner.................................................30
Section 6.15    Early Vested Pension — Eligibility..........................................................31
Section 6.16    Early Vested Pension - Amount..................................................................31
Section 6.17    Partial Pension - Eligibility.................................................................32
Section 6.18    Partial Pension - Amount.......................................................................32
Section 6.19    Partial Pension – Payment Forms...............................................................32
Section 6.20    Non-Duplication of Pensions....................................................................32
Section 6.21    Taxes................................................................................................33

ARTICLE 7.    STANDARD PENSION PAYMENT FORMS.....................................................33

Section 7.01    General Payment Restrictions..................................................................33
Section 7.02    Commencement of Benefits Generally...........................................................33
Section 7.03    Married Participants - General Rules.........................................................34
Section 7.04    Single Participants - General Rules..........................................................34
Section 7.05    Small Benefits....................................................................................34
Section 7.06    Husband-and-Wife Pension at Retirement — Standard Form of Benefit Payment
                 for Married Participants.......................................................................35
Section 7.07    Waiver of Husband-and-Wife Pension...........................................................35
Section 7.08    Pre-retirement Surviving Spouse Pension.....................................................37
Section 7.09    Waiver of Pre-retirement Surviving Spouse Pension.........................................37
Section 7.10    Pre-retirement Surviving Spouse Pension – Spouse Alternatives...........................38
Section 7.11    Qualified Domestic Relations Orders.........................................................39

# IUPAT INDUSTRY PENSION PLAN                                   PAGE iii

Section 7.12   Qualified Domestic Relations Order Procedures ................................ 39
Section 7.13   Guaranteed Five-Year Pension (Unreduced Pension) — Standard Form of Benefit
            Payment for Unmarried Participants ................................ 40
Section 7.14   Pre-Retirement Death Benefit - Eligibility ................................ 40
Section 7.15   Post-Retirement Death Benefit – Amount ................................ 41
Section 7.16   Beneficiary ................................ 41
Section 7.17   Retirement and Suspension of Benefits Before Normal Retirement Age .... 42
Section 7.18   Pensioner Reporting of Work Before Normal Retirement Age ................................ 42
Section 7.19   Resumed Benefits Before Normal Retirement Age - Eligibility ................................ 43
Section 7.20   Resumed Benefits Before Normal Retirement Age - Amount ................................ 43
Section 7.21   Suspension of Benefits after Normal Retirement Age ................................ 44
Section 7.22   Plan Disclosure of Suspension Rules ................................ 45
Section 7.23   Pensioner Reporting of Work after Normal Retirement Age ................................ 45
Section 7.24   Advance Determinations of Suspendible Work ................................ 46
Section 7.25   Plan Notice of Suspension after Normal Retirement Age ................................ 46
Section 7.26   Resumption of Benefit Payments after Normal Retirement Age – Eligibility ................................ 46
Section 7.27   Resumption of Benefit Payments after Normal Retirement Age – Amount ................................ 47
Section 7.28   Waiver of Suspension ................................ 48
Section 7.29   Incompetence or Incapacity of a Pensioner or Beneficiary ................................ 48
Section 7.30   Non-Assignment of Benefits ................................ 48
Section 7.31   Payments to Minors ................................ 49

ARTICLE 8.    OPTIONAL FORMS OF PENSION PAYMENT ................................ 49

Section 8.01   General ................................ 49
Section 8.02   Joint and Survivor Options ................................ 50
Section 8.03   Social Security (Level Income) Option ................................ 52
Section 8.04   Combined Level Income and Joint and Survivor Option ................................ 52
Section 8.05   Ten Year Certain Option ................................ 53
Section 8.06   Lump Sum Payment Option ................................ 53
Section 8.07   Benefit Payment Restrictions ................................ 54
Section 8.08   Trustee-to-Trustee Transfers - Rollovers ................................ 58

