## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) | 1:08-cv-00466 |
| | ) | |
| ROSE CITY GLASS CO., INC. | ) | |
| d/b/a Rose City Glass | ) | |
| d/b/a Rose City Company, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR ENTRY OF JUDGMENT BY DEFAULT

Plaintiff, International Painters and Allied Trades Industry Pension Fund, respectfully moves this Court for entry of judgment by default against Defendant, Rose City Glass Co., Inc., d/b/a Rose City Glass, d/b/a Rose City Company, Inc. ("Company" or "Defendant") in the amount of $21,264.56. On May 13, 2008, Plaintiff filed with the Clerk of the Court a Request to Enter Default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). Default was subsequently entered on May 14, 2008.

Accompanying this motion are a supporting memorandum of points and authorities, the Declaration of Thomas C. Montemore (attached as Exhibit 1), the Declaration of Dawn M. Costa

–CONTINUED ON NEXT PAGE--

(attached as Exhibit 2), and a proposed default judgment.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY: /s/ Kent G. Cprek

KENT G. CPREK, ESQUIRE (I.D. #478231)
510 Walnut Street, 16th Floor
Philadelphia, PA 19106-3683
(215) 351-0615
Attorney for Plaintiff

Date: 5/30/2008

OF COUNSEL:
Dawn M. Costa, Esquire
Jennings Sigmond P.C.
510 Walnut Street, 16th Floor
Philadelphia, PA 19106-3683
(215) 351-0616

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED        )
TRADES INDUSTRY PENSION FUND             )
                                         )
                    Plaintiff,           )        CIVIL ACTION NO.
        v.                               )        1:08-cv-00466
                                         )
ROSE CITY GLASS CO., INC.                )
        d/b/a Rose City Glass            )
        d/b/a Rose City Company, Inc.    )
                                         )
                    Defendant.           )

## MEMORANDUM OF POINTS AND AUTHORITIES IN
## SUPPORT OF MOTION FOR ENTRY OF JUDGMENT BY DEFAULT

Plaintiff, International Painters and Allied Trades Industry Pension Fund (the

"Pension Fund"), is entitled to an Order entering judgment by default against Defendant, Rose

City Glass Co., Inc. d/b/a Rose City Glass, d/b/a Rose City Company, Inc. ("Company" or

"Defendant"), in the amount of $21,264.56.

The Pension Fund served its Complaint on Defendant on April 16, 2008. To date,

Defendant has failed to answer the Complaint or to otherwise defend this action. Plaintiff filed a

Request to Clerk to Enter Default against the Defendant pursuant to Fed. R. Civ. P. 55(a) on May

13, 2008. Default was entered against the Defendant on May 14, 2008. Plaintiff now submits its

motion for entry of judgment by default.

In light of Defendant's default and Defendant's continuing failure to appear or otherwise

defend, the Pension Fund is entitled to judgment by default against Defendant without a hearing.

Fed. R. Civ. P. 55(b); United States v. De Frantz, 708 F. 2d 310 (7th Cir. 1983); Draisner v. Liss

Realty, 211 F. 2d 808 (1954). Moreover, where a defendant, such as the one here, fails to

respond to the Complaint, all factual allegations in the Complaint are deemed admitted.

Thomson v. Wooster, 114 U.S. 104 (1885); Au Bon Pain Corp. v. Artect, Inc., 653 F 2d 61 (2d

Cir. 1981); U.S. ex. Rel. v. Carr, 567 F. Supp. 831, 840 (W.D. MI 1983). General allegations of

fact are also deemed true. Danning v. Lavin, 572 F. 2d 1386, 1388-89 (9th Cir. 1978)

(allegations of insolvency pled in general terms held sufficient to support a finding of fraudulent

conveyance or voidable preference).

Defendant is and has been party to collective bargaining agreements (singly or jointly

"Labor Contracts") with the various local unions and district councils affiliated with the

International Union of Painters and Allied Trades, AFL-CIO-CFC ("International" or "Union"),

including Local Union No. 677 ("Local 677"). Under the Labor Contracts identified as GS0677

and GO0677 (attached as Exhibits 1a and 1b to the Complaint filed in this matter and

incorporated by reference), Defendant is required to remit fringe benefit contributions and other

sums to Plaintiff. See, Exhibit 1, Montemore Declaration, ¶¶ 5, 6. The failure to pay these fringe

benefit contributions and other amounts results in a delinquency to the Plaintiff. Id.

## ARGUMENT

### A.  ENTRY OF JUDGMENT AGAINST DEFENDANT FOR UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS IS APPROPRIATE

#### 1.  Company is Bound by the Terms and Conditions of a Collective Bargaining Agreement with the Union.

Company is a party to Labor Contracts with the Union. See, Exhibit 1, Montemore

Declaration, ¶ 5. Under the terms of the Labor Contracts, the employer agrees to be bound by

the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement", attached as

Exhibit 2 to the Complaint filed in this matter and incorporated by reference) and the

International Painters and Allied Trades Industry Pension Plan ("Plan") (attached as Exhibit 3 to

the Complaint filed in this matter and incorporated by reference) and by all amendments thereto

and actions taken by the trustees of the Pension Fund. See, Complaint, ¶¶ 11-13; Exhibit 1,

Montemore Declaration, ¶¶ 5, 6. The Labor Contract provides for the payment of contributions

to the Pension Fund for time worked by or paid to employees who perform work covered by its

terms and conditions. See, Exhibit 1, Montemore Declaration, ¶ 6.  Failure to make these

contributions, or to submit either incorrect or late remittance reports, results in a delinquency to

the Pension Fund. Id. Under the Trust Agreement, the Pension Fund has the right to audit the

signatory's payroll books and related records to determine that all of the required contributions

have been paid. See, Trust Agreement, Art. VI, Sec. 6.

Furthermore, Section 515 of the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. § 1145, provides:

> Every Employer who is obligated to make contributions to a
> bargained agreement shall … make contributions in accordance
> with … such agreement.

If an employer fails to make the contributions as required by the collective bargaining

agreement and Section 515 of ERISA, then the employer is subject to the provisions of Section

502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Section 502(g)(2) provides for the mandatory

award of the following if a judgment is entered in the Pension Fund's favor pursuant to Section

515:

> A.      the unpaid contributions;

B.  interest on the unpaid contributions;[1]

C.  an amount equal to the greater of:

  (i)  interest on the unpaid contributions; or

  (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under subparagraph (a);[2]

D.  reasonable attorneys' fees and costs of the action, to be paid by the defendant; and

E.  such other legal or equitable relief as the court deems appropriate.

As stated above, Defendant has failed to submit contributions for the period January 1, 2005 through June 4, 2005 and March 1, 2007 through April 30, 2008. See, Exhibit 1, Montemore Declaration, ¶ 7. As a result, Plaintiff is entitled to judgment in at least the amount of $21,264.56.

### a. Defendant owes unpaid benefit contributions in the amount of $13,386.13.

4.  Defendant owes the Pension Fund at least $13,386.13 in contributions for the period January 1, 2005, through June 4, 2005, and March 1, 2007, through April 30, 2008. See, Exhibit 1, Montemore Declaration, ¶ 7. This amount includes estimates for the period February 1, 2008, through April 30, 2008, a period for which Defendant has failed to submit both contributions and remittance reports to the Pension Fund. For the period in which the Pension

---

[1]    Section 10.12(b)(2) of the Plan sets the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. See, Complaint, Exhibit 2.

[2]    ERISA and § 10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. See, Complaint, Exhibit 2. Article VI, Sec. 4 of the Trust Agreement also provides for the assessment of liquidated damages on contributions paid after the due date. See, Complaint, Exhibit 1.