ARTICLE 9.    CLAIMS PROCEDURE & BENEFIT PAYMENTS ................................ 60

Section 9.01   Application ................................ 60
Section 9.02   Partial Pension - Application Procedure ................................ 60
Section 9.03   Information and Proof ................................ 60
Section 9.04   Trustee Discretion and Authority ................................ 60
Section 9.05   Initial Claim Determination ................................ 61
Section 9.06   Request for Review ................................ 61
Section 9.07   Decision on Review ................................ 61
Section 9.08   Administrative Delay ................................ 62
Section 9.09   No Rights to Assets ................................ 62

ARTICLE 10.   FUNDING ................................ 62

Section 10.01   Funding Policy ................................ 62
Section 10.02   Trust for Participants ................................ 62
Section 10.03   Investments ................................ 62
Section 10.04   Source of Benefit Payments ................................ 63
Section 10.05   Expenses ................................ 63
Section 10.06   Non-Reversion ................................ 63
Section 10.07   Employer Contributions ................................ 63
Section 10.08   Irrevocability of Contributions ................................ 63
Section 10.09   Qualified Military Service Contributions ................................ 63

# IUPAT INDUSTRY PENSION PLAN                                    PAGE iv

Section 10.10 Return of Mistaken Contributions ................................................ 64
Section 10.11 Delinquent Employers ................................................ 64
Section 10.12 Collection of Delinquent Contributions ................................ 65

ARTICLE 11.    CONTRIBUTING EMPLOYER WITHDRAWAL ................................ 66

Section 11.01 Employer Withdrawal - In General ................................ 66
Section 11.02 Control Group Employer - Definition ................................ 66
Section 11.03 Construction Industry Employers - Definition ................ 66
Section 11.04 Complete Withdrawal - Defined ................................ 66
Section 11.05 Partial Withdrawal - Defined ................................ 67
Section 11.06 Unfunded Vested Liability ................................ 67
Section 11.07 Title IV Vested Benefits ................................ 67
Section 11.08 Initial Unfunded Vested Liability ................................ 68
Section 11.09 Annual Change in Unfunded Vested Liability ................ 68
Section 11.10 Reallocated Liability ................................ 68
Section 11.11 Mergers ................................ 69
Section 11.12 Amount of Control Group Employer Liability for Complete Withdrawal ........ 69
Section 11.13 Employer Proportionate Share of Initial Unfunded Vested Liability ........ 70
Section 11.14 Employer Proportionate Share of Annual Changes in Unfunded Vested Liability ........ 70
Section 11.15 Apportionment Base Period ................................ 71
Section 11.16 Base Period Employer Contributions ................................ 71
Section 11.17 Pre-1980 Terminated Unit Contributions ................................ 72
Section 11.18 Employer Proportionate Share of Annual Charges for Reallocated Liability ........ 72
Section 11.19 Transfers of Liability ................................ 72
Section 11.20 De Minimis Reduction ................................ 73
Section 11.21 20-Year Payment Limitation ................................ 73
Section 11.22 Insolvency Reduction ................................ 73
Section 11.23 Partial Withdrawal Liability - Amount ................................ 73
Section 11.24 Payment of Withdrawal Liability ................................ 73
Section 11.25 Notice and Collection of Withdrawal Liability ................ 74
Section 11.26 Withdrawal Liability Review ................................ 74
Section 11.27 Withdrawal Liability Arbitration ................................ 75
Section 11.28 Withdrawal Liability Default ................................ 75
Section 11.29 Withdrawal Liability Collection Litigation ................................ 75
Section 11.30 Withdrawal Liability Abatement – Construction Industry Employers ........ 76
Section 11.31 Withdrawal Liability Abatement – Other Employers ................ 76
Section 11.32 Mass Withdrawal ................................ 76