Fund has not received remittance reports and corresponding contributions, the Pension Fund is forced to estimate an amount due from Defendants. Id. The estimate is reached by averaging the three months of contributions prior to the first month in which no report is received. Id. Using this methodology, the Pension Fund has calculated the amount due for February 2008 through April 2008, under Contracts GO0677 and GS0677, as follows:

| Local Union 677 (GO0677) | MONTH | AMOUNT |
|---|---|---|
| | November 2007 | $ 752.80 |
| | December 2007 | $ 769.60 |
| | January 2008 | $ 1,224.00 |
| | TOTAL | $ 2,746.40 ÷ 3 = $915.46 |

| Local Union 677 (GS0677) | MONTH | AMOUNT |
|---|---|---|
| | November 2007 | $ 52.50 |
| | December 2007 | $ 0.00 |
| | January 2008 | $ 0.00 |
| | TOTAL | $ 52.50 ÷ 3 = $17.50 |

$2,746.40 divided by three equals $915.46, which is used as the estimated contribution amount under Contract GO0677 for the period February 2008 through April 2008. Id. Likewise, $52.50 divided by three equals $17.50, which is used as the estimated contribution under contract GS0677 for the period February 2008 through April 2008. Id.

### b. Defendant owes interest through May 31, 2008, in the amount of $898.11.

Section 10 of the International Painters and Allied Trades Industry Pension Plan ("Plan") (attached as Exhibit 3 to the Complaint filed in this matter and incorporated by reference) sets the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. Interest accruing through May 31, 2008, on Defendant's delinquent contributions totals $898.11. See, Exhibit 1, Montemore Declaration, ¶ 8. Interest shall continue

to accrue on unpaid contributions in accordance with the Plan and ERISA until the date of actual payment. Id., 29 U.S.C. § 1132(g)(2); 26 U.S.C. § 6621.

### c. Defendant owes liquidated damages in the amount of $2,677.22.

ERISA and § 10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. Article VI, Sec. 4 of the Pension Fund's Trust Agreement (attached as Exhibit 2 to the Complaint filed in this matter and incorporated by reference) also provides for the assessment of liquidated damages on contributions paid after the due date. As indicated above, Defendant owes $13,386.13 in unpaid contributions. See, Exhibit 1, Montemore Declaration ¶ 7. Twenty percent (20%) of this amount is $2,677.22. The total amount of liquidated damages is greater than the interest due. Therefore, Defendant owes liquidated damages in the amount of $2,677.22. See, Exhibit 1, Montemore Declaration, ¶ 9; 29 U.S.C. § 1132(g)(2)(C).

### d. Defendant owes attorneys' fees and costs in the amount of $4,303.10

Plaintiff has incurred $4,303.10 in attorneys' fees and costs in connection with this matter through May 31, 2008. See, Exhibit 2, Costa Declaration, ¶ 2; Exhibit 3; see also, 29 U.S.C. § 1132(g)(2). The Pension Fund is entitled to reimbursement of all attorneys' fees and costs it incurs in connection with the enforcement and collection of any judgment entered by the Court. See, Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989).

2.    **The Pension Fund is entitled to injunctive relief**

The failure of Defendant to comply with its contractual and statutory obligations results in a substantial adverse impact on the Pension Fund's ability to meet its legal obligations. See, Exhibit 1, Montemore Declaration, ¶ 11. The Pension Fund is obligated by the express mandates of ERISA and by the documents and instruments by which it is administered to provide benefits and pension credits to all of Company's employees who are otherwise eligible to receive them. Id; 29 C.F.R. 2530-200b-2(a)(1) and (2); Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F.Supp. 38 (D.Minn. 1980), aff'd sub. nom., Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole-Dixie Highway Co., Inc., 642 F.2d 1122 (8th Cir. 1981). The Pension Fund is required to provide these benefits and credits regardless of whether the employer makes the contributions. See, Exhibit 1, Montemore Declaration, ¶ 11. For example, if employees perform work covered by the collective bargaining agreement, the Pension Fund has affirmative obligations to credit hours for retirement benefits regardless of whether a signatory employer makes contributions to the Pension Fund. The result of Company's non-compliance with ERISA and the Labor Contract is a significant drain on the Pension Fund's resources. Id.

Additionally, where, as here, Defendant fails to remit its contributions, the Pension Fund loses the income that it would have earned by investing those contributions. Id. This loss of investment income combined with the Pension Fund's requirement to continue paying benefits to Company's employees (as well as to the employees of other signatory contractors) affects the actuarial soundness of the Pension Fund as well as depletes the resources available to pay current pension benefits. Id.

Furthermore, the Pension Fund incurs additional administrative expenses as a result of Defendant's failure to pay its contributions. These losses and added expenses significantly impair the Pension Fund's ability to continue to provide benefits to not only Company's employees, but also to employees of companies that comply with their contractual obligations. Id.

In light of Defendant's failure to comply with its contractual and statutory obligations to the Pension Fund to submit timely, accurate remittance reports and pension contributions each month, and the irreparable harm which Defendant's malfeasance causes the Pension Fund, the Pension Fund respectfully requests the injunctive relief which is set forth in its proposed default judgment. Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir. 1981); IBPAT Union and Industry Pension Fund v. Hartline-Thomas, Inc. , 4 EBC 1199, 1200 (D.D.C. 1983); Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640 F.Supp. 223 (D.D.C. 1986).

### B.    DEFENDANT SHOULD BE ORDERED TO PRODUCE THE APPROPRIATE RECORDS TO ALLOW THE PENSION FUND TO AUDIT ITS PAYROLL BOOKS AND RELATED RECORDS AND MUST PAY ANY ADDITIONAL AMOUNTS FOUND TO BE DUE AND OWING

The determination of an employee's eligibility for benefits is based upon information contained in the remittance reports, to be filed monthly by each and every signatory employer. Montemore Declaration, ¶¶ 6, 10.  A proper determination of eligibility is not possible if remittance reports are not submitted or if they contain incorrect or incomplete information. See, 29 U.S.C. § 1132(g)(2)(E) (equitable relief); Teamsters Local 639 – Employers Trust v. Jones & Artis Construction Co., 640 F. Supp.223 (D.D.C. 1986); IBPAT Union and Industry Pension

Fund v. Hartline – Thomas, Inc., 4 EBC 1199, 1200 (D.D.C. 1983); Laborers' Fringe Benefit

Pension Fund v. Northwest Concrete, 640 F. 2d 1350, 1352 (6th Cir. 1981).

In order to determine whether the contributing employer has made all required

contributions and correctly reported hours worked and paid to its employees, the Pension Fund

has the right to review all of the employer's records that relate to its contributory obligation.

Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105

S.Ct. 2833 (1985). The employer has the obligation to maintain appropriate records and to permit

the Pension Fund's auditors to review those records upon request. Michigan Laborers' Health

Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 695 (6th Cir. 1994).

In the present case, the Trust Agreement obligates Defendant to allow the audit. See

Complaint, Exhibit 2, Art. VI, Sec. 6. The scope of records subject to review is broad, and

include those records the auditors reasonably deem necessary to conduct an audit. DeMarco v. C

& L Masonry, 891 F.2d 1236 (6th Cir. 1989); see also Exhibit 1, Montemore Declaration, ¶ 10.

In addition to the routine payroll records (e.g., time cards, cancelled payroll checks, payroll

ledgers and payroll tax returns), they can include the general check registers and cancelled

checks, general disbursements ledgers and federal and state corporate income tax returns. Id.

An audit is necessary in this case in order to determine the exact amount due to the

Pension Fund because of Defendant's failure to submit contractually-required remittance reports

and furthermore, to ensure that the remittance reports submitted by Defendant are correct. See

Exhibit 1, Montemore Declaration, at ¶¶ 7, 10. The Defendant's obligations under the Agreement

and 29 U.S.C. § 1145 mean nothing if the Pension Fund cannot ensure compliance through an

audit. The Court should order Defendant to produce its records for an audit for all periods in

which the Defendant is obligated to make contributions to the Pension Fund so that a precise

determination of the amount owed can be made. Upon completion of the audit, the Court should enter a further judgment against Defendant for all additional amounts found to be due and owing under the Agreement and ERISA.