ARTICLE 12.    TAX RULES AND AFFILIATED EMPLOYERS ................................ 76

Section 12.01 Non-Discrimination ................................ 76
Section 12.02 Affiliated Employer Participation ................................ 77
Section 12.03 Conditional Adoption ................................ 77
Section 12.04 General Affiliated Employer Rules ................................ 77
Section 12.05 Limitation Employer ................................ 78
Section 12.06 Top-Heavy Requirements ................................ 78
Section 12.07 Maximum Benefit Limit ................................ 80
Section 12.08 Defined Benefit Plan Limit ................................ 80
Section 12.09 Section 415 Aggregation ................................ 82
Section 12.10 Maximum Benefits Coordination ................................ 82
Section 12.11 Restricted (High-25) Employees ................................ 82

ARTICLE 13.    DEFINITIONS ................................ 83

## IUPAT INDUSTRY PENSION PLAN                                    PAGE 63

(b) The Trustees may delegate or assign responsibility for investment (including acquisition and disposition of assets) to an Investment Manager on the written acknowledgment of the Investment Manager of its status as a fiduciary with respect to a Plan.

### Section 10.04  Source of Benefit Payments

Plan assets will be the sole source for the payment of benefits under the Plan. This Plan has been established on the basis of an actuarial calculation that has established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Plan on a permanent basis, and fulfill the funding requirements of ERISA.

### Section 10.05  Expenses.

All expenses of establishing, administering and terminating the Plan and Trust with respect to the Plan will be paid from Plan assets.

### Section 10 06  Non-Reversion

It is expressly understood that in no event shall any of the assets of the Plan revert to the employers or be subject to any claims of any kind or nature by the Employers.

### Section 10.07  Employer Contributions.

An Employer will pay contributions to the Plan or Trust, for allocation to the Plan as directed by the Trustees, as required by law, a Collective Bargaining Agreement, a Participation Agreement or the Trust Agreement and pay interest, liquidated damages and costs of collection (including audit and attorney fees) as required by the Collective Bargaining Agreement, Participation Agreement, Trust Agreement or law.

### Section 10.08  Irrevocability of Contributions

Contributions to the Trust or Plan are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC 4972) as provided by law.

### Section 10.09  Qualified Military Service Contributions

(a) In accordance with applicable federal law, the Trustees may charge an Employer for contributions (without interest) with respect to Qualified Military Service after October 12, 1994 upon a timely return to work with the Employers under the Plan.

(b) Absent other resolution of the Trustees, the charge will equal

## IUPAT INDUSTRY PENSION PLAN                              PAGE 64

(1)     the current contribution rate(s) for similarly-situated active Eligible Employees during the period of Qualified Military Service, multiplied by

(2)     average contributory hours for the Employee during a period, equal to the lesser of a period equal to the term of Qualified Military Service or twelve (12) months before the Qualified Military Service began.

(c) Absent other resolution of the Trustees, the charge shall be allocated to Employers as follows.

(1)     Contributions for Qualified Military Service of less than thirty (30) days will be charged to the last Employer before Qualified Military Service began.

(2)     Contributions for longer Qualified Military Service will be charged in proportion to an Employee's Hours of Service in Covered Employment with each Employer in the twelve (12) month period before Qualified Military Service began. Contributions chargeable to an Employer which are not collectible will be reallocated as if the Employee had no Hours of Service in Covered Employment with the uncollectible Employer.

*Section 10.10   Return of Mistaken Contributions*

(a) The Trustees may return amounts erroneously paid to the Trust as allowed by law.

(b) A contribution or withdrawal liability payment made by reason of a mistake of fact or law, other than a mistake relating to the qualification of a Plan under IRC 401 or the exemption of the Trust from tax under IRC 501(a), may be returned within six (6) months after a determination of a mistake by the Trustees

(c) A contribution which is conditioned on initial qualification of a Plan may be returned within one (1) year after an adverse determination, provided an application for determination is filed by the time prescribed for filing the Employer's return for the taxable year in which the Plan was adopted.