## CONCLUSION

Plaintiff, thus, requests that the Court enter a judgment against Defendant, Rose City Glass Co., Inc. d/b/a Rose City Glass, d/b/a Rose City Company, Inc. ("Company" or "Defendant") in the amount of $21,264.56 and, in light of the clear statutory intent of ERISA, it is further requested that this Court grant the Pension Fund all other relief to which it may be entitled under applicable law and as requested in the Motion for Default Judgment.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY: /s/ Kent G. Cprek
KENT G. CPREK (BAR NO. 478231)
510 Walnut Street, 16th Floor
Philadelphia, PA 19106-3683
(215) 351-0615
Counsel for Plaintiff

DATE: May 30, 2008

OF COUNSEL:
Dawn M. Costa, Esquire
Jennings Sigmond P.C.
510 Walnut Street, 16th Floor
Philadelphia, PA 19106-3683
(215) 351-0616

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) | 1:08-cv-00466 |
| | ) | |
| ROSE CITY GLASS CO., INC. | ) | |
| d/b/a Rose City Glass | ) | |
| d/b/a Rose City Company, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify this 30th day of May, 2008, that I caused to be served a copy of the foregoing Motion for Entry of Judgment by Default, Memorandum of Points and Authorities in Support thereof, Declaration of Thomas C. Montemore, Declaration of Dawn M. Costa, Jennings Sigmond Attorney Fees, Altman Weil Survey of Law Firm Economics, The 2004 Economics of Law Practice in Ohio Survey and proposed Default Judgment by sending a copy of same via U.S. Mail, postage-prepaid to:

Rose City Glass Co., Inc.
2487 Rochester Road
Canandaigua, NY 14424


/s/     Kent G. Cprek
KENT G. CPREK, ESQUIRE


Date:   May 30, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) | 1:08-cv-00466 |
| | ) | |
| ROSE CITY GLASS CO., INC. | ) | |
| d/b/a Rose City Glass | ) | |
| d/b/a Rose City Company, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFAULT JUDGMENT**

Upon consideration of the Complaint and Motion for Entry of Judgment by

Default of the Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Fund,"

"Pension Fund" or "Plaintiff"), it appears to the Court that Defendant, Rose City Glass Co., Inc.,

d/b/a Rose City Glass, d/b/a Rose City Company, Inc. ("Company" or "Defendant"), has

willfully failed to appear, plead or otherwise defend, and it is ORDERED:

1.  Plaintiff's Motion is **GRANTED**;

2.  Judgment is entered against Company and in favor of Plaintiff in the total amount

of $21,264.56 itemized as follows:

(a)  Unpaid contributions for the period of January 1, 2005 through June 4, 2005, and

March 1, 2007 through April 30, 2008 in the amount of $13,386.13 under 29 U.S.C. §

1132(g)(2);

(b)  Interest from the date contributions became due through May 31, 2008, in the

amount of $898.11;

196239
PTINTF-29621

(c)    Liquidated damages in the amount of $2,677.22.  As indicated above, Defendant owes $13,386.13 in unpaid contributions.  Defendant owes liquidated damages totaling twenty percent (20%) of the unpaid contributions.  The total amount of liquidated damages is greater than the interest due.  Therefore, Defendant owes liquidated damages in the amount of $2,677.22.

(d)    Attorneys' fees and costs in the amount of $4,303.10 incurred by Plaintiff through May 31, 2008, as provided in 29 U.S.C. § 1132(g)(2)(D).

3.    Defendant, its owners, officers, agents, servants, attorneys and all persons acting on their behalf or in conjunction with them shall be and hereby are restrained and enjoined from refusing to file complete, proper and timely remittance reports with accompanying pension contributions for all periods for which Defendant is obligated to do so under its collective bargaining agreement(s).

4.    If further action by the Pension Fund is required to obtain payment of the amounts owed by Defendant, it may apply to this Court or to the court in which enforcement is sought, for such further reasonable attorneys' fees and costs in addition to those set out in Paragraph 2(d) above. See, Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); International Painters and Allied Trades Industry Pension Fund v. H.W. Ellis Painting Co., Inc., No. 03-1125, slip. op. at *3 (D.D.C. February 10, 2004) (citing Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989)).

5.    Within ten (10) days of the entry of this Order, Defendant shall fully and accurately complete and submit to the Plaintiff any and all outstanding remittance reports, including but not limited to reports and contributions for the period January 1, 2004, through the

present, together with a check for the full amount of the contributions and dues due, including interest and liquidated damages.

6.      Within twenty (20) days of a request by Plaintiff or its counsel, Defendant shall make available to the designated representative of the Plaintiff all payroll books and related records necessary for Plaintiff to ascertain the precise amount of any delinquent contributions due and owing to Plaintiff for all periods in which Defendant is obligated to make fringe benefit contributions to the Plaintiff and Defendant shall bear the costs of said audit.

7.      Plaintiff shall have the right to conduct future audits for all relevant periods, including the time periods covered by this judgment. Defendant shall be and hereby is restrained and enjoined from failing and refusing to submit to such audits by certified public accountants selected by Plaintiff and shall produce all payroll books and related records requested by Plaintiff, including, but not limited to, payroll, wages, general ledger and cash disbursement records, compensation insurance audits and any other pertinent records deemed necessary for the purpose of ascertaining and/or verifying payments and/or liabilities to Plaintiff. Defendant shall pay Plaintiff any additional amounts found owing, plus such other amounts as set forth in the Agreement, the Agreement and Declaration of Trust of the Pension Fund, the International Painters and Allied Trades Industry Pension Plan, ERISA or any other applicable law.

8.      If additional delinquencies are discovered pursuant to the submission of the remittance reports or to the audit referred to above, or as a result of additional information that becomes available to the Plaintiff, the Plaintiff may apply to the Court for an additional or supplemental judgment reflecting any additional delinquencies, interest, liquidated damages, attorneys' fees and costs, pursuant to ERISA, 29 U.S.C. § 1132(g)(2) together with any audit costs incurred by the Plaintiff.

9.      Plaintiff is awarded reimbursement of all additional attorneys' fees and costs it

incurs in the collection and enforcement of this judgment as well as those incurred in the

collection of delinquent contributions which may be found to be due as a result of the audit

provided for in this Order.

10.     If Defendant fails to comply with any of the terms of this Order, the Plaintiff may,

in addition to pursuing the remedies provided for under Federal Rule of Civil Procedure 69,

reopen this case upon motion to the Court and notice to the Defendant, and may at that time ask

for further appropriate monetary and/or injunctive relief.


_____

The Honorable Richard W. Roberts
United States District Judge

Date:_____

Copies of this Default Judgment shall be sent to:

Kent G. Cprek, Esquire
Jennings Sigmond, P.C.
510 Walnut Street, 15th Floor
Philadelphia, PA 19106-3683

Rose City Glass Co., Inc.
2487 Rochester Road
Canandaigua, NY 14424

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:08-cv-00466 |
| ROSE CITY GLASS CO., INC. d/b/a Rose City Glass d/b/a Rose City Company, Inc. | ) ) ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF THOMAS MONTEMORE

THOMAS MONTEMORE states and declares the following:

1.    My name is Thomas C. Montemore and I am the Assistant to the Fund Administrator of the International Painters and Allied Trades Union and Industry Pension Fund ("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I served as Delinquency Controller from 1988 through October 31, 2000 and I have served as the Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from 1982 to 1986, and File Clerk beginning in 1979.

2.    The Pension Fund is an "employee benefit pension plan" as defined in Section 3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Union of Painters and Allied Trades, AFL-CIO-CFL ("Union"), and employers in private industry whose employees are members of or otherwise represented by the Union and its district councils and local unions, for the purpose of providing retirement income to the employees. The Pension Fund is administered in the District of Columbia from its and my principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.



3.    I have personal knowledge of the contents of the collective bargaining agreements, the Agreement and Declaration of Trust ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") referenced in this Motion.

4.    The Pension Fund, as part of its normal operating procedure, maintain files containing copies of the collective bargaining agreements signed by each employer and copies of the remittance reports submitted by each contributing employer. The Pension Fund also maintains, as part of its normal operating procedures, a record of all contributions which are paid to the Pension Fund by each contributing employer, including copies of checks submitted directly from employers as payment for contributions due.

5.    My review of the regular business records maintained by the Pension Fund reveals that the Defendant, Rose City Glass Co., Inc., d/b/a Rose City Glass, d/b/a Rose City Company, Inc. ("Company" or "Defendant"), was a contributing employer of the Pension Fund and is bound to collective bargaining agreements ("Labor Contracts") with the International Union of Painters and Allied Trades, AFL-CIO, CLC.  Under the terms of the Labor Contracts, Company is bound to the Trust Agreement and Plan.

6.    The collective bargaining agreement requires Defendant to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit, and sets forth the rate of contribution and the method for calculating the total amount of contributions due the Pension Fund. Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreements. Failure to make the required contributions, or to submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

7.    Based upon information currently available to the Pension Fund, Defendant presently owes the Pension Fund contributions for the for the period of January 1, 2005 through June 4, 2005 and March 1, 2007 through April 30, 2008 in the amount of at least $13,386.13. The portion of this amount accruing between January 1, 2005, and June 4, 2005, is based upon pay stubs provided by a covered employee of Defendant for which no hours were reported nor contributions submitted.  The portion of this amount accruing between March 1, 2007 and April 30, 2008, is based upon remittance reports submitted by Defendant, for which no contributions were submitted.  The portion accruing between March 1, 2007 and April 30, 2008, includes estimates for the period February 1, 2008 through April 30, 2008, a period for which Defendant has failed to submit both contributions and remittance reports to the Pension Fund.  For the period in which the Pension Fund has neither received remittance reports nor corresponding contributions, the Pension Fund is forced to estimate the amounts due from Defendant.  The estimate is reached by averaging the three months of contributions prior to the first month in which no report is received. Using this methodology, the Pension Fund has calculated the amount due for under the amount due for February 2008 through April 2008, under Contracts GO0677 and GS0677, as follows:

| Local Union 677 (GO0677) | MONTH | AMOUNT |
|---|---|---|
| | November 2007 | $   752.80 |
| | December 2007 | $   769.60 |
| | January 2008 | $  1,224.00 |
| | TOTAL | $  2,746.40 ÷ 3 = $915.46 |

| Local Union 677 (GS0677) | MONTH | AMOUNT |
|---|---|---|
| | November 2007 | $   52.50 |
| | December 2007 | $   0.00 |
| | January 2008 | $   0.00 |
| | TOTAL | $   52.50 ÷ 3 = $17.50 |

$2,746.40 divided by three equals $915.46, which is used as the estimated contribution amount under Contract GO0677 for the period February 2008 through April 2008. $52.50 divided by three equals $17.50, which is used as the estimated contribution under contract GS0677 for the period February 2008 through April 2008.

8.      Defendant owes interest through May 31, 2008, in the amount of $898.11 on the unpaid pension contributions set forth in ¶ 7. The interest has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the Plan.

9.      Section 10 of the Plan parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and requires the assessment of liquidated damages against Defendant in an amount equal to the greater of the following: the amount of interest owed on the delinquent principal, or twenty percent (20%) of the delinquent principal. As noted above, the total interest owed through May 31, 2008, is $898.11. Twenty percent (20%) of Defendants' unpaid contributions is $2,677.22. The total amount of liquidated damages is greater than the interest due. Therefore, Defendant owes liquidated damages in the amount of $2,677.22.

10.      The Pension Fund routinely audits employers to ensure all required contributions are being paid. It also audits employers in connection with delinquency collection lawsuits. An audit is the most accurate tool employed by the Pension Fund to ensure an employer's compliance with its statutory obligations. In performing these audits, the auditor reviews the payroll records of each employee who performs work of the type covered by the collective bargaining agreement. These records will include time cards, payroll ledgers, payroll summaries, time slips, or such other payroll records as the employer maintains which will indicate the number of hours that each individual employee worked and was paid for each week. The information gathered from these records is then compared to the wage information found on the

employer's federal, state and municipal tax returns and on the W-2 statements provided to the employees. The auditor also reviews disbursement ledgers and check registers to identify potential wage payments to employees not made through the payroll system. Job/project contracts are reviewed to determine whether the work performed is within the scope of the collective bargaining agreement. After compiling the information gathered from the above records, a schedule of the contributions that should have been paid according to the contract is prepared. This schedule, which is broken down by month, is then compared to the actual contributions which the employer did submit to the Pension Fund, with any differences noted. Once completed, an audit report is forwarded to the employer for its review and payment.

11.     Despite a continuing contractual obligation to do so, Defendant has repeatedly failed to submit timely remittance reports and pension contributions. The Pension Fund and its Trustees are required to pay benefits to all properly eligible employees of contributing employers. Employees of contributing employers continue to accrue pension credits, based on the hours of their employment, regardless of whether their employers make pension contributions on their behalf for these hours, as contractually required. The Pension Fund's obligation to recognize pension credits and to pay pensions to vested employees is absolute and continues even if the employers fail to pay their required pension contributions. Employer contributions and the earnings the Pension Fund receives by investing these contributions comprise the assets from which the Pension Fund pays retirement benefits to participants and their dependents and beneficiaries. When employers, like Defendant, fail to pay their contributions or do not pay them timely, the Pension Fund is deprived of the investment income they otherwise could have earned. In addition, the Pension Fund also must engage in time-consuming and costly efforts to collect the unpaid contributions. These efforts include letters and

phone calls to the employer, investigating other sources for collection and attempting to calculate delinquency amounts and benefit eligibility through other sources (e.g. pay stubs), if available. Further, the Pension Fund has to process benefit eligibility and benefit claims manually so that participants (and their dependents) employed by the delinquent employer are not deprived of retirement benefits. The actual losses and added costs (in terms of dollar amount, capital and manpower) incurred by the Pension Fund in connection with an employer contribution delinquency are not capable of precise determination, but they are substantial. Defendant's refusal to contribute as it is bound means irreparable harm and injury to the Pension Fund – an obligation to make benefit payments to employees without necessary contributions from Defendant to cover those benefits. Therefore, Defendant should be required to submit timely current contributions and remittance reports in the future.

12.    I have executed this Declaration in support of Plaintiff's Motion for Default Judgment against Defendant and request that this Court consider the same as proof in support of the allegations contained in the Plaintiff's Complaint and other facts stated in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under Penalty of perjury that the foregoing is true and correct.

Executed on:    5|29|08

THOMAS MONTEMORE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTERNATIONAL PAINTERS AND ALLIED   )
TRADES INDUSTRY PENSION FUND       )
                                        )
                     Plaintiff,     )      CIVIL ACTION NO.
    v.                          )      1:08-cv-00466
                                          )
ROSE CITY GLASS CO., INC.             )
     d/b/a Rose City Glass           )
     d/b/a Rose City Company, Inc.    )
                                          )
                    Defendant.    )

**DECLARATION OF DAWN M. COSTA, ESQUIRE**

DAWN M. COSTA states:

1.     I am an associate with the law firm of Jennings Sigmond, P.C. with responsibility

for the case captioned <u>International Painters and Allied Trades Industry Pension Fund v. Rose</u>

<u>City Glass C., Inc.</u>, Civil Action No. 1:08-cv-00466. I submit this declaration to support an

award of attorney fees to Plaintiff.

<u>Case Fees</u>

2.     Attached as Exhibit 3 to Plaintiff's Motion for Entry of Judgment by Default is a

list showing all work performed by the office of Jennings Sigmond, P.C. and related costs in

connection with this action through May 31, 2008. The listing was prepared from

contemporaneous attorney time and expenses records and bills, the originals of which are

maintained in the regular business records of Jennings Sigmond. Each piece of work is

separately coded and the work performed is described. The fees relevant to this case are

$3,520.00 and expenses are $783.10 for a total of $4,303.10.



3.    The identity of those performing services related to this matter and normal hourly rates are as follows.

| INITIALS | NAME | TITLE | HOURLY RATE |
|----------|------|-------|-------------|
| KGC | Kent G. Cprek | Shareholder | $ 220.00 |
| SMC | Shanna M. Cramer | Associate | $ 220.00 |
| DMC | Dawn M. Costa | Associate | $ 220.00 |

4.    Plaintiffs only seek judgment for fees in the bills, which reflect a special fee schedule with the International Painters and Allied Trades Industry Pension Fund for a uniform $220.00 per hour rate for all lawyers and $70.00 per hour for paralegals and clerks.

**Attorney Background and Experience**

5.    <u>Kent Cprek</u>.  Kent Cprek is a shareholder in Jennings Sigmond, P.C. and a co-leader in its ERISA Practice and have practiced law for 28 years. He was admitted to the State Bar of Michigan in November 1978, the bar of the Supreme Court of Pennsylvania in May 1984 and the District of Columbia Bar in 2002. He began practice with the firm of Marston, Sachs, Nunn, Kates, Kadushin and O'Hare, P.C., Detroit, Michigan, 48226, in the representation of plan participants, multiemployer funds and labor unions from 1978 to 1981.  From 1981 to 1984, he was employed by the Pension Benefit Guaranty Corporation as an attorney with responsibility for advice and litigation concerning termination of pension plans. He joined Sagot, Jennings & Sigmond, a predecessor to Jennings Sigmond, P.C. in 1984.  He has a J.D. <u>cum laude</u> from the University of Michigan Law School and a Master of Laws in Taxation from the Georgetown University Law Center. He is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the District of Columbia Circuit, Third Circuit, Fourth Circuit, Fifth Circuit and Sixth Circuit and the United States District Courts for the District of

Columbia, Eastern and Middle Districts of Pennsylvania and the Eastern and Western Districts of Michigan.

Since 1981, his work has been concentrated in the representation of employee benefit plans. His litigation experience includes representation of multiemployer plans and participants for more than twenty years, with trials of a number of actions and arbitrations and significant appellate work involving all aspects of withdrawal liability and pension law.  A sample of his litigation experience is available in 53 published cases that may be obtained through a Westlaw search for "AT (Cprek)" in the FPENS-CS library.

He has taught on the subject of Collections and Bankruptcy work for employee benefit plans for the International Foundation of Employee Benefit Plans.

Cprek, "Bankruptcy Basics," Attorney Pre-Conference Sessions, Annual Educational Conference, International Foundation of Employee Benefit Plans (1998)

Cprek, "Bankruptcy Basics," Attorney Sessions, Trustee and Benefit Professionals Institute, International Foundation of Employee Benefit Plans (1991)

Cprek, "Bankruptcy Collections by Employee Benefit Plans," Collection Procedures Institute, International Foundation of Employee Benefit Plans (1990)

Cprek, "Collecting from the Bankrupt Employer," Collections Procedures Institute, International Foundation of Employee Benefit Plans (April 1986)

Cprek, "Duties of Trustees in the Collection Process: The Law Today," reprinted in Employee Benefits Annual 1986: Proceedings of the Annual Employee Benefits Conference, p. 16 (IFEBP 1987).

Panelist, Seminar on Multiemployer Pension Plan Amendments Act, Pennsylvania Bar Institute (Fall 1987)

His later work has focused on benefit plan mergers and a continuing treatise on termination of single-employer pension plans. Cprek, "Single Employer Pension Plan Terminations," Schneider & Freedman (Eds.), ERISA: A Comprehensive Guide, (2d Ed. Aspen 2003).

6.     <u>Shanna M. Cramer</u>. Shanna M. Cramer, an associate in the firm, has actively practiced law for four (4) years. She graduated in 1997 from Rutgers University, with honors, with a Bachelors Degree in History, Political Science and Spanish. She received her law degree in 2001 from Rutgers Law School. Ms. Cramer graduated in 2004 from Beasley School of Law-Temple University, with an LL.M in Taxation. Ms. Cramer has been admitted to the Bars of Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

7.     <u>Dawn M. Costa</u>. Dawn M. Costa, an associate in the firm, has practiced law for five (5) years. She graduated with high honors in 1999 from Rutgers University, with a Bachelor of Science Degree in Psychology and Administration of Justice. Ms. Costa received her law degree in 2002 from Rutgers Law School and subsequently served as a law clerk in the Superior Court of New Jersey. Ms. Costa is admitted to the Bars of Pennsylvania and New Jersey, and is admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey.

**Legal Market Benchmark**

8.     The time and fees charged in this case are reasonable based on prevailing market rates for similar services by lawyers of reasonably comparable skill, experience and reputation in both the Philadelphia and District of Columbia markets.

9.     My opinion that the time and fees are reasonable is based on a number of factors, including the following.

(a)     We serve as counsel or co-counsel to over 20 multiemployer employee benefit funds groups. The firm currently has 16 lawyers, with a dedicated benefits department of eight

(8) lawyers.  The work is specialized and our competition often is large corporate firms with both

employee benefits and federal litigation experience.  In my experience, our fees are normally

substantially lower than the charges of larger firms.

    (b)    The flat rate in this case is consistent with market rates in published surveys by

Altman Weil, a leading law firm consultant.  Specifically, Altman Weil found a median hourly

rate in 2005 of $195 for associates in the Middle Atlantic region (encompassing both

Philadelphia and the District of Columbia) and a range up to $273 per hour at the 90th percentile.

See Associate Hourly Billing Rates (March 10, 2006), reprinted from

http://www.altmanweil.com/PracticeSpecialtiesRates/ and attached hereto as Exhibit 4.  The

median rate for partners (shareholders) in employee benefits litigation was $305 per hour, *id.*,

Practice Specialties and Hourly Rates (October 1, 2005).  A $220 rate in 2008 is only a 12.82%

increase over the 2005 median for associates only.

    (c)    The fees are consistent with market ranges in a 2004 Ohio bar association survey,

downloads.ohiobar.org/conventions/convention2005/session508%20Economics%20of%20Law.

pdf, attached as Exhibit 5, especially pages 26 and exhibit 27, especially after giving weight to

increases from 2004 to 2006 (roughly 5% per year on average in the Ohio survey) and regional

differences reflected in Altman Weil data (Ex. 4), showing an 8.33% higher rate in median

associates' rates in the Middle Atlantic region ($195) over the East North Central region

covering Ohio ($180)).  The Ohio survey showed median hourly associate rates in the

comparable downtown Cleveland, Cincinnati and Columbus areas of $200 - $235 per hour,

ranging up to $334 - $359 at the 90th percentile. See, Exhibit 5 (excerpt page 26).  It also shows

that a $70 per hour paralegal rate is less than the median rate for 5 years experience in Ohio,

without adjustment for regional differences, Exhibit 5 (Ex. 27).

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information and belief.

Signed on: May 30, 2008                           /s/ Dawn M. Costa
                                                  DAWN M. COSTA, ESQUIRE
                                                  Jennings Sigmond P.C.
                                                  510 Walnut Street, 16th Floor
                                                  Philadelphia, PA 19106-3683
                                                  (215) 351-0616
                                                  Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) ) | 1:08-cv-00466 |
| ROSE CITY GLASS CO., INC. | ) | |
| d/b/a Rose City Glass | ) | |
| d/b/a Rose City Company, Inc. | ) ) | |
| Defendant. | ) | |

**JENNINGS SIGMOND ATTORNEYS' FEES – May 1, 2008 – May 31, 2008**

| | | |
|---|---|---|
| Kent G. Cprek | KGC | |
| Shanna M. Cramer | SMC | |
| Dawn M. Costa | DMC | |

| Date | Attorney | Task | Time |
|---|---|---|---|
| 5/02/08 | DMC | Review of Correspondence; Memorandum to File | 0.2 |
| 5/12/08 | DMC | Review of Correspondence | 0.1 |
| 5/13/08 | DMC | Review of Correspondence; Preparation of Request To Enter Default; Preparation of Declaration in Support if Request; Preparation of Certification of Service | 0.8 |
| 5/14/08 | DMC | Review of Clerk's Entry of Default; Memorandum To File | 0.2 |
| 5/22/08 | DMC | Preparation of Draft of Declaration; Preparation of Draft of Memorandum of Points and Authorities; Preparation of Draft of Motion for Judgment by Default; Preparation of Correspondence | 1.6 |
| 5/28/08 | DMC | Review and Revise Declaration (Montemore); Review and Revise Memorandum of Points and Authorities; Review and Revise Motion for Judgment by Default; Preparation of Schedule Of Attorney's Fees; Phone with client; Preparation Of Declaration (Costa); Preparation of Correspondence | 3.6 |

Exhibit
3

| 5/30/08 | DMC | Proof read and revise default judgment package | 2.0 |
|---|---|---|---|

|  |  | **TOTAL:** | **8.5** |
|---|---|---|---|

**May 2008 Summary**

| DMC  8.5 hours x $220.00 | = | $ 1,870.00 |
|---|---|---|
| Attorneys' Fees through 4/30/2008 | = | $ 1,650.00 |
| Costs | = | $   783.10 |

**Grand Total:**    $ 4,303.10

196239
PTINTF-29621

Report ID:  OT2025 - 18176
Tuesday, May 27, 2008

# Jennings Sigmond, P.C.
## Time And Expense Details

Beginning To End

Printed By    SLG
Page          1

| Client | Client Reporting Name | Matter | Matter Reporting Name | Billing Timekeeper |
|---|---|---|---|---|
| STINTF | IUPAT Industry Pension Fund | 29621 | Rose City Glass, Inc. | Sigmond, Richard B. |

## Unbilled Expenses

| Date | Amount | Exp Code | Narrative |
|---|---|---|---|
| 5/15/2008 | $104.20 | 7100 | Service of Process |

**Unbilled Expenses Totals** $104.20

## Billed Time

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|
| 2/29/2008 | SMC | 0.40 | 0.40 | 220.00 | $88.00 | | Review of Documents |
| 3/3/2008 | DMC | 2.20 | 2.20 | 220.00 | $484.00 | | Open File |
| | | | | | | | Review of Correspondence and Fund Records |
| | | | | | | | Preparation of Complaint |
| 3/7/2008 | DMC | 2.80 | 2.80 | 220.00 | $616.00 | | Phone Conference with P. Gilbert |
| | | | | | | | Review of Correspondence |
| | | | | | | | Investigate Corporate Entities |
| | | | | | | | Computer Research |
| 3/10/2008 | DMC | 0.80 | 0.80 | 220.00 | $176.00 | | Preparation of Correspondence to T. Montemore and P. Gilbert |
| | | | | | | | Review and Revision of Complaint |
| | | | | | | | Review of Correspondence |
| 3/13/2008 | KGC | 0.50 | 0.50 | 220.00 | $110.00 | | Preparation of Correspondence to T. Montemore and P. Gilbert |
| 3/17/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | Review and Revision of Complaint and Memo regarding same |
| | | | | | | | Review of Correspondence |
| 3/20/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | Preparation of Correspondence to Client |
| 3/25/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | Review of Court Notice |
| 3/26/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | Review and Revision of Correspondence |
| 4/4/2008 | DMC | 0.10 | 0.10 | 220.00 | $22.00 | | Memo to File |
| 4/30/2008 | DMC | 0.30 | 0.30 | 220.00 | $66.00 | | Review of Correspondence |
| | | | | | | | Preparation of Correspondence to Process Server Requesting Status |

**Billed Time Totals** 7.50   7.50   $1,650.00

## Billed Expenses

| Date | Amount | Exp Code | Narrative |
|---|---|---|---|
| 3/13/2008 | $350.00 | 7100 | US District Court - Filing Fee |
| 3/17/2008 | $17.99 | COPY | Photocopies |
| 3/17/2008 | $36.40 | COPY | Photocopies |
| 4/1/2008 | $97.90 | CRDB | Computer Research - Dun & Bradstreet |
| 4/1/2008 | $97.90 | CRDB | Computer Research - Dun & Bradstreet |
| 4/1/2008 | $78.71 | CRWL | Computer Research - Westlaw |

Report ID:   OT2025 - 18176
Tuesday, May 27, 2008

# Jennings Sigmond, P.C.
# Time And Expense Details

Beginning To End

| | Hours Worked | Hours To Bill | Fee Amount | Expense Amount | Total Amount |
|---|---|---|---|---|---|
| Billed Expenses Totals | $678.90 | | | | |
| Report Totals | 7.50 | 7.50 | $1,650.00 | $783.10 | $2,433.10 |

*** End Of Report ***



# Associate Hourly Billing Rates by Region

| Region | Median | 90th Percentile |
|---|---|---|
| New England | $185 | $250 |
| Middle Atlantic | $195 | $273 |
| South Atlantic | $190 | $270 |
| E. So. Central | $170 | $220 |
| W. So. Central | $175 | $240 |
| E. No. Central | $180 | $275 |
| W. No. Central | $145 | $190 |
| Mountain | $175 | $250 |
| Pacific | $195 | $290 |

□ Median  ■ 90th Percentile

**Source:  Altman Weil Survey of Law Firm Economics
2005 Edition**

See following page for states included
in each region.



EXHIBIT



Census Regions and Divisions of the United States



# Median Hourly Billing Rates
## Litigation Specialties

Top Five
Hourly Rates

Equity and
Non-Equity
Partners

| Specialty | Rate |
|---|---|
| Antitrust | $380 |
| IP | $330 |
| Tax | $325 |
| Employee Benefits | $305 |
| Criminal | $305 |

Source:  Altman Weil Survey of Law Firm Economics
2005 Edition



# THE 2004 ECONOMICS OF LAW PRACTICE IN OHIO SURVEY

**OSBA**

## Introduction

During the spring of 2004, the Ohio State Bar Association, Section on Solo, Small Firms and General Practice (OSBA) surveyed the Ohio legal community on the economics of law practice. Two online surveys were utilized, replacing the single mail-based survey instrument provided in past years.

With respect to the economics of law practice, similar studies were undertaken in 2001, 1998, 1994 and 1990. The objectives of these studies were to determine, among other things:

- current demographics of practicing attorneys;

- attorney net income by practice category, gender, field of law, office location, work status, years in practice and firm size;

- associate, legal assistant, and secretary compensation by years of experience and office location;

- prevailing average hourly billing rates for attorneys by a variety of indicators, and rates for legal assistants by years of experience, firm size and office location;

- attorney time allocated to billable and non-billable professional activities; and

- overhead expenses associated with maintaining a private practice by office location and firm size.

Attorneys can compare themselves and their firms against "norms" established by the aggregation of survey data. Time series information is also provided to denote trends. Norms include statistics that are organized by combinations of office location, firm size, gender, work status (full-time vs. part-time), practice class, area of legal concentration and years of practice.

The above information has been consolidated into this reference to help guide attorneys as they plan and manage their professional lives.

For 2004, a survey dedicated to law office technology and marketing issues was also fielded at the same time as the economics survey. Findings from this survey are summarized as Current Issues on Law Office Technology and Marketing in Ohio, 2004 and are available at www.ohiobar.org

© 2004 Ohio State Bar Association. All rights reserved.

1

*Economics of Law Practice in Ohio • 9*



EXHIBIT

5

IV.   **BILLING RATES AND PRACTICES**

    A.   Takeaways.

        1.   The median hourly billing rate for all attorneys was *$175* for 2004 and *$110* for 1994. The average annual rate of increase in hourly billing rates during this time period was *5.9%*.

        2.   Rates have increased the most in *suburban Cincinnati* (7.3% per year) and least in *suburban Columbus* (2.5%).

        3.   Rates increased most for *partners in firms with 8+ partners* (5.9%) and least for *partners in firms with two to seven partners* (3.7%).

        4.   *Rates increased the most for respondents in* firms with two to five attorneys (6.05%) and least for respondents in *firms with more than 20 attorneys* (4.2%).

        5.   Rates increased the most for *estate planning attorneys* (9.5%) and *tax attorneys* (7.6%) and least for *bankruptcy* (2%) and *municipal/public entity* attorneys (- 1%).

        6.   Fifty-six percent of respondents had *not changed* their rates in one year or more.

        7.   When rates are raised, the prevalent increase is *6-10%* (41% of respondents).

        8.   *Uncollectibles* (greater than 2% of fees billed) are increasing. The prevalent range is *3-8% of fees billed* (33% in 2004 and 30% in 2000).

        9.   Attorneys are *increasingly adding service charges* to delinquent accounts where applicable (30% in 2004 compared with 20% in 1990).

    B.   Implications.

        1.   There is still pricing power for legal services despite intense competition and an ever growing supply of attorneys.

        2.   Existing and new practice management benchmarks should be available, especially for solos and small firm practicing attorneys, to enable relative standing self assessments.

V.   **ATTORNEY TIME ALLOCATIONS**

    A.   Takeaways.

        1.   The median value for *total hours* worked in 2004 rose to *50* from *48* in 1990 (2500 hours per year on a 50-week year).

## Law Firm Billing Rates and Billing Practices

### 2004 Attorney Hourly Billing Rates

The reported 2004 median hourly billing rate is $200. The average is $206. While several interacting factors affect the setting and application of hourly billing rates, Exhibit 21 includes three discrete factors: respondents' firm size, years in practice and office location, while Exhibit 22 identifies respondents' primary source of income, and practice category.

**Exhibit 21** **2004 HOURLY BILLING RATES BY FIRM SIZE, YEARS IN PRACTICE AND OFFICE LOCATION**

| | | | Value by Percentile | | | |
|---|---|---|---|---|---|---|
| **Size of Firm** | **N** | **Mean** | **25th** | **Median** | **75th** | **95th** |
| 1 | 196 | $155 | $125 | $150 | $175 | $225 |
| 2 | 55 | 164 | 125 | 150 | 185 | 250 |
| 3-6 | 77 | 176 | 150 | 175 | 200 | 256 |
| 7-10 | 40 | 196 | 150 | 180 | 244 | 300 |
| 11-20 | 39 | 189 | 155 | 195 | 225 | 275 |
| 21-50 | 49 | 206 | 163 | 200 | 238 | 320 |
| 51+ | 72 | 249 | 186 | 240 | 300 | 377 |
| **Yrs. in Practice** | | | | | | |
| 5 or less | 70 | $147 | $125 | $143 | $175 | $222 |
| 6-10 | 78 | 164 | 125 | 150 | 190 | 250 |
| 11-15 | 65 | 185 | 150 | 180 | 228 | 296 |
| 16-25 | 131 | 184 | 150 | 165 | 220 | 306 |
| More than 25 | 183 | 200 | 150 | 190 | 230 | 340 |
| **Office Location** | | | | | | |
| Greater Cleveland | 121 | $200 | $150 | $185 | $238 | $350 |
| Greater Cincinnati | 61 | 199 | 150 | 180 | 245 | 325 |
| Greater Columbus | 120 | 194 | 150 | 180 | 233 | 300 |
| Greater Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Northeast Region | 98 | 165 | 125 | 163 | 196 | 250 |
| Northwest Region | 47 | 152 | 120 | 150 | 175 | 263 |
| Southern Region | 56 | 155 | 125 | 150 | 175 | 250 |
| | | | | | | |
| Downtown Cleveland | 61 | $237 | $183 | $235 | $283 | $359 |
| Suburban Cleveland | 60 | 161 | 150 | 150 | 189 | 220 |
| Downtown Cincinnati | 40 | 213 | 153 | 200 | 271 | 368 |
| Suburban Cincinnati | 21 | 173 | 145 | 175 | 183 | 249 |
| Downtown Columbus | 67 | 217 | 165 | 210 | 260 | 334 |
| Suburban Columbus | 53 | 164 | 145 | 150 | 200 | 243 |
| Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Canton | 12 | 154 | 116 | 153 | 183 | 250 |
| Akron | 41 | 186 | 150 | 190 | 223 | 273 |
| Toledo | 26 | 170 | 144 | 168 | 186 | 285 |
| Youngstown | 9 | 146 | 113 | 150 | 178 | 200 |
| Northeast Ohio | 36 | 149 | 125 | 138 | 188 | 225 |
| Northwest Ohio | 21 | 129 | 100 | 125 | 150 | 180 |
| Southeast Ohio | 16 | 155 | 125 | 150 | 188 | 250 |
| Southwest Ohio | 25 | 146 | 125 | 150 | 170 | 207 |
| Central Ohio | 15 | 171 | 150 | 165 | 185 | 250 |
| All Attorneys | 530 | $182 | $150 | $175 | $210 | $300 |

Exhibit 22    2004 HOURLY BILLING RATES BY PRIMARY
FIELD OF LAW AND PRACTICE CLASS

| Primary Field of Law | N | Mean | 25th | Median | 75th | 95th |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| Administrative Law | 5 | $241 | $188 | $260 | $285 | $295 |
| Bankruptcy, Debtor | 18 | 135 | 115 | 150 | 168 | 190 |
| Collections | 10 | 146 | 119 | 135 | 164 | 250 |
| Corporate/Business Law | 48 | 201 | 150 | 183 | 225 | 340 |
| Criminal (Public Defendant) | 9 | 139 | 100 | 125 | 175 | 225 |
| Criminal (Private Defendant) | 12 | 154 | 125 | 150 | 173 | 250 |
| Domestic Relations/Family Law | 55 | 173 | 125 | 150 | 200 | 280 |
| Environmental Law/Natural Resources Law | 6 | 200 | 151 | 168 | 283 | 305 |
| General Practice | 14 | 136 | 118 | 132 | 161 | 185 |
| Health & Hospital Law | 6 | 203 | 148 | 195 | 263 | 300 |
| Intellectual Property | 10 | 216 | 174 | 223 | 250 | 300 |
| Labor Law (Management) | 6 | 185 | 150 | 168 | 236 | 255 |
| Employment Law (Management) | 25 | 187 | 138 | 175 | 238 | 324 |
| Employment Law (Labor) | 6 | 178 | 151 | 175 | 208 | 230 |
| Municipal/Public Entity Law | 8 | 164 | 111 | 138 | 225 | 305 |
| Product Liability | 5 | 226 | 138 | 205 | 325 | 425 |
| Personal Injury (Defendant) | 25 | 148 | 110 | 135 | 175 | 270 |
| Personal Injury (Plaintiff) | 43 | 179 | 150 | 160 | 200 | 300 |
| Professional Liability | 6 | 164 | 149 | 165 | 178 | 185 |
| Real Property Law | 26 | 164 | 125 | 150 | 195 | 315 |
| Taxation | 7 | 231 | 175 | 220 | 295 | 300 |
| Trial Practice, not PI (General Civil) | 20 | 190 | 140 | 177 | 200 | 415 |
| Trial Practice, not PI (Commercial) | 20 | 224 | 181 | 210 | 276 | 387 |
| Estate Planning/Wealth Management | 36 | 209 | 175 | 205 | 233 | 308 |
| Probate, Decedents' Estates | 49 | 176 | 150 | 175 | 200 | 250 |
| Workers' Compensation (Plaintiff) | 6 | 167 | 125 | 150 | 213 | 250 |
| Other | 23 | 200 | 150 | 190 | 250 | 358 |
| **Practice Classification** | | | | | | |
| Sole Practitioner | 168 | $153 | $125 | $150 | $175 | $225 |
| Solo with 1+ associates | 42 | 181 | 150 | 175 | 203 | 259 |
| Space Sharer | 21 | 160 | 125 | 150 | 175 | 275 |
| Partner in Firm with 2-7 Partners | 114 | 184 | 150 | 175 | 221 | 300 |
| Partner in Firm with 8+ Partners | 88 | 249 | 196 | 240 | 300 | 381 |
| Associate in Firm with 2-7 Partners | 31 | 156 | 125 | 150 | 175 | 264 |
| Associate in Firm with 8+ Partners | 56 | 180 | 150 | 175 | 210 | 263 |
| All Attorneys | 530 | $182 | $150 | $175 | $210 | $300 |

## Hourly Billing Rates for Associates and Legal Assistants

The distribution of hourly billing rates for associates and legal assistants are summarized by years of experience in Exhibit 23, by office location (Exhibits 24 and 25), and by firm size (Exhibits 26 and 27).

**Exhibit 26    DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR ASSOCIATES BY FIRM SIZE AND YEARS OF EXPERIENCE**

| Associate Billing Rate Category | Firm Size (Number of Attorneys) | | | | |
|---|---|---|---|---|---|
| | 2 | 3-6 | 7-20 | 21+ | All |
| **No Experience** | | | | | |
| <$135 | 57.9 | 78.1 | 69.0 | 43.5 | 61.9 |
| $136-145 | 15.8 | 9.4 | 10.3 | 19.6 | 13.5 |
| $146-155 | 15.8 | 9.4 | 17.2 | 19.6 | 16.1 |
| $156-165 | | | 1.7 | 6.5 | 2.6 |
| $166-175 | 10.5 | | 1.7 | 4.3 | 3.2 |
| $176-199 | | | | 6.5 | 1.9 |
| $225-249 | | 3.1 | | | 0.6 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **3 Years Experience** | | | | | |
| <$135 | 43.8 | 35.3 | 39.0 | 13.0 | 31.0 |
| $136-145 | 18.8 | 20.6 | 22.0 | 19.6 | 20.6 |
| $146-155 | 25.0 | 29.4 | 20.3 | 21.7 | 23.2 |
| $156-165 | | 11.8 | 6.8 | 13.0 | 9.0 |
| $166-175 | 6.3 | 2.9 | 6.8 | 23.9 | 11.0 |
| $176-199 | 6.3 | | 5.1 | 8.7 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **5 Years Experience** | | | | | |
| <$135 | 12.5 | 24.0 | 25.0 | 4.3 | 16.9 |
| $136-145 | 25.0 | 8.0 | 10.7 | 10.6 | 11.0 |
| $146-155 | 12.5 | 40.0 | 25.0 | 10.6 | 22.1 |
| $156-165 | 12.5 | 12.0 | 17.9 | 17.0 | 16.2 |
| $166-175 | | 16.0 | 10.7 | 10.6 | 11.0 |
| $176-199 | 12.5 | | 10.7 | 29.8 | 15.4 |
| $200-224 | 25.0 | | | 14.9 | 6.6 |
| $225-249 | | | | 2.1 | 0.7 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **10 Years Experience** | | | | | |
| <$135 | 33.3 | 14.8 | 19.5 | 5.4 | 14.9 |
| $136-145 | 11.1 | | 4.9 | 2.7 | 3.5 |
| $146-155 | | 22.2 | 14.6 | 5.4 | 12.3 |
| $156-165 | 22.2 | 7.4 | 4.9 | 5.4 | 7.0 |
| $166-175 | | 14.8 | 14.6 | 16.2 | 14.0 |
| $176-199 | | 18.5 | 26.8 | 18.9 | 20.2 |
| $200-224 | 22.2 | 18.5 | 14.6 | 18.9 | 17.5 |
| $225-249 | 11.1 | 3.7 | | 10.8 | 5.3 |
| $250+ | | | | 16.2 | 5.3 |
| Total | 100% | 100% | 100% | 100% | 100% |

Exhibit 27    DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR
LEGAL ASSISTANTS BY FIRM SIZE AND EXPERIENCE

| Legal Assistant Billing Rate Category | Firm Size (Number of Attorneys) | | | | |
|---|---|---|---|---|---|
| | 2 | 3-6 | 7-20 | 21+ | All Firms |
| **No Experience** | | | | | |
| $50 or less | 40.0 | 60.0 | 50.0 | 20.0 | 41.0 |
| $51-60 | 30.0 | 20.0 | 20.0 | 17.1 | 20.0 |
| $61-70 | 10.0 | 4.0 | 10.0 | 5.7 | 7.0 |
| $71-80 | 20.0 | 8.0 | 10.0 | 25.7 | 16.0 |
| $81-90 | | 4.0 | 10.0 | 8.6 | 7.0 |
| $91-100 | | 4.0 | | 17.1 | 7.0 |
| $101-110 | | | | 5.7 | 2.0 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **3 Years Experience** | | | | | |
| $50 or less | 12.5 | 25.0 | 13.3 | 2.8 | 11.7 |
| $51-60 | 62.5 | 35.0 | 23.3 | 11.1 | 24.5 |
| $61-70 | | 20.0 | 26.7 | 22.2 | 21.3 |
| $71-80 | | 10.0 | 13.3 | 11.1 | 10.6 |
| $81-90 | 12.5 | 5.0 | 10.0 | 22.2 | 13.8 |
| $91-100 | 12.5 | | 10.0 | 8.3 | 7.4 |
| $101-110 | | 5.0 | 3.3 | 8.3 | 5.3 |
| $111-120 | | | | 11.1 | 4.3 |
| >$120 | | | | 2.8 | 1.1 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **5 Years Experience** | | | | | |
| $50 or less | 16.7 | 4.5 | 8.6 | 2.9 | 6.2 |
| $51-60 | | 27.3 | 17.1 | 5.9 | 14.4 |
| $61-70 | 66.7 | 22.7 | 11.4 | 14.7 | 18.6 |
| $71-80 | 16.7 | 31.8 | 34.3 | 11.8 | 24.7 |
| $81-90 | | 4.5 | 14.3 | 11.8 | 10.3 |
| $91-100 | | | 11.4 | 17.6 | 10.3 |
| $101-110 | | 9.1 | | 11.8 | 6.2 |
| $111-120 | | | | 11.8 | 4.1 |
| >$120 | | | 2.9 | 11.8 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **10 Years Experience** | | | | | |
| $50 or less | 20.0 | | 2.7 | 3.0 | 3.9 |
| $51-60 | 20.0 | 9.1 | 18.9 | 3.0 | 11.8 |
| $61-70 | | 13.6 | 13.5 | 12.1 | 11.8 |
| $71-80 | 30.0 | 40.9 | 18.9 | 6.1 | 20.6 |
| $81-90 | 10.0 | 18.2 | 21.6 | 6.1 | 14.7 |
| $91-100 | | 13.6 | 16.2 | 18.2 | 14.7 |
| $101-110 | | 4.5 | | 12.1 | 4.9 |
| $111-120 | 20.0 | | 5.4 | 18.2 | 9.8 |
| >$120 | | | 2.7 | 21.2 | 7.8 |
| Total | 100% | 100% | 100% | 100% | 100% |

Exhibit 28 displays the impact of firm size on methods for client billing for legal assistants:

Exhibit 28    LEGAL ASSISTANT CLIENT BILLING METHODS BY SIZE OF FIRM, 2004

| Billing Method for Legal Assistants | Firm Size (Number of Attorneys) | | | | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3-6 | 7-20 | 21+ | All Firms |
| Included with Attorney Fee | 47.1 | 59.5 | 39.7 | 19.7 | 4.7 | 32.1 |
| Time | 42.9 | 35.1 | 55.2 | 73.8 | 87.5 | 60.7 |
| Fee Schedule | 8.6 | 5.4 | 5.2 | 3.3 | 6.3 | 5.9 |
| Total | 100% | 100% | 100% | 100% | 100% | 100% |