(d) A contribution, which is conditioned on deductibility under IRC 404, may be returned (to the extent disallowed) within one (1) year after disallowance.

*Section 10.11   Delinquent Employers*

(a) The Trustees may terminate a person or organization as an Employer if the person or organization files to make contributions for more than 90 days after the due date. The action of the Trustees may create a Complete Withdrawal or Partial Withdrawal from the Plan by the Employer

(b) To once again become an Employer, the person or organization must post a bond in the amount of twice the delinquency and pay all current and delinquent contributions within three

months of the posting of the bond. If the Employer fails to do so, the bond shall be forfeited and the Employer will not be permitted to resume status as an Employer.

(c) If the Employer satisfies the foregoing conditions and once again is allowed to participate on that basis, the bond will be returned if reports and contributions remain current for a period of one year following reinstatement.

(d) The Trustees and the Union retain the right to enforce payment of delinquencies in accordance with other provisions of this Plan, the Trust Agreement, the applicable Collective Bargaining Agreement or Participation Agreement and applicable law.

*Section 10.12  Collection of Delinquent Contributions*

(a) In the case of a Contributing Employer that fails to make the contributions to the Plan for which it is obligated, in accordance with the terms and conditions of a collective bargaining agreement, the Trustees may bring an action on behalf of the Plan pursuant to ERISA 502(g)(2) to enforce the Contributing Employer's obligation.

(b) In any such action in which judgment is awarded in favor of the Plan, the Contributing Employer shall pay to the Plan, in accordance with the court's award:

    (1)    the unpaid contributions,

    (2)    interest on the unpaid contributions, determined at the rate for underpayment of federal income taxes under IRC 6621

    (3)    liquidated damages equal to the greater of

        (A)    the amount of interest charged on the unpaid contributions, or

        (B)    20 percent of the unpaid contributions,

    (4)    reasonable attorneys' fees and costs of the action, and

    (5)    such other legal or equitable relief as the court deems appropriate.

(c) Nothing in this section shall be construed as a waiver or limitation on the rights or ability of the Plan, Trustees or Union to enforce a Contributing Employer's contribution obligation in any other type of proceeding.

# AMENDMENT TO THE
## INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION PLAN
### (as restated effective January 1, 1999)

Major Topic:          Title to Plan Assets

General Effective Date:    January 1, 2004

The undersigned, pursuant to authorization of the Trustees of the International Painters and Allied Trades Industry Pension Fund, approve and ratify the following changes to the International Painters and Allied Trades Industry Pension Plan, as amended and restated as of January 1, 1999 and amended to date, ("Plan") and amend the Plan accordingly as set forth herein.

WHEREAS, the Trustees desire to amend the Plan to clarify that assets of the Plan or Trust include contributions that are due and payable by Employers as well as contributions that have been paid to the Plan or Trust, and

WHEREAS, the full board of Trustees has authorized the Co-Chairman to execute an amendment to reflect discussion and changes approved by the full board.

THEREFORE, the Plan shall be amended, effective on or after January 1, 2004 unless otherwise provided by the amendment or applicable law, in the following manner.

1.    Amend *Section 10.08 (Irrevocability of Contributions)* to read as follows (amended language is in bold italics):

> Contributions *by Employers* to the Trust or Plan *are plan assets and* are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust *or in contributions owed to the Trust or Plan in accordance with a collective bargaining agreement, the Trust Agreement, a Participation Agreement or applicable law but not yet paid* and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC

122882-1

4972) as provided by law.

Witness our signatures, pursuant to authority granted by the full Board of Trustees, to memorialize our action and the prior resolutions of the Trustees to amend and restate the Plan.

EMPLOYER TRUSTEES

By: _____
Ralph A. Trallo, Co-Chair

Date: _October 14_, 2003

UNION TRUSTEES

By: _____
James A. Williams, Co-Chair

Date: _October 14_, 2003

122882-1

